UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

          Plaintiff,

     v.                                       Case No. 17-CR-124

MARCUS HUTCHINS,

          Defendant.

_____

**DEFENDANT MARCUS HUTCHINS' OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE THE ORDER AMENDING CONDITIONS OF RELEASE**
_____

      The Court should deny the government's motion to revoke Magistrate Judge William E. Duffin's August 25, 2017 order amending defendant Marcus Hutchins' conditions of release. (Dkt. Nos. 23 (Order) and 25 (Mot. to Revoke).) The Order permits Mr. Hutchins to be on a curfew while on pretrial release. Mr. Hutchins has complied with the curfew since the Order was issued, and the government offers no new facts or legal argument to suggest that home detention is warranted.

      As Magistrate Judge Duffin noted, the Bail Reform Act permits a court to "impose only the least restrictive conditions necessary to reasonably assure a defendant's appearance." Order at 1 & 4; 18 U.S.C. § 3142(c)(1)(B). Mr. Hutchins has fully complied with all of his pretrial release conditions, and he has demonstrated time and time again that he is not a flight risk. Notably, Pretrial Services is the party that recommended and petitioned this Court to place Mr. Hutchins on curfew, the terms of which require him to be in his residence from 9 p.m. to 6 a.m. The Order should be upheld, and Mr. Hutchins should remain on a curfew.

1. **Background**

The government's recitation of the facts in its "Background and Conditions of Bond" is materially incomplete, failing to provide important background about Mr. Hutchins and his conduct while on pretrial release. The facts show that Mr. Hutchins should not be on home detention.

Marcus Hutchins is a 23-year-old man from the United Kingdom who is a worldwide hero for his vital role in stopping the WannaCry ransomware attack in May 2017. WannaCry infected hundreds of thousands of computers in over 150 countries, including in hospitals, banks, government agencies, and companies across the globe. Shortly after the attack began, Mr. Hutchins discovered a "kill switch" in the malware that substantially slowed down the spread of the attack. He has been lauded worldwide for his actions. See, e.g., Associated Press, Marcus Hutchins "Saved the U.S." From WannaCry Cyberattck on His Bedroom Computer (May 16, 2017), https://www.nbcnews.com/storyline/hacking-of-america/marcus-hutchins-saved-u-s-wannacry-cyberattack-bedroom-compter-n759931.

Mr. Hutchins grew up in a small town in North Devon, England, where he resided with his family and where he worked remotely for a Los Angeles-based computer security company until the time of his arrest. Mr. Hutchins has no prior criminal record, and after the time period covered by the indictment's allegations, started working as a professional in the cybersecurity field. The government acknowledges that the case against Mr. Hutchins is "historical" (Arraignment Transcript at 11:4-5) and does not claim that he is a danger to the community.

The government's motion fails to note the following important facts that undercut its own arguments and demonstrate Mr. Hutchins should at least be on curfew:

a. Following his arrest, Mr. Hutchins flew from Las Vegas to Milwaukee to attend his August 14, 2017 arraignment with the approval of Pretrial Services and consistent with his pretrial release conditions. He flew unaccompanied by anyone from law enforcement or Pretrial Services. Mr. Hutchins arrived in Milwaukee, established contact with the local Pretrial Service office, and attended his arraignment.

b. At Mr. Hutchins' arraignment and plea hearing, counsel for the government asked that Mr. Hutchins continue to be monitored via GPS, but noted that <u>after some period of compliance, if Pretrial Services determines GPS is no longer necessary, the government would likely support that recommendation</u>. (Arraignment Transcript at 10:2-6.) Counsel for the government also stated the government was "fine" with no travel restrictions within the United States as long as Pretrial Services had Mr. Hutchins' passport and travel document. (Arraignment Transcript at 13:24-25.)

c. Following his arraignment, and with the approval of Pretrial Services and consistent with his pretrial release conditions, Mr. Hutchins flew from Milwaukee to Los Angeles. He was unaccompanied by anyone from law enforcement or Pretrial Services, and he changed planes in Detroit.[1] Mr. Hutchins arrived in Los Angeles and established contact with the local Pretrial Service office. His passport remains with Pretrial Services.

d. Since being placed on home curfew, Mr. Hutchins has continued to fully comply with his pretrial release conditions and is in the process of securing a long-term lease on an apartment so that he has a place to reside during the course of the case.

Taken together, these facts justify a significant loosening of Mr. Hutchins' pretrial release conditions and support the Order.

---

[1] The defense's opposition to the government's initial motion seeking to overturn the modification mistakenly stated the city was Minneapolis, when it was Detroit. (<u>See</u> Dkt. No. 22.) But the fact that it was Detroit provides even more compelling evidence that Mr. Hutchins is not a flight risk. Detroit sits on the Canadian border, unlike Minneapolis, which is several hours away from Canada by car. If Mr. Hutchins had wished to attempt to flee the country while in Detroit, it would have been a short drive over a bridge to Windsor, Ontario. Furthermore, Mr. Hutchins was at the airport in Detroit with his brother, who caught a flight back to the United Kingdom. Mr. Hutchins did not attempt to board that flight either under his own identity or by assuming his brother's identity. Instead, he traveled to Los Angeles, as he had been directed by Pretrial Services to do.

## 2. The Order Should be Upheld Because Marcus Hutchins is Not a Flight Risk.

Mr. Hutchins is not a flight risk, and he should remain on a curfew as Magistrate Judge Duffin has ordered. The government's arguments fail because they are not supported by the facts or the law.

The government's motion is premised on fact that Mr. Hutchins is a citizen of the United Kingdom with no ties to the United States. (Mot. to Revoke at 2.) That will obviously not change. But Mr. Hutchins' perfect record of compliance with his pretrial release conditions—including air travel throughout the United States unaccompanied by law enforcement or Pretrial Services—shows that those conditions should be loosened, as both Pretrial Services and Magistrate Judge Duffin have determined. Furthermore, Mr. Hutchins is still on GPS monitoring and his passport is held by Pretrial Services.

Before he was placed on curfew, Mr. Hutchins was on home detention with only four hours of essential leave per week, and he needed 24-hour advance approval from Pretrial Services required before he could leave his residence. Thus, Mr. Hutchins has been permitted just four hours a week to perform basic life maintenance tasks such as shop for groceries, go to the bank, and seek a longer-term residence. This term is a significant and unwarranted restriction on his ability to begin establishing his new life in Los Angeles and more substantial ties to that community.

The government seeks to keep Mr. Hutchins on a tight lockdown despite his ongoing compliance with his pretrial conditions. In short, the government argues that because Mr. Hutchins has a greater opportunity to flee on curfew, he should remain forever on home detention. This argument is wholly unsupported by the law, as Magistrate Judge Duffin explained in discussing the goals of 18 U.S.C. § 3142:

> Except when charged with certain especially serious offenses (and Hutchins is not charged with such an offense), the expectation is that a defendant will be released on his own recognizance or on an unsecured property bond pending trial. 18 U.S.C. § 3142(b). Only if the court finds that such generally unrestricted release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community" may the court impose additional conditions. 18 U.S.C. § 3142(c)(1). And then the court may only impose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will <u>reasonably</u> assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. § 3142(c)(1)(B) (emphasis added).

(Order at 2 (emphasis in original).)

The fact that Mr. Hutchins—like any defendant—could possibly flee is not enough to keep him on home detention, as Magistrate Judge Duffins noted:

> The Bail Reform Act does not impose an obligation upon courts to craft conditions of release with an aim toward guaranteeing that a defendant will appear. See <u>United States v. Portes</u>, 786 F.2d 758, 764 n.7 (7th Cir. 1985) ("The conditions need not guarantee appearance but they must reasonably assure appearance."); <u>United States v. Orta</u>, 760 F.2d 887, 889 (8th Cir. 1985) (en banc) ("[T]he district court erred in interpreting the 'reasonably assure' standard set forth in the statute as a requirement that release conditions 'guarantee' community safety and the defendant's appearance. Such an interpretation contradicts both the framework and the intent of the pretrial release and detention provision of the 1984 Act."). Rather, the court may impose only the least restrictive conditions necessary to reasonably assure a defendant's appearance.

(<u>Id.</u> at 4.)

The government claims that because the current conditions are "successful," there is no need to modify them. (Mot. to Revoke at 4.) Not only does that argument directly contradict the tenets of 18 U.S.C. § 3142—which often lead to pretrial release conditions being loosened after a period of compliance—but the government is essentially claiming that because Mr. Hutchins has been compliant, he should remain substantially confined to his residence. Such a rigid and

5

Case 2:17-cr-00124-JPS-NJ    Filed 08/28/17    Page 5 of 9    Document 27

unforgiving rule would mean a compliant defendant should never have his or her conditions loosened.

The government argues that Mr. Hutchins' "conditions of bond are the only things securing his presence in the U.S." (Mot. To Revoke at 2.) Not true. Mr. Hutchins was released on a $30,000 cash bond, which will be forfeited if he flees the country. The government also overlooks the important fact that Mr. Hutchins has pleaded not guilty and intends to defend himself vigorously against the charges. For the reasons noted above regarding his involvement in stopping the WannaCry ransomware attack, he has an incredibly bright future in front of him, and he does not intend to throw everything away by fleeing.

The government also glosses over the fact that Mr. Hutchins' movements are and will continue to be monitored via GPS. This measure should weigh significantly in favor of loosening Mr. Hutchins' other pretrial conditions, as "[c]ourts have recognized that electronic monitoring is an effective means of deterring flight." United States v. Chavez-Rivas, 536 F. Supp.2d 962, 969 (E.D. Wis. 2008), citing United States v. O'Brien, 895 F.2d 810, 815-16 (1st Cir. 1990). GPS monitoring will still be in place when Mr. Hutchins is on curfew, and Pretrial Services will be able to track his movements at any time. Furthermore, Mr. Hutchins does not have his passport. Pretrial Services holds it.

The government's unduly harsh position is also undercut by its own statements at Mr. Hutchins' arraignment, where it indicated a willingness to permit significant loosening of Mr. Hutchins' pretrial conditions if he continued to show compliance. Specifically, counsel for the government said that the government would likely support the discontinuance of GPS monitoring after a period of compliance if Pretrial Services recommended it, stating:

6

>           Mr. Chmelar:   . . . They don't have a location for him yet [in Los Angeles]. So until that's determined we'd ask that he continue to be on GPS monitoring. After some period of compliance if Pretrial Services determines that GPS monitoring is no longer necessary then we can come back before the court. And if that is their opinion based on a longer term of compliance, we would likely support that recommendation.

(Arraignment Transcript at 10:2-6.) Despite such a clear statement, the government now claims it meant to say "home detention" instead of "GPS monitoring." (Mot. to Revoke at 6.) Regardless of what the government really meant, the record does not support such a restrictive condition, and it is not what Pretrial Services recommends, nor what Magistrate Judge Duffin thinks is appropriate.

At the arraignment, counsel for the government also clearly stated that it was "fine" for Mr. Hutchins to travel throughout the United States without any restriction, since Pretrial Services would be holding Mr. Hutchins' passport and travel document:

>           The Court:     Let me ask, do you need a travel restriction as long as he stays in the United States?
>
>           Mr. Klein:     Your Honor, we don't think we do and we'd ask just no travel restriction. It would be easier for everybody, as long as he stays in the U.S.
>
>           Mr. Chmelar:   That's fine. He's not -- we have his passport and his travel document. If that's not surrender -- if it's not coming back to him then we have no objection to that.

(Arraignment Transcript 13:25-14:1.) This position makes no sense in light of the government's instance that Mr. Hutchins be confined to his home. As the government would apparently have it, it is "fine" for Mr. Hutchins to travel throughout the United States for whatever reasons he wishes, including through airports close to borders and with international flights, but he should

7

otherwise be confined to his home because he is a flight risk. That position defies common sense and the Court should reject it.

Finally, the Court should not accept the government's suggestions in the alternative that the Court revoke the August 14 order permitting Mr. Hutchins to travel throughout the United States, that his travel should be limited to a geographic area, and that he should be placed on a more restrictive curfew that Pretrial Services has recommended. (Mot. to Revoke at 6.) Mr. Hutchins has established a record of perfect compliance with his pretrial conditions. This record shows that that if his conditions are modified, he should be given more freedom, not less.

If the Court sees fit to place any geographic restriction on Mr. Hutchins' ability to travel (not that it should), he should be restricted to the jurisdiction of the United States District Court for the Central District of California (which does not border Mexico). He would be agreeable to a condition that he cannot go any airports in the jurisdiction of the Central District of California without prior approval from Pretrial Services.

Mr. Hutchins should not be restricted to the limits of the City of Los Angeles, as the government suggests. (See id.) Los Angeles has jagged boundary lines that even native Angelenos often do not know. For the Court's convenience, a map of the City of Los Angeles and the jurisdiction of the United States District Court for the Central District of California are attached as Exhibit A.

Finally, the Court should reject the government's proposal to impose a more restrictive curfew on Mr. Hutchins by requiring him to be in his residence from 6 p.m. to 6 a.m. (See id.) The defense understands that 6 a.m. to 9 p.m. are the standard times, and a more restrictive time period is unwarranted. The government articulates no basis for this request, and there is no reason to deviate from the norm.

8

For all the above reasons, the Court should deny the government's motion to revoke the order amending the condition of release.

DATED: August 28, 2017

Respectfully submitted,

　_/s/ Brian E. Klein_
BRIAN E. KLEIN
Baker Marquart LLP
2029 Century Park East, 16th Floor
Los Angeles, CA 90067
Email: bklein@bakermarquart.com
Telephone: (424) 652-7800


　_/s/ Marcia Hofmann_
MARCIA HOFMANN
Zeitgeist Law PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

*Attorneys for Marcus Hutchins*