UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION


UNITED STATES OF AMERICA,      ) CASE NO: 2:17-CR-00124-JPS-NJ-2
                               )
              Plaintiff,       )          CRIMINAL
                               )
     vs.                       )      Milwaukee, Wisconsin
                               )
MARCUS HUTCHINS,               )   Wednesday, August 30, 2017
                               )
              Defendant.       )   (10:18 a.m. to 11:01 a.m.)


HEARING RE:
(1) MOTION TO STAY;
(2) MOTION TO REVOKE BOND CONDITIONS


BEFORE THE HONORABLE PAMELA PEPPER
(FOR HONORABLE JOSEPH P. STADTMUELLER),

UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:              SEE PAGE 2


U.S. Probation Office:   Rebecca Capstick / Jennifer Morgan

Courtroom Deputy:        Kristine Wrobel

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES**</u>:


For Plaintiff:              MICHAEL CHMELAR, ESQ.
                            Office of the U.S. Attorney
                            517 E. Wisconsin Avenue, Room 530
                            Milwaukee, WI 53202


For Defendant:              MARCIA C. HOFMANN, ESQ.
                            Zeitgeist Law
                            25 Taylor St.
                            San Francisco, CA 9412

                            BRIAN E. KLEIN, ESQ.
                            Baker Marquart
                            2029 Century Park E, Suite 1600
                            Los Angeles, CA 90067

1   <u>**Milwaukee, Wisconsin; Wednesday, August 30, 2017; 10:18 a.m.**</u>

2   <u>**Call to Order**</u>

3        **THE CLERK:**  The Court calls the Criminal Case 2017-

4   cr-124, the *United States of America versus Marcus Hutchins.*

5        Please state your appearances starting with the

6   attorney for the Government.

7        **MR. CHMELAR:**  Good morning, your Honor, Michael

8   Chmelar on behalf of the United States.

9        **PROBATION OFFICER CAPSTICK:**  Good morning, your

10  Honor, Rebecca Capstick.

11       **MR. KLEIN:**  Good morning, your Honor, Brian Klein for

12  Marcus Hutchins whom I'm with --

13       **THE DEFENDANT:**  Good morning.

14       **MR. KLEIN:**  -- in Nevada custody.

15       **THE COURT:**  Good morning to you both.

16       **MS. HOFMANN:**  Good morning, your Honor, Marcia

17  Hofmann on behalf of Marcus Hutchins.

18       **THE COURT:**  Good morning.

19       **PROBATION OFFICER CAPSTICK:**  Rebecca Capstick for

20  United States Probation.

21       **PROBATION OFFICER MORGAN:**  And Jennifer Morgan, good

22  morning.

23       **THE COURT:**  Good morning to everyone and thank you

24  all for taking the time to appear at this hearing.  I know it's

25  early on the West Coast and I appreciate everyone getting

1 themselves to where they needed to be.  Unfortunately the way

2 that our calendar is this was the only time we had available

3 today and the rest of week isn't looking so hot either, so just

4 briefly, if you'll bear with me, and my -- this is obviously

5 Judge Stadtmueller's case and Judge Duffin has been handling

6 the Pretrial proceedings.  I am covering this hearing today

7 because Judge Stadtmueller is in the middle of a rather

8 involved and extensive trial and I am the Judge who was on duty

9 this month and that is why I'm the person who scheduled a

10 hearing when a hearing is taking place in front of me.

11 　　　　　I have reviewed the file and am aware that -- that

12 the Indictment was returned on July 11th and I believe

13 Mr. Hutchins made his first appearance in front of Judge

14 Duffin.  He appeared in Nevada, but also made his first

15 appearance in front of Judge Duffin on August 14th.  And on

16 that date Judge Duffin released Mr. Hutchins on pretty much the

17 same conditions that the Magistrate Judge in Nevada had imposed

18 with a couple of additional tweaks, if you will, that he would

19 be allowed to reside in Los Angeles, allowed to continue his

20 work and access a computer with the caveat that he not -- that

21 he avoid the sinkhole, continue the GPS monitoring and the

22 travel restriction that he not leave the continental United

23 States.

24 　　　　　The other condition I think that Judge Duffin

25 modified was that Mr. Hutchins had been required to be in a

 1    halfway house and that condition was lifted.

 2            As I understand the pleadings on a couple of

 3    occasions Mr. Hofsky (phonetic) from Pretrial Services or from

 4    our Pretrial Probation Department had approached the Government

 5    to talk about whether or not Mr. Hutchins' condition that he be

 6    on home confinement could be replaced with a condition that he

 7    be on curfew.  The Government -- according to the Government

 8    rejected that request a couple of times.

 9            On August 24th Ms. Capstick -- I think maybe it was

10    Ms. Capstick who approached the Government, I apologize, on

11    August 24th Ms. Capstick then filed a letter request with Judge

12    Duffin asking for that modification.  Judge Duffin approved it

13    at which point the Government asked that Judge Duffin stay that

14    decision and hold a hearing.

15            Judge Duffin declined to hold the hearing, but did

16    stay the changing condition and gave the Government an

17    opportunity to file a Motion asking that the release conditions

18    be reconsidered and amended.

19            The Government did file that Motion on August 25th

20    and the Motion was denied by Judge Duffin.

21            And so at that point the Government asked that, in

22    essence, appealed and asked that the District Court consider a

23    Motion that it revoke the amendment to the conditions of

24    supervised release.

25            And I believe that where we stand now is that the

Government has asked that I either revoke Judge Duffin's August

25th Order that allowed Mr. Hutchins to be on curfew instead of

home confinement, and in the alternative, if I was not willing

to do that, the Government is asking that I revoke Judge

Duffin's original Order which allowed Mr. Hutchins to travel

throughout the continent of the United States. And the

Government is asking that instead of allowing travel throughout

the continent of the United States that he be restricted in his

area of travel to something, for example, like the boundaries

of the City of LA, and that the curfew be from 6:00 a.m. to

6:00 p.m. as opposed to 6:00 a.m. to 9:00 p.m.

So that's my understanding of at least procedurally

where we are at this point, and my understanding is what I'm

being asked to do is to either revoke the Order allowing

curfew, or if I'm not willing to do that to revoke the Order

allowing travel in the continental United States and to modify

the usual curfew conditions.

So let me first ask the Government, Mr. Chmelar, have

I correctly stated what the Government is seeking?

**MR. CHMELAR:** I think so. I'd turn the caveat that

if -- if, based on the timing of the issuance of the August

14th Order allowing travel within the continental US it's no

longer viable to revoke that Order.

We'd then ask that the -- in essence the modification

to his bond -- his bond condition be modified to -- to address

1  that and restrict travel to the Los Angeles area or some other

2  local geographical area related to his temporary address.  So

3  in essence I'm asking for the same thing.  So if we can't

4  revoke the August 14th Order allowing travel we'd ask that the

5  bond conditions be amended nonetheless to address that.

6       **THE COURT:**  Okay, thank you for that clarification.

7       Before I hear any argument, Ms. Capstick and

8  Ms. Morgan, anything to report in terms of updates with regard

9  to Mr. Hutchins' compliance at this point?

10       **PROBATION OFFICER CAPSTICK:**  Your Honor, Mr. Hutchins

11  has been on curfew status since Friday and as of that date he

12  has not had any issues of noncompliance, has continued to come

13  into his house by 9:00 p.m. every night.  From my understanding

14  he has secured a long -- an apartment and signed a long term

15  lease, and there have been no other issues or concerns on our

16  end.

17       **THE COURT:**  All right, thank you for that update,

18  Ms. Capstick.

19       I have reviewed --

20       **MR. KLEIN:**  Your Honor -- sorry, your Honor, this is

21  Brian Klein.

22       **THE COURT:**  Yes, sir.

23       **MR. KLEIN:**  I didn't -- sorry to interrupt and

24  obviously I can't see you --

25       **THE COURT:**  Yeah.

1      **MR. KLEIN:** (indiscernible). But you didn't mention

2  that we had filed oppositions. I assume you received our

3  oppositions?

4      **THE COURT:** Yeah, I'm sorry. I received your

5  oppositions and have reviewed -- I have reviewed everything

6  that's been filed in the case so far, and I apologize, I should

7  have -- I should have made that more clear. I focused on the

8  Government's pleadings only because I wanted to get the

9  procedural status of what's happened thus far and where we are

10  straight to make sure that I hadn't missed anything, so I

11  apologize for that.

12      So, again, I have reviewed all of the documents that

13  have been filed in the case and, Mr. Chmelar, this is the

14  Government's Motion so I'll ask, without obviously rehashing

15  your position, I'll ask if you have anything to add?

16      I understand and I should note that this is a, in a

17  sense, de novo hearing, but I do not have to defer to

18  Magistrate Judge Duffin's rulings if I don't think that they're

19  appropriate and I just -- that's what the District Court's

20  function is in reviewing the request for either modification of

21  bond or review of bond. So while I am reviewing this de novo I

22  have looked at everything that Judge Duffin concluded, and so I

23  don't think there's any need to go back and rehash arguments

24  that already have been made but, again, I will Mr. Chmelar if

25  you have anything to add to the Government's request?

1    **MR. CHMELAR:**  Nothing to add to the Government's

2  request, but I do want to clarify a few points.

3    **THE COURT:**  All right.

4    **MR. CHMELAR:**  I'm not going to reiterate opposition

5  on his ties to the US, I think I've made it clear in the

6  Government's Motion to Revoke and Modify that we filed with

7  your Honor.

8    I do want to clarify that procedurally the way that

9  the arrest took place and how we got to the Eastern District of

10  Wisconsin, the timing of the request for curfew, I also would

11  like to the Court to know he was arrested on August 2nd in

12  Nevada as he was leaving the country after, in essence, a

13  business/I would say a vacation trip to the US.

14    He had his Rule 5 removal hearing on August 3rd.  My

15  understanding based on the documents I reviewed from the

16  District Court in Nevada he posted bond and was released from

17  custody on August 7th.

18    He then traveled here for his arraignment which was

19  held on the 14th.

20    There was some suggestion, I think, in both the

21  Defense filing and in Judge Duffin's Order denying a Motion to

22  Reconsider that, you know, the fact that he came to the Eastern

23  District of Wisconsin for the arraignment should be credited to

24  him and considered in amending the bond conditions and removing

25  him from home confinement and putting him on curfew.

1          The bond setting that was submitted to the Court

2   detailed how that actually occurred.  He was walked through

3   security with someone from Pretrial Services.  They waited

4   until he was actually on the plane before they left and he was

5   -- that was also facilitated either through US Marshals Service

6   or TSA, some Federal agency at the airport that he left from

7   and arrived -- that he left from to arrive here.  I believe the

8   same practice took place when he left here.

9          His passport had to be sent over here and I assume he

10  had to be walked through the security, so it was a very tight

11  operation.  He was on GPS monitoring while that all took place,

12  so I don't think he had many options other than to fly here

13  once he boarded the plane or the switch onto a different

14  flight.

15         After the arraignment -- so he was out of custody for

16  approximately seven days.  I received the first request from

17  the Probation office to put him on a curfew based on his

18  compliance the next day, the 15th.  So there's a week of -- of

19  monitoring his activity under which he was under home

20  confinement.

21         And then the Order changing it to a curfew took place

22  on the 22nd, as your Honor knows.

23         So I don't think that at the time these requests

24  started to come in from Probation there was a long history to

25  -- to base the request on the change from home -- home

 1    detention to curfew.

 2             Additionally, I think the Government's position,

 3    which I think we made clear on -- in a filing, but I'll also

 4    reiterate here, it seems that the approach both by Judge Duffin

 5    and the Probation office, and by the Defense in this case is

 6    one that if a person is compliant with the conditions that are

 7    set, which they're obligated to follow or they face contempt

 8    under a 31.48 they should be rewarded, and that somehow

 9    compliance with bond conditions in this case is now equated to

10    not being the least restrictive available or in another way to

11    view that is greater than necessary.  That is not the view the

12    Government takes on this case.

13             We believe that since he is compliant and he was

14    successful on home detention there was no reason to alter those

15    bond conditions, and I -- I -- under 31.42 I don't -- I don't

16    know if compliance is a ground to reopen a detention hearing

17    and to modify.  I know that 31.42(c)(3) says that it can be

18    modified any time.

19             31.42(f) also talks about the need for new

20    information material to the decision of detention or release be

21    proposed.

22             I looked through cases trying to determine how

23    exactly compliance is -- is viewed by District Courts in

24    determining whether or not bond conditions should be modified.

25    I couldn't find that many cases.  I found a US District Court

1  case out of Massachusetts, a 2016 case that addressed

2  compliance and the fact the person was in compliance was

3  rejected as a reason to alter bond conditions, and that's --

4  it's a Lexis cite 2016 US District Court, Lexis 90969 US

5  District Court for the District of Massachusetts decided on

6  July 13th, 2016, it's *United States versus LaFrance*.

7         So I question whether or not there is justification

8  for 31.42 at this point to even modify the bond conditions that

9  Judge Duffin did.

10         I also would like to note that we know in the defense

11  we made two points in the Response that we filed with Judge

12  Duffin to revoke.  One is that we agreed to the US continental

13  travel restriction basically allowing him to travel through the

14  US.

15         But that agreement, as I noted in our -- in our

16  Motion with this Court, was under the terms of home

17  confinement.  In order for him to travel throughout the United

18  States at that point he would have needed approval from

19  Probation and so the idea being that if, for some reason, based

20  on work or some reason that he had a justification to go

21  somewhere other than the location of his temporary residence or

22  the Eastern District of Wisconsin, and that was a valid reason

23  as determined by the Probation office or Pretrial Service

24  office that was supervising him in California maybe there would

25  be grounds for him to do that, but they would know where he was

1    and know the reason for doing that.

2          Under -- and in the change that was made by Judge

3    Duffin adding this -- changing this to curfew essentially

4    folded in modifications that were agreed to under one set of

5    conditions and they were not -- those conditions that were set

6    at that time were never altered under a new set of factors

7    being curfew.  He now has the ability -- my understanding the

8    way that this is working based on conversations with Probation

9    is that the way this is working now he can leave his residence

10   at 6:00 a.m. essentially and go anywhere he wants.

11         The Government's concern is that it limits our

12   ability to know if he is attempting to leave the jurisdiction

13   or to leave the United States, and despite -- despite what is

14   being viewed as the Government's requests for guarantees that

15   he does not flee, that's not just true.  We're looking for

16   reasonable assurances that he won't.  And, you know, I think

17   the only thing that would guarantee him not to flee would be

18   his detention in, you know, a county with a BOP or with the US

19   Marshals Service, but we're not asking for that, we're just

20   asking for reasonable assurances that he won't leave.  And I

21   think the changes that were most recently made to his bond just

22   simply increased that risk.  And for those reasons we'd ask

23   that this Court revoke the condition allowing him to be on a

24   curfew, and as we asked in the Motion and at the start of this

25   proceeding, in the alternative we'd ask that at least his

1   travel be restricted to a geographical location around his

2   residence, maintaining his GPS monitoring and to limit his

3   times of travel away from the home and that is basically based

4   on the fact that people, even now -- people just don't work, I

5   don't think, past certain hours and I think it becomes more --

6   a bigger problem to detect noncompliance at that point, and I

7   could be -- I could be wrong, maybe Probation has some insight

8   to provide to the Court on that matter, but for those reasons

9   we'd ask that -- that this Court revoke that condition and

10  place Mr. Hutchins back on home confinement or amend the

11  conditions as we've requested in our Motion.

12          **THE COURT:**  A couple things before I turn to the

13  Defense.

14          Ms. Capstick, Ms. Morgan, I believe I'm correct, but

15  please tell me if I'm wrong that a Court can impose a condition

16  that a Defendant seek permission from a supervising officer to

17  travel somewhere regardless of whether that person is on home

18  confinement, those two conditions are not mandatorily linked to

19  each other, am I correct?

20          **PROBATION OFFICER CAPSTICK:**  That's correct, your

21  Honor.

22          **THE COURT:**  All right.  The second question that I

23  have is am I correct that as we sit here right now Mr. Hutchins

24  remains on GPS monitoring?

25          **PROBATION OFFICER CAPSTICK:**  That's correct, your

1    Honor.

2         **THE COURT:**  All right, thank you.

3         And, finally, I am a little bit confused,

4    Mr. Chmelar, and perhaps you can clarify for me, you made

5    several comments about wondering whether or not I have any

6    authority to modify the conditions, or perhaps you were

7    referring to Judge Duffin, having any authority to modify

8    conditions that he, himself, imposed, and yet I hear you asking

9    me to now modify current conditions?

10        **MR. CHMELAR:**  No, and I'm sorry if that was

11   confusing.  My point I was trying to make is that an individual

12   under Pretrial Service conditions, all conditions, the fact

13   that that person is compliant, which was -- which was what was

14   posed to Judge Duffin as the reason to modify his conditions

15   and put him on the curfew I don't think was a justified reason

16   at that point.

17        **THE COURT:**  Then I may have misunderstood because I

18   thought Probation was asking to modify the conditions because

19   home confinement, under Mr. Hutchins' peculiar circumstances,

20   was unduly restricted.

21        **MR. CHMELAR:**  Well, I think there were two, two

22   arguments made to Judge Duffin.  One was that, based on what I

23   saw that was filed with Judge Duffin and I can state from my

24   communications with Probation they were two-fold as well, one,

25   that Probation thought it was too restrictive and equated

1  essentially to home incarceration because he was able to work

2  from home and, in fact, my understanding he was working from

3  home.  The other was that he was being compliant.

4       So I don't think of that as a cause to modify the

5  bond conditions before -- shouldn't have been a reason to

6  modify his bond conditions before Judge Duffin.

7       I certainly think that your Honor, under -- at this

8  point of the proceedings, certainly does.

9       **THE COURT:**  Okay, thank you for that clarification.

10       Mr. Klein or Ms. Hofmann?

11       **MR. KLEIN:**  To answer, your Honor, I would like to

12  add a few points.

13       I would note a couple things.  Again, you know, he

14  had been on home curfew four days now, has been compliant.

15  During that time it allowed him to secure an apartment for a

16  six month lease so that he can have some place here to build

17  ties and also to, you know, having the security of having a

18  place.  We've been in (indiscernible) as of now, and he's going

19  to be transitioning to his leased apartment very soon.

20       I would also note that what Mr. Chmelar didn't tell

21  you was that when he flew to Los Angeles he transited through

22  Detroit, and there there was no Marshal, there was no law

23  enforcement, there was no anybody.  Detroit, as your Honor,

24  knows is very close to the Canadian border, it's an

25  international airport.  If Mr. Hutchins was intending to flee

1    or have any notion, which he does not, that would have been the

2    easiest way for him to do so.  He's basically -- the bridge up

3    to Windsor is right there so I think that is an important fact

4    that he did do that flight and appeared in Los Angeles and he's

5    been compliant since then.

6           I would also note, your Honor, I'm a little surprised

7    that the Government is taking the position that a period of

8    compliance doesn't matter when at the original arraignment it

9    said the exact opposite, and I would quote for your Honor

10   Mr. Chmelar himself when he said:

11          "After some period of compliance Pretrial Services

12          determines that GPS monitoring is no longer necessary

13          then we can come back before the Court.  And if that

14          is their opinion based on a longer term of compliance

15          we would likely support the recommendation -- that

16          recommendation."

17           I don't know that there's a requirement for what the

18   length of compliance is.  I think Mr. Hutchins, and we had

19   argued at the arraignment, should not even be on home detention

20   or home curfew, but Judge Duffin set those restrictions.

21          He's clearly been compliant.  He's flown now.  He's

22   secured an apartment, he's been on home curfew four days now

23   and he spent that time not trying to flee, of course, but

24   trying to secure a residence here.

25           I would note, your Honor, and I think you asked a

good question of the Government about his travel, he doesn't
have his passport so even if he wanted to travel on home curfew
he still has to notify Pretrial Services here in LA and
presumably they would ask him, and we don't have a problem with
them asking him where are you going?  Can we have a copy of
your itinerary?  You know to make sure that he's traveling
within the continental United States.  And I think the
Government did agree to that condition.  Maybe it was under the
context of home detention but, again, there's a natural like
tension there between having home detention and being able to
travel anywhere in the US when you request your passport from
Pretrial Services and presumably they'd approve it.  So I think
that's an important point to keep in mind.

        And we don't have a problem with a condition that he
has to request and get the trip approved by Pretrial Services
in the continental United States just so you know.

        I would also note, you know, that, you know, I think
it really does speak volumes that Pretrial Service is the ones
who brought this to the Court, that Judge Duffin agreed.  I
know it's a de novo review, but I think Judge Duffin's opinion
is well founded.  And what the Government is ignoring about
31.42 they talked about the reasonable assurances, but what
they ignored is the "least restricted means."

        The goal of this process is to make sure, and we all
want to make sure, and Mr. Hutchins does, too, that he appears

1  in Court and he wants to contest this case.  He would have

2  everything to lose by fleeing and nothing to gain.  He has no

3  intent to flee period.  And I don't think there's any evidence

4  of -- any new evidence that he's made plans to flee which, of

5  course, he hasn't.  In fact, all of the evidence points to the

6  exact opposite and it just keeps accumulating day after day

7  after day.  So we would ask your Honor to, you know, grant the

8  condition that he be placed on home curfew.

9          I think this notion that the hours should be like

10  6:00 to 6:00, that's not how the curfews are done.  There's a

11  standard tier and you can talk to Pretrial Services, your

12  Honor, about this.  There's a standard tier of the sort of

13  restrictions with home incarceration, home detention and then

14  home curfew, and the standard is, my understanding, in the

15  Eastern District of Wisconsin 6:00 to 9:00.  I actually think

16  in Los Angeles, maybe 'cause we're like a late night city it's

17  6:00 to 10:00, we could check on that --

18          **THE COURT:**  No, it's 'cause it takes you guys that

19  long to get home on the freeway.

20          **MR. KLEIN:**  Well, your Honor, it did take me a long

21  time to get to Mr. Hutchins' apartment this morning, I will

22  tell you that --

23          **THE COURT:**  I'm sure it did.

24          **MR. KLEIN:**  -- though I did get up very early.  But

25  -- yeah, and that's -- that's true.

1        And also, you know, again, he is here to work with

2   us, to fight his case.  He, obviously, intends to vigorously

3   challenge this case, he's pleaded not guilty, and we would ask

4   your Honor to put him on home curfew with no restrictions, with

5   the same conditions in place.

6        **THE COURT:**  Thank you, Mr. Klein.

7        I want to note a couple of things.  First of all, the

8   -- because this is a de novo review I don't think there's any

9   basis in discussing whether anybody does or doesn't have the

10  authority to modify conditions.  I'm basically being asked to

11  consider conditions anew as it were.

12       I will say that in my experience, which includes

13  seven years as a Federal Prosecutor, eight years as a Federal

14  Criminal Defense attorney and the last several years as a

15  District Court Judge, I have known many Judges to consider the

16  question of whether someone is compliant with the conditions of

17  their release in determining whether or not to continue those

18  conditions.  And the reason that that is a factor that I

19  believe the law allows a Judge to consider is because of the

20  prong that Mr. Klein just talked about, which is the

21  requirement under the statute that a Judge considered the least

22  restrictive means necessary to accomplish whatever the goal is,

23  whether it's to prevent danger to the community or to prevent

24  flight, and so Probation I think fairly frequently monitors and

25  Defense Counsel frequently monitor whether or not a condition

1   is too restrictive because if it's too restrictive it violates

2   the statute.  And, in point of fact, Ms. Capstick, in her

3   letter to Judge Duffin, noted that one of the reasons that

4   Probation was asking for a reduction from home detention to

5   curfew was because they've been doing just that, they have been

6   monitoring over time how Mr. Hutchins has been doing under that

7   condition and trying to determine whether that -- the home

8   detention condition may be too restrictive.  They came to the

9   conclusion that it was and that's why they requested Judge

10  Duffin to reduce the condition to home curfew -- to curfew.

11          There are a number of factors here that -- to

12  consider.

13          The first one is that Mr. Hutchins has no prior

14  criminal history.  I realize that he's, forgive me,

15  Mr. Hutchins, with no disrespect, 12 years old compared to

16  those of us who have gray hair, so he hasn't had time to

17  accumulate a tremendous amount of criminal history.

18  Nonetheless I've met plenty of 23 year olds who've done their

19  fair share of criminal history accumulation.  Mr. Hutchins

20  hasn't.  He does not have any prior criminal history.

21          He is gainfully employed.  It is an unusual term of

22  employment in the sense that he can do it anywhere and he

23  doesn't have to show up at a particular office or a particular

24  factory every day, but he is gainfully employed.

25          As of today's date we're looking at not quite, but

1  moving in in a month.

2          He has had no violations of any condition that has

3  been imposed on him and, again, I think that is an appropriate

4  factor to consider.

5          There's been little mention of the fact, other than

6  in Mr. Klein's papers at one point, that he posted cash bail

7  which he would lose if he were to flee or, frankly, to violate

8  other conditions of his release as well, and I don't know

9  whether $30,000 is a lot of money to Mr. Hutchins or not, it

10 would a lot of money to me to flush down the toilet, so I'm

11 guessing that that might have some impact.

12         I agree --

13         **MR. KLEIN:**  Your Honor, just -- I did see a note, I

14 could, you know, undercut myself here, but that bail, just for

15 the sake of clarity, wasn't posted by Mr. Hutchins himself, but

16 it would still be meaningful to the person who did post it to

17 have that bail disappear because he -- which he's not going to

18 do.

19         **THE COURT:**  Thank you for that clarification.  So he

20 would make somebody else really PO'd if he fled.

21         As far as I can tell, the Government's main concern

22 here is the fact that Mr. Hutchins is not an American citizen,

23 but is a citizen of the U.K. and that seems to be what the

24 Government is relying on in -- in arguing that Mr. Hutchins is

25 a risk of flight.  That and the fact that he doesn't have any

1  family here in the United States, that's the representation

2  that the Government has made.

3       I don't know whether that was -- that's correct.

4  There was some mention of Mr. Hutchins meeting up with his

5  brother at the Detroit airport when they were both passing

6  through at the same time.  It sounds like his brother was

7  headed back to Europe so maybe his brother's not from here.  I

8  don't know whether he doesn't have any other family here.  I'm

9  an American citizen and I have family in England, so I -- I --

10  the simple fact that someone lives in another country doesn't

11  necessarily mean they don't have family in the United States,

12  but I take it that the argument is that perhaps he doesn't have

13  family in the area where he currently lives.

14       And those seem to be the two factors that the

15  Government is relying on in asking that there be heightened

16  supervision of Mr. Hutchins.  And I think there are several

17  things to note in that regard.

18       Number 1, as Mr. Klein has pointed out, Mr. Hutchins

19  has surrendered his passport.

20       Nobody who is listening to this discussion is naïve

21  enough to think that somebody can't leave a country without a

22  passport if they really want to.  People do it all the time,

23  but for someone like Mr. Hutchins there would be some pretty

24  high risk associated with doing that.

25       He is someone who is known in certain communities,

1    which would mean that it would probably be a little bit more

2    difficult for him to just fade into woodwork.

3        He is somebody who, I assume, must have family

4    somewhere, and if he were to disappear and to leave the United

5    States we have extradition treaties with Canada and England and

6    Mexico if those were three of the places that he thought he

7    wanted to go, and if those had to go into effect or to be used

8    that would have an impact on Mr. Hutchins' friends, family and

9    co-workers and his job because suddenly folks all over the

10   place would be looking for him and intruding into the lives of

11   his friends and family to try to track him down.  I'm guessing

12   that that would be something that would be a consideration for

13   him, not to mention that he's had to work pretty hard to find

14   somewhere to live in Los Angeles and somewhere to stay while he

15   was here in Milwaukee.  One could only imagine what he would

16   need to do if he ended up finding himself in Guadalajara or in

17   Quebec, so I am assuming that there would be some bar to his

18   suddenly taking him off -- himself off somewhere else simply in

19   that level of complication.

20       The biggest concern that I have, frankly, is the one

21   that Probation has expressed.  Home detention is not meant to

22   be punishment.  Mr. Hutchins has not been convicted of a crime,

23   he has been accused of having committed crimes, but he has not

24   been convicted of a crime, and so Pretrial release conditions

25   or Pretrial detention are not to be punitive, they are not to

1  be punishments.  They are to be, as I've already said, the

2  least restrictive means of making sure that a person shows up

3  or a person doesn't pose a danger to the community.

4          Because of Mr. Hutchins particular circumstances, the

5  fact that he works out of his home and doesn't go to a brick

6  and mortar place every day to work; the fact that, as I

7  understand it, he doesn't have a car, which is why Mr. Klein

8  had to venture out to Mr. Hutchins' home to be able to

9  participate in this hearing today; the fact that he doesn't

10 have a passport; the fact that he is a young guy who is healthy

11 and doesn't have to go to 55 doctors' appointments a week; the

12 fact that he's not a drug addict so he doesn't have to go to

13 drug treatment and mental health treatment every week, the

14 upshot of all of that is that home confinement for him, as I

15 understand Probation to have said it, ends up meaning that he

16 basically cannot leave his home except to go grocery shopping

17 and that becomes, under those particular circumstances,

18 punitive.

19          If Mr. Hutchins were, as many of the people who

20 appear in front of me are, people with medical problems, people

21 with part time jobs, people with addiction, people with mental

22 health issues and they have 35 appointments they have to get

23 out to every week then home detention for him would not be

24 punitive because he would be able to continue to go about and

25 interact with human beings and live his life and still have to

1    come home so that everybody would know that he was home at a

2    reasonable hour.

3          But the fact that Mr. Hutchins, this is a very odd

4    sort of ironic position for him to be in where the fact that he

5    hasn't done any of those things, the fact that he's -- he is

6    abiding by the rules of society and is lucky enough to have his

7    health, means that home detention for him is a punishment and

8    is punitive and that was my understanding of why Probation had

9    asked for him to be placed on curfew.  That and the fact that

10   he hadn't violated the conditions of home detention.

11         I also must say in response to the Government's

12   argument, the Government argues that -- that Probation and the

13   Defense are asking for Mr. Hutchins to be rewarded for

14   complying with the conditions of his bond.

15         That's not my understanding.  And, in fact, I

16   understand the Government's argument to be that's circular in

17   nature, the Government says he's been on the home detention and

18   he hasn't violated and so that means the home detention

19   conditions are working.  That argument would be true if I

20   locked him up in a Milwaukee County Jail.  If he was locked up

21   in the Milwaukee County Jail and he wasn't violating we could

22   say, see, that's where he needs to be because he's not

23   violating.

24         In point of fact he has been out in a circumstance

25   where if he wanted to he could get himself in an Uber and make

1   it to the Mexican border in several hours at somewhat of a

2   hefty price and be gone.  He could have gotten out of the

3   Detroit airport as Mr. Klein pointed out and gone.  All of

4   those things could have happened, they haven't.  He is present

5   this morning at this hearing, even though everybody had to get

6   up on the West Coast at the crack of dawn for that to be able

7   to happen.  And so the argument that if we impose a condition

8   and the person doesn't violate it that must mean the condition

9   is working and has to stay in place is, to me, more circular

10  than the argument that they've been complying and so we can try

11  a less restrictive means which is what I believe Probation has

12  been asking for.

13          So for all of those reasons, even reviewing this de

14  novo without giving any consideration to what Judge Duffin's

15  Opinions may or may not have been, I believe that curfew is

16  absolutely appropriate under these circumstances.

17          I also believe that the curfew that is the usual

18  curfew that's imposed here in the Eastern District is

19  appropriate.  I'm a little mystified by the request that if I

20  impose curfew that I make it 6:00 to 6:00 instead of 6:00 to

21  9:00.  It seems to imply somehow that if Mr. Hutchins had three

22  additional hours he could go to San Marcand (phonetic) and be

23  back in time.  I can certainly imagine that he might travel a

24  fair distance in California or even to another state if he's

25  got 14, 15 hours instead of 12, but I don't see how the three

1    hours necessarily makes a difference.  If he wants to be -- if

2    he wants to do something illegal he can do it in three hours.

3            I'd also disagree that regular working hours are 6:00

4    to 6:00.  Those aren't my regular working hours and I'm

5    frequently working after those hours, and I suspect that

6    somebody with the sort of work that Mr. Hutchins has may work

7    at 2:00 a.m. and may not work until 10:00 in the morning, and

8    then may work at 3:00 in the afternoon.  I'm guessing that

9    that's a very different schedule when you work from home.  When

10   I work from home my schedule is different because I throw in a

11   couple loads of wash and then I go back and I work on it for

12   awhile.  So I think that curfew is an absolutely appropriate

13   condition here and -- and I am not going to change Judge

14   Duffin's order in that respect.  I don't think that home

15   confinement is appropriate.

16           I am going to add the condition that -- that

17   Mr. Klein discussed.  I don't think there's anything

18   unreasonable about asking Mr. Hutchins if he's going to go,

19   particularly outside the State of California, if he's going to

20   travel outside the State of California, that he notify

21   Probation that he is going and when he'll be back.  That's a

22   pretty standard condition that we place on just about anybody

23   who is out on their own recognizance in some way or another.

24   If nothing else, and Mr. Hutchins, as I noted, is on GPS, and

25   if he notifies Probation before he goes outside the State then

1   at least they know that, you know, there's -- nobody gets a

2   little bit concerned and goes "Gosh, you know, GPS is -- what's

3   going on here?"  People have a heads up and they know what's

4   happening, so I will add that condition that -- that

5   Mr. Hutchins notify Pretrial Services before he's leaving to go

6   anywhere outside the State of California and that notification

7   ought to include letting them know when he's going to be back

8   and where he's going to be staying while he's there.

9           If for some reason Probation says that they have a

10  problem with whatever trip he's notifying them about,

11  Mr. Klein, I assume you're aware, and I assume it works in

12  California the same way, you can always ask me to consider

13  giving permission if, for some reason, the Probation Department

14  is concerned about the travel, and I'm more than happy to

15  consider that, and you should try to consider those requests

16  just as quickly as I possibly can, or you can ask Judge

17  Stadtmueller or Judge Duffin.

18          **MR. KLEIN:**  Yes, your Honor, one quick -- one quick

19  thing, your Honor, sorry to interrupt --

20          **THE COURT:**  Uh-huh (yes.)

21          **MR. KLEIN:**  -- but, you know, the idea he's on home

22  curfew, if he wanted to go up and visit Marsha to work --

23  Marsha Hofmann's in San Francisco, I'm in Los Angeles, he would

24  still need to tell Pretrial because they would see him not back

25  at his home, so we understand your condition, we appreciate --

1  we're not opposing that, just wanted you to know as a practical

2  reality he would still need to notify them.  We wouldn't put --

3       **THE COURT:**  If he was going to be home at -- if he

4  was going to be home after 9:00, right?

5       **MR. KLEIN:**  Yes.  Yes, if he wanted to go visit

6  Marsha, if he had to take a flight in the morning and he

7  couldn't get back before 9:00 he would still need to notify

8  Pretrial.  We don't have a problem with that, I just wanted you

9  to know that -- that practical reality.

10       **THE COURT:**  Sure, and I understand that and that's

11  what you get for living in a big state, I reckon.  'Cause if he

12  lived here and he had to go to Madison he wouldn't have a

13  problem.

14       But, at any rate, I think if -- for the time being if

15  -- if he's going to go somewhere where he's going to be getting

16  back after 9:00 a.m. or he's going to have to leave before 6:00

17  a.m., then obviously the curfew requirements will require him

18  to notify Probation.  Otherwise I'm talking about out-of-state

19  travel.

20       The other conditions that were imposed I will leave

21  in effect.  And by "other" I mean all of those other than home

22  confinement because that condition is now off the table.

23       Mr. Chmelar, any questions?

24       **MR. CHMELAR:**  No.

25       **THE COURT:**  Okay.  Telephone, Probation, Ms. Morgan,

1  Ms. Capstick, anything?

2          **PROBATION OFFICER CAPSTICK:**  No, your Honor.

3          **THE COURT:**  All right.  Mr. Klein, Ms. Hofmann?

4          **MR. KLEIN:**  No, your Honor.  Just to be clear, so

5  it's 6:00 a.m. to 9:00 p.m. of curfew?

6          **THE COURT:**  Right.  Right.

7          **MR. KLEIN:**  Or I think the time he can be out, curfew

8  is from 9:00 p.m. to 6:00 a.m.

9          **THE COURT:**  Right.  You -- yeah, you stated -- right.

10 He's not on curfew between 6:00 a.m. and 9:00 p.m.  He is on

11 curfew between 9:00 p.m. and 6:00 a.m.

12         **MR. KLEIN:**  Yes, your Honor.

13         **THE COURT:**  Okay.  Anything else?

14     **(No audible response)**

15         **THE COURT**:  All right.

16         **MR. KLEIN:**  Nothing from the Defense, your Honor.

17         **THE COURT:**  Okay.  All right, thank you everyone,

18 and, again, thank you for making time for an early appearance,

19 at least for the West Coast folks.

20         **PROBATION OFFICER CAPSTICK:**  All right, thank you,

21 your Honor.

22 at      **MR. KLEIN:**  No problem, your Honor.  Thank you.

23         **MR. CHMELAR:**  Thank you, Judge.

24         **THE COURT:**  Take care.

25     **(This proceeding was adjourned at 11:01 a.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          October 10, 2017_

TONI HUDSON, TRANSCRIBER