UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

MARCUS HUTCHINS,

        Defendant.

Case No. 17-CR-124

---

**DEFENDANT MARCUS HUTCHINS' RESPONSE TO THE GOVERNMENT'S MOTION TO REVOKE THE ORDER AMENDING CONDITIONS OF RELEASE**

---

The Court should deny the government's motion to revoke Magistrate Judge William E. Duffin's October 19, 2017 order permitting defendant Marcus Hutchins to be off curfew and GPS monitoring while on pretrial release. (ECF Nos. 36 (Mot. to Revoke) & 35 (Order).) Pursuant to the Bail Reform Act, Mr. Hutchins should be subject to the least restrictive conditions that will ensure his appearance at trial. 18 U.S.C. § 3142(c)(1)(B). Removing those restrictions is consistent with and supported by the Bail Reform Act's mandate.

Mr. Hutchins has fully complied with all of his pretrial release conditions, demonstrated repeatedly that he is not a flight risk, and the government agrees that he is not a danger to the community. Indeed, he has been rightfully lauded as a worldwide hero for his central role in stopping a devastating global ransomware attack in May 2017. That attack infected hundreds of thousands of computers in over 150 countries, and until Mr. Hutchins' intervention, had been shutting down hospitals and government agencies, among other institutions.

As Magistrate Judge Duffin found in his lengthy and well-reasoned opinion, Mr. Hutchins deserves more freedom while awaiting trial. The Order should be upheld.

\* \* \*

The government has not requested a hearing on its motion, nor does the defense. Should this Court decide to hold a hearing, the defense may request permission to participate by telephone, since defense counsel and Mr. Hutchins are based in California.

### I. BACKGROUND

Mr. Hutchins is 23-year-old man who grew up and lived in a small town in North Devon, England. At the time of his arrest, he resided with his family and worked remotely for a Los Angeles-based computer security company.

In May 2017, the WannaCry ransomware attack infected hundreds of thousands of computers in over 150 countries, including in hospitals, banks, government agencies, and major companies. Shortly after the attack began, Mr. Hutchins discovered a "kill switch" in the malware that substantially slowed down the spread of the attack, which had, among other things, been impairing medical and government services with potentially severe consequences. He has been lauded worldwide for his actions. *See*, *e.g.*, Associated Press, *Marcus Hutchins "Saved the U.S." From WannaCry Cyberattck on His Bedroom Computer* (May 16, 2017).[1]

Mr. Hutchins has no prior criminal record, and after the time period covered by the indictment's allegations (July 2014 to July 2015), he started working as a professional in the cybersecurity field. The government does not claim that Mr. Hutchins is a danger to the community and acknowledges that the case against him is "historical." (Aug. 14 Tr. 11:4-5) (attached as Exhibit A).

---

[1] Available at https://www.nbcnews.com/storyline/hacking-of-america/marcus-hutchins-saved-u-s-wannacry-cyberattack-bedroom-compter-n759931.

2

Case 2:17-cr-00124-JPS-NJ   Filed 10/23/17   Page 2 of 10   Document 37

Mr. Hutchins was arrested in Las Vegas on August 2, 2017 on the pending indictment. He was released on a $30,000 cash bond posted by a close friend, placed on home detention at a halfway house, required to surrender his passport, and subjected to GPS monitoring. (ECF No. 7.)

After his release, he flew from Las Vegas to Milwaukee unaccompanied by law enforcement or a representative of Pretrial Services. He appeared for arraignment before Magistrate Judge Duffin on August 14, 2017, and pleaded not guilty to the charges. (ECF No. 8.) During that hearing, Magistrate Judge Duffin modified Mr. Hutchins' release conditions with the support of Pretrial Services and the government. He was left on home detention and GPS monitoring, but permitted to access the internet. He was also permitted to establish a residence in Los Angeles and travel within the United States, although Pretrial Services would continue to hold his passport. (Ex. A 12:3-14:3.) The government represented that if Pretrial Services determined that GPS monitoring was no longer necessary, it would likely support a recommendation that the condition be removed. (Ex. A 10:2-6.) The government later reversed its position. (ECF No. 25 at 6.)

After the arraignment, Mr. Hutchins flew from Milwaukee to Los Angeles, changing planes in Detroit (a short distance from the Canadian border)—again unaccompanied by law enforcement or a representative of Pretrial Services. He reported to the local pretrial office upon arrival in Los Angeles. He has since established a residence with a six-month lease and purchased furniture and other household goods for his apartment.

Due to Mr. Hutchins' ongoing compliance with his release conditions, Pretrial Services filed a petition on August 24, 2017, asking that Mr. Hutchins be placed on curfew rather than continue home detention, the terms of which permitted him to leave his home for only four hours

a week. Magistrate Judge Duffin granted the petition. (ECF No. 18.) Shortly after, the government filed a motion to revoke and amend the order. (ECF No. 21 at 3.) Magistrate Judge Duffin denied the government's motion, finding that the government's argument "overlooks . . . the goals" of the Bail Reform Act. (ECF No. 23.) Noting that the statute requires conditions to be the least restrictive necessary to reasonably assure a defendant's appearance, Magistrate Judge Duffin found that a curfew was "wholly appropriate." (ECF No. 23 at 5.) The government appealed, asking the District Court to revoke Mr. Hutchins' curfew. (ECF No. 24). At an August 30, 2017 hearing, the Honorable Pamela Pepper upheld this Court's order, finding, among other things, that home detention would be "punitive" in Mr. Hutchins' circumstances. (Aug. 30 Tr. 25:18) (attached as Exhibit B).

Since then, Mr. Hutchins has continued to comply with his conditions of release, and he traveled to a major city on the East Coast for a few days in September. So that he could board his early-morning flights, Pretrial Services and the government agreed, with Magistrate Judge Duffin's approval, that Mr. Hutchins' curfew could be suspended for the duration of his travel. During that trip—through no fault of his own—Mr. Hutchins' GPS unit refused to take a battery charge and as a result became non-functional. Pretrial Services was alerted to this issue. Mr. Hutchins did not attempt to flee the country when the GPS unit failed. He simply abided by the rest of his release conditions and returned home to Los Angeles as scheduled, where he was fitted with a working GPS unit.

On October 13, 2017, the defense filed a motion with the support of Pretrial Services to modify Mr. Hutchins' conditions of release to eliminate his curfew and remove him from GPS monitoring. (ECF No. 32.) The government opposed the modification. (ECF No. 33.) Magistrate Judge Duffin granted the motion, finding that the least restrictive conditions to reasonably assure

Mr. Hutchins' appearance "no longer include curfew or GPS monitoring." Order at 9. The government now moves to revoke Magistrate Judge Duffin's order.

The government has not moved for a stay of the Order. Mr. Hutchins has been off curfew and GPS monitoring since October 19 now and has made no attempt to flee (nor will he).

## II. LEGAL STANDARD

Under the Bail Reform Act, a defendant will generally be released on his own recognizance or on an unsecured property bond pending trial. 18 U.S.C. § 3142(b). A court may impose additional conditions only if necessary to "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community[.]" 18 U.S.C. § 3142(c)(1).

If a court finds that additional release conditions are necessary, it should impose "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B). The Court "may at any time . . . impose additional or different conditions of release." *Id*. at § 3142(c)(3).

## III. ARGUMENT

This Court should deny the government's motion to revoke the order modifying Mr. Hutchins' conditions of release so that he is no longer on a curfew or GPS monitoring. Aside from unfounded speculation, the government offers no reason why curfew and GPS monitoring—in addition to Mr. Hutchins other conditions—are necessary to reasonably assure that he will appear for trial. Mr. Hutchins has demonstrated time and time again that he is not a flight risk and has established progressively stronger ties to the United States. Affirming the Order is wholly appropriate under the circumstances.

The government first argues that conditions of release should not be modified merely because a defendant complies with bond conditions. Mot. to Revoke at 5. But as Magistrate Judge Duffin pointed out when granting an earlier modification in this case, "[a] defendant's compliance with conditions of release while on electronic monitoring routinely leads to a reduction in the defendant's level of supervision." (ECF. No. 23 at 4.) And the cases cited by the government do not hold that conditions should *never* be modified because a defendant complies with bond conditions, but rather that modification was unwarranted under the facts of those particular cases.

In *United States v. LaFrance*, for example, the court refused to modify the defendant's conditions of release to allow him to access the internet or internet-enabled devices where the defendant had been charged with wire fraud and money laundering offenses executed with a computer. 2016 U.S. Dist. LEXIS 90969 (D. Mass. July 13, 2016). Notably, the defendant had a prior conviction for fraud, and the court was concerned that that internet access posed a risk of recidivism. *Id*. The defendant's record of compliance with his conditions did not reduce the risk of danger he posed to the community.

In *United States v. Phua*, the court declined to lift a condition barring the defendant from gambling or entering a gambling establishment where the defendant had been charged with gambling crimes. 2015 U.S. Dist. LEXIS 4688 (D. Nev. January 8, 2015). And in *United States v. Smith*, the defendant, who was accused of crimes of dishonesty, sought to have his conditions modified so that he could travel for the purpose of selling real estate—even though that he was not licensed to lawfully do so. 2012 U.S. Dist. LEXIS 124187 (D. Ariz. August 31, 2012). There, The courts understandably denied those requests, again to protect the community and safeguard against the possibility of future criminal conduct. In other words, the conditions already in place

6

were the least restrictive necessary to reasonably assure the safety of other people. 18 U.S.C. § 3142(c)(1).

This case is very different. The government does not argue that Mr. Hutchins requests modifications that would pose any danger to the community or enable criminal activity. In fact, during the arraignment hearing, the government agreed to eliminate the pretrial condition most closely tied to charges in the indictment: a restriction on using internet-enabled devices. (Ex. A 11:3-11.) The government explained that it had no concern about Mr. Hutchins having access to the internet, since the case against him is "historical." (Ex. A 11:4-5.) The only concern the government seems to have is that Mr. Hutchins is a flight risk. His continued record of compliance with his pretrial conditions as they have been continually loosened and his deepening ties to the community show that he deserves more freedom.

The government next argues that the factors under 18 U.S.C. § 3142(g) support defendant's release *only* under the conditions of GPS monitoring and a curfew. Mot. to Revoke at 5-6. This argument is based on nothing but conjecture and does not hold water.

The government argues that it is "unrealistic" to think that Mr. Hutchins could not leave the country because he does not have any travel documents, and suggests that perhaps he might apply for a new passport. Mot. to Revoke at 6. While conceding that the United States has an extradition treaty with Mr. Hutchins' home country, the government says that it would be "time consuming and difficult" to extradite Mr. Hutchins if he were to flee. *Id*. The government also speculates that he might abscond to a country that has no extradition treaty with the U.S. *Id*.

The notion that Mr. Hutchins might apply for a new passport depends on the assumption that he would flout the existing condition of surrendering his passport to Pretrial Services. Neither curfew nor GPS monitoring would prevent that extremely remote possibility. The rest of

the government's argument boils down to unsubstantiated speculation that Mr. Hutchins might abscond. If *any* defendant is determined enough, he can figure out a way to flee the country. But the Bail Reform Act does not authorize conditions to secure a defendant's presence under any possible set of circumstances—if it did, no defendant would be permitted any measure of freedom pending trial. The Bail Reform Act authorizes only "the *least restrictive* further condition, or combination of conditions, that . . . will *reasonably assure* the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B) (emphasis added). Here, those conditions do not include curfew or GPS monitoring.

The government also dismisses the $30,000 cash bond as a factor likely to keep Mr. Hutchins from fleeing the country. The government claims that the prospect of forfeiting the bond "might not be compelling" to Mr. Hutchins because the money belongs to someone else. Mot. to Revoke at 6-7. Once again, this is pure conjecture. The fact is that Mr. Hutchins would be forfeiting a close friend's money, which is a highly compelling reason not to flee the country, since it would have serious social repercussions. Indeed, Judge Pepper recognized the weight of this social pressure in the prior hearing on Mr. Hutchins conditions of release. (Ex. B 22:19-20) ("He would make somebody else really PO'ed if he fled."). If Mr. Hutchins were to forfeit his own money, he would only be accountable to himself for that decision. Forfeiting his friend's money would burn bridges in his social and professional communities, as the person who posted the bond also works in his field.

The government further argues that Mr. Hutchins has no ties and owns no real property in the United States, glossing over the fact that he has leased an apartment in Los Angeles and furnished it at substantial personal expense. Mot. to Revoke at 6 n.1. If Mr. Hutchins intended to

8

abscond, it would make more sense for him to rent a furnished apartment or stay in a hotel—not to invest a substantial amount of his savings in furniture, dishes, and the other trappings of a home as he has done. The fact that Mr. Hutchins owns personal property is not irrelevant, as the government would have it, but rather makes him less of a flight risk, since he is unlikely to abandon an apartment full of new possessions. The government's argument also ignores the fact that few, if any, 23-year-old people own real estate. If accepted, the government's position would make most young people "flight risks."

The government also claims that the weight of the evidence tips in favor of GPS monitoring and a curfew. Mot. to Revoke at 7. This argument is based on a threadbare claim that Mr. Hutchins has "admitted his role" in the charged conduct in post-arrest statements and instant messaging chats. This Court should reject the government's attempt to lean on unsupported attorney characterizations of the evidence to decide what conditions of release are appropriate. The defense plans to challenge the referenced "evidence" vigorously.

In any event, "the weight of the evidence" is only one of many factors that the Court is to consider under § 3142(g)—and many of those factors support the relief sought by Mr. Hutchins. The offenses charged in the indictment do not include the particularly serious crimes listed in § 3142(g)(1). Under § 3142(g)(3), Mr. Hutchins has good character and is well known globally for his role in derailing the WannaCry ransomware attack. He is employed, he has no criminal record, and the charges against him bear no relationship to his present conduct or activities. (Ex. A 11:4-5.) Finally, pursuant to § 3142(g)(4), there is no suggestion that Mr. Hutchins poses any danger to the community. All of these factors weigh in favor of eliminating curfew and GPS monitoring.

9

Case 2:17-cr-00124-JPS-NJ   Filed 10/23/17   Page 9 of 10   Document 37

Finally, the government's motion ignores the significant fact that each time Mr. Hutchins' release conditions have been loosened, he has not fled. Indeed, he has been off curfew and GPS monitoring since October 19 and he remains in the country. The record shows Mr. Hutchins is not a flight risk.

## IV.   CONCLUSION

For all the reasons above, this Court should deny the government's motion to revoke the order amending the condition of release.

DATED: October 23, 2017                    Respectfully submitted,

        */s/ Marcia Hofmann*
MARCIA HOFMANN
Zeitgeist Law PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

        */s/ Brian E. Klein*
BRIAN E. KLEIN
Baker Marquart LLP
2029 Century Park E – Suite 1600
Los Angeles, CA 90067
Email: bklein@bakermarquart.com
Telephone: (424) 652-7800

*Attorneys for Marcus Hutchins*