# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br>v.<br><br>MARCUS HUTCHINS,<br><br>                             Defendant. | Case No. 17-CR-124-2-JPS<br><br>**ORDER** |

       Defendant Marcus Hutchins ("Hutchins") is charged with crimes arising from his alleged deployment of the "Kronos" malware program. (Docket #6). Kronos stole user credentials and personal identifying information from computers on which it was installed. *Id.* at 2. Hutchins, a citizen of the United Kingdom, was arrested in Las Vegas on August 2, 2017. He has been under pretrial supervision since that time. Magistrate Judge William E. Duffin recently entered an order modifying the conditions of Hutchins' pretrial release, (Docket #35), and the government has sought review of that order by this Court, (Docket #36). For the reasons stated below, the government's motion will be denied.

1. **LEGAL STANDARDS**

       The Bail Reform Act, 18 U.S.C. § 3142, defines the manner in which courts impose conditions of pretrial release. The Act allows courts to impose conditions ranging from personal recognizance all the way to pretrial detention. *Id.* § 3142(a). The guiding principle of the Act is that courts must impose the least restrictive condition or combination of conditions necessary to reasonably assure the defendant's appearance as

required and to reasonably assure the safety of any other person or the community. *Id.* § 3142(c).

2.  FACTS AND PROCEDURAL HISTORY

When he was arrested, Hutchins surrendered his passport. A friend paid his $30,000 cash bond and he was thereafter placed on GPS monitoring. He traveled unaccompanied to Milwaukee for his arraignment on August 14, 2017. At that hearing, his conditions of release were modified to permit him to reside in Los Angeles under home detention. *See* (Docket #8 at 2). He was also allowed access to the internet subject to certain conditions, and he was allowed to travel within the United States. *Id.* The GPS monitoring condition was continued. *Id.*

On August 24, 2017, the Pretrial Services Office recommended that Hutchins' release conditions be reduced from home detention to a curfew. *See* (Docket #18). The assigned pretrial services officer contended that not only are such reductions commonplace after a defendant has shown compliance with release conditions, in Hutchins' case his home detention, coupled with the fact that he worked from home, meant that he essentially spent all his time at home. *Id.* at 1. Magistrate Duffin granted the requested modification and set a curfew for Hutchins from 9:00 each night to 6:00 each morning. *Id.* at 2.

The government challenged this modification to Hutchins' release conditions, (Docket #21), but Magistrate Duffin denied the government's request to return Hutchins to home detention, (Docket #23). Consistent with the general practice of pretrial supervision in this District, the magistrate found Hutchins' pretrial freedom should correlate with his compliance with release conditions. *Id.* at 5. Review of Magistrate Duffin's

order was sought before Judge Pamela Pepper, (Docket #25), who declined to modify Magistrate Duffin's order or Hutchins' release conditions, finding that Hutchins' home confinement was essentially punitive, (Docket #28 at 2).

On October 13, 2017, Hutchins filed a motion pursuant to Section 3142(c)(3) requesting a further reduction in his release conditions. (Docket #32); 18 U.S.C. § 3142(c)(3) ("The judicial officer may at any time amend the order to impose additional or different conditions of release."). He requested that he be discharged from both his curfew and the GPS monitoring. (Docket #32 at 1). The Pretrial Services Offices in both Milwaukee and in Los Angeles supported Hutchins' request. *See* (Docket #35 at 8). Unsurprisingly, the government opposed the motion. (Docket #33). Magistrate Duffin granted Hutchins' motion in an order dated October 19, 2017. (Docket #35).

In the order, Magistrate Duffin noted that government has never argued in this case that Hutchins is a danger to anyone; rather, its sole contention is that he is a flight risk. *Id.* at 3. Magistrate Duffin, reviewing Hutchins' history of compliance with release conditions in this case, found that neither the curfew nor GPS monitoring were necessary to curb his risk of flight. *Id.* at 6–8. The magistrate reasoned that curfew, which is most often used to control the behavior of defendants who might commit crimes at night, was not particularly relevant to Hutchins. *Id.* Additionally, while Hutchins is a foreign national, Magistrate Duffin was convinced that because he had surrendered his passport, used a friend's money to post his bond, was under threat of enhanced penalties if he should flee, and would continue under the supervision of two Pretrial

Services Offices, there was little danger that Hutchins' risk of flight would increase if GPS monitoring was removed. *Id.* at 6–8. Further, the magistrate rejected the government's contention that mere compliance with release conditions is not enough to warrant modification thereof. *Id.* at 4. Magistrate Duffin explained that it is routine to reward a demonstrated track record of compliance with reduced or modified release conditions. *Id.* at 5.

The government has again sought review of Magistrate Duffin's bond order. (Docket #36). Hutchins opposes the government's motion. (Docket #37). Unlike its first motion to revoke the magistrate's bond determination, here the government did not seek a stay of Magistrate Duffin's order pending review in this Court. Thus, the Court understands that Hutchins' GPS monitoring and curfew conditions have not been in force since October 19, 2017, the date of the magistrate's order. *See* (Docket #37 at 5). Nevertheless, he has not attempted to flee.

3.   ANALYSIS

Section 3145 allows the government to seek review of an order of a magistrate judge regarding a defendant's conditions of release. 18 U.S.C. § 3145(a). The district court reviews the magistrate's order *de novo*. *United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985). The court may hold a new hearing, but since neither party requests it, the Court will not do so in this instance. *See United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991).

At the outset, it is worth noting some slippage in the government's bond argument. The government clings to the factors set forth in Section 3142(g) to support the notion that more restrictive release conditions are necessary in this case. *See* (Docket #36 at 5–7). In determining whether

there are any conditions of release that will satisfy this standard, Section 3142(g) directs courts to consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See id.* § 3142(g).

But the statute itself indicates that these factors are used to assess "*whether* there are conditions of release that will reasonably assure the appearance of the person as required," not what those conditions ought to be. *See id.* Once one concedes, as the government has here, that pretrial detention is not necessary, the operative inquiry becomes what are the *least restrictive* conditions that will *reasonably assure* the defendant's appearance. *See id.* § 3142(c)(1)(B). The government cannot substitute analysis of the Section 3142(g) factors for a more precise assessment of how and why this Court should reinstitute more restrictive release conditions.

In any event, the government's arguments in this regard are unavailing. First, it repeats the contention made to Magistrate Duffin that compliance with release conditions is not enough, standing alone, to warrant modification of those conditions. (Docket #36 at 5). The government's view is contrary to the normal practice in this and other district courts around the country. When defendants establish that they will abide by their obligation to appear in court, logic dictates that the justification for imposing the existing release conditions lessens. *See* (Docket #35 at 5). Put differently, if the Bail Reform Act requires no more than the least restrictive conditions needed to reasonably assure the

defendant's appearance, then consistent compliance with existing conditions counsels in favor of reducing their severity on the theory that lesser conditions will suffice.

As Magistrate Duffin aptly explained in his first order on modification of Hutchins' bond conditions:

> The court acknowledges that there is a possibility that Hutchins might flee. But that is a risk inherent in every case where a defendant is released pending trial. The Bail Reform Act does not impose an obligation upon courts to craft conditions of release with an aim toward guaranteeing that a defendant will appear. *See United States v. Portes*, 786 F.2d 758, 764 n.7 (7th Cir. 1985) ("The conditions need not guarantee appearance but they must reasonably assure appearance."); *United States v. Orta*, 760 F.2d 887, 889 (8th Cir. 1985) (en banc) ("[T]the district court erred in interpreting the 'reasonably assure' standard set forth in the statute as a requirement that release conditions 'guarantee' community safety and the defendant's appearance. Such an interpretation contradicts both the framework and the intent of the pretrial release and detention provision of the 1984 Act."). Rather, the court may impose only the least restrictive conditions necessary to *reasonably* assure a defendant's appearance.

(Docket #23 at 4). In this case, the government desires release conditions harsh enough to ensure that Hutchins cannot flee the country. This is not what the Bail Reform Act requires or, indeed, allows.

Certainly, in the government's primary citation, *United States v. Lafrance*, Criminal No. 16-10090-IT, 2016 WL 3882845, at *2 (D. Mass. July 13, 2016), modification of the release conditions was not warranted. There, the defendant, who had committed wire fraud and money laundering using the internet, sought to undo the court's prohibition on internet and

email access. *Id.* at *1. The court denied the request, finding that the defendant's compliance with this release condition did not merit its removal, as doing so would then expose the community to the danger of further crimes committed by the defendant over the internet. *Id.* at *2. Unlike *Lafrance*, however, removing Hutchins' curfew and GPS monitoring would not facilitate his recidivism. Moreover, this Court is not prepared to accept *Lafrance*'s broad statement that mere compliance with release conditions is *never* sufficient to warrant a reduction thereof. Consequently, the Court finds the case to be of little relevance here.

Next, the government contends that Hutchins' lack of connections to the United States suggests that he will flee if not subject to curfew and GPS monitoring. (Docket #36 at 6–7). The government reports that Hutchins is not a U.S. citizen, has no family here, and owns no real property here. *Id.* The government also argues that although Hutchins lacks a passport, he could still leave the country, and that if he does so, it could be difficult to secure his extradition back to the United States. *Id.* Further, the government posits that because Hutchins' $30,000 bond was posted by a friend, the danger of its forfeiture is little incentive for Hutchins to remain here. *Id.*

The government neglects to connect these facts to a cogent argument in favor of more restrictive bond conditions. The government simply speculates that "his conditions of bond were the only things securing his presence in the U.S." *Id.* at 6. This is untrue, as Hutchins has demonstrated time and again his willingness to comply with his obligations to appear in this Court as required. While eliminating curfew and GPS monitoring will undoubtedly reduce the level of scrutiny given

to Hutchins' movements, the government has not satisfactorily explained why these factors require such conditions.

The Court agrees with Magistrate Duffin's determination that other operative facts in this case dispel the government's fear of his flight. First, while Hutchins may not own real property in this country, he has rented and furnished an apartment in Los Angeles at substantial personal expense. The government seems to think that ownership of real estate is the only sort of outlay that could tie a defendant to this country, *See* (Docket #36 at 6 n.1), but the Court does not concur. Second, the potential consequences of Hutchins' non-appearance are severe, and he knows it. Furthermore, the aim of the Bail Reform Act is to require the government to justify why the looming presence of such consequences are inadequate.[1]

Third, the notion that Hutchins can escape the country without a passport is both true and irrelevant. Not having a passport will at a minimum make this more difficult, and the Bail Reform Act does not mandate a set of conditions that will guarantee that the defendant cannot flee. Moreover, Hutchins has traveled within the United States several times since his arrest and has not made any attempt to flee. (Docket #37 at 3–4). Fourth, the Court joins Magistrate Duffin's reasoning that although the bond in this case was paid by Hutchins' friend, his relationship with this person is sufficient to lend substantial weight to the bond as an incentive to appear as required.

---

[1] The Bail Reform Act sets forth several circumstances in which there exists a presumption that pretrial detention is appropriate, but none apply to Hutchins. *See* 18 U.S.C. § 3142(e).

Finally, continued monitoring by the Pretrial Services Office, both here and in Los Angeles, will ensure that any non-compliance with release conditions will be brought to the Court's attention and dealt with appropriately. In fact, both Pretrial Services Offices support the elimination of these conditions, and the Court is cognizant of their expertise in what is required for successful pretrial supervision.

In the end, the government's repeated challenges to the lessening of Hutchins' release conditions represent a continuing attempt to turn the applicable standards upside down. The government believes that any change in release conditions must be justified by new facts proffered by the defense. To the contrary, the magistrate's conclusion is consistent with the Court's ongoing obligation under Section 3142(c) to ensure that only the least restrictive conditions necessary to reasonably assure Hutchins' appearance are employed.

If the government's argument is simply that the prior conditions were working and for that reason they should not be changed, the Court is not persuaded. On that point, it is notable that although Hutchins' GPS monitoring and curfew conditions have not been in force since Magistrate Duffin's order of October 19, 2017, he has not attempted to flee. *See* (Docket #37 at 5). Thus, it seems his new, lesser conditions of release are working just as well. His continued compliance with his obligations to remain in the country and appear as required bolster this Court's conclusion that the curfew and GPS monitoring conditions are not necessary to achieve those goals.

Against the backdrop of Hutchins' ongoing compliance with his release conditions and the other factors considered above, the Court finds

that Magistrate Duffin did not err in granting Hutchins' request to modify his release conditions to remove his curfew and GPS monitoring. The government's motion to revoke the magistrate's order will, therefore, be denied.

Accordingly,

**IT IS ORDERED** that the government's motion to revoke Magistrate Judge William E. Duffin's bond order of October 19, 2017 (Docket #36) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of November, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge