UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                     Case No.  17-CR-124

MARCUS HUTCHINS,

        Defendant.

## UNITED STATES' RESPONSE TO MOTION TO COMPEL

The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this response to defendant Marcus Hutchins' motion to compel the production of certain information and communications related to this case. Doc. #44.

I.    Introduction

On July 11, 2017, a grand jury in the Eastern District of Wisconsin returned an indictment charging Hutchins with one count of conspiracy to violate federal law, three counts of distributing and advertising an electronic communication interception device, one count of endeavoring to intercept electronic communications, and one count of attempting to access a computer without authorization. Doc. #6. The case has been designated complex, and Hutchins has been released on pretrial bond. The United States has provided discovery to

Hutchins per its obligations under Federal Rule of Criminal Procedure 16, Criminal Local Rule 16(a), and other applicable law.

On January 5, 2018, Hutchins filed a motion to compel discovery. Prior to the filing of this motion, the parties exchanged several letters and had conference calls regarding the defendant's requests for additional discovery under Criminal Local Rule 16(b). *See* Doc. #42.

For the reasons discussed below, the Court should deny Hutchins' motion to compel in its entirety.

II. Hutchins' request for "all materials and communications relating to the surveillance and arrest" should be denied.

The first item that Hutchins seeks to compel is "all materials and communications relating to the surveillance and arrest of Mr. Hutchins in Las Vegas, Nevada," on August 2, 2017. Doc. #44 at 2, 4-8. In support of this request, he asserts that these materials and communications are necessary for the preparation of a pre-trial motion challenging the voluntariness of the defendant's post-arrest statement. Doc. #44 at 4. According to Hutchins, he may argue he was intoxicated and sleep deprived and therefore his statements were involuntary. Doc. #44 at 6.

This request is overbroad on its face. Moreover, the government has complied with its discovery obligations on this subject. Finally, to the extent that information responsive to this overbroad request exists, disclosure is not required.

For background, FBI agents arrested Hutchins at an airport in Las Vegas as he waited to board a flight back to the United Kingdom. Following Hutchins' arrest, agents read him his rights under *Miranda*, and Hutchins waived his rights, in

writing, by signing an Advice of Rights form. After he signed the written waiver, FBI agents interviewed Hutchins. During the interview, Hutchins admitted to writing computer code for the Kronos malware and giving it to his codefendant, who Hutchins said he knew only by various online aliases. Before the interview started, Hutchins told agents that he was not under the influence of alcohol.

To date, the government has produced the following records and information related to Hutchins's arrest: (1) an audio recording of the defendant's post-arrest statement the FBI; (2) an FBI 302 report detailing the defendant's post-arrest interview; (3) a second FBI 302 report memorializing a second statement obtained from Hutchins the day after his arrest; (4) all the documents shown to Hutchins during the post-arrest interview, including private messaging chats between the defendant and a confidential informant; (5) two recorded phone calls Hutchins made from jail; (6) a copy of the notice of Hutchins's arrest sent to the U.K. government in compliance with the Vienna Convention; (7) consent forms Hutchins signed allowing the government to search his computer and phone; and (8) the Advice of Rights form signed by Hutchins.

In addition to those materials, the government recently disclosed an additional FBI 302 report memorializing the defendant's statement that he was not under the influence of alcohol at the time of his arrest, and two reports detailing limited surveillance of the defendant on July 26, 2017, and August 2, 2017. The government has not located any additional reports related to surveillance of the defendant while he was in Las Vegas.

Page **3** of **17**

Case 2:17-cr-00124-JPS-NJ   Filed 01/19/18   Page 3 of 17   Document 45

The government has not, however, turned over "all materials and communications" related to the surveillance and arrest of the defendant because that request is overbroad. Even under the "open file policy" as defined by Criminal Local Rule 16(a) and an expansive view of the concept of materiality under *Brady*, Hutchins is not entitled to *everything* the government possesses related to the case. For example, communications related to agent travel and coordinating meetings are not discoverable because they are not material to any defense. Yet those types of items fall under Hutchins' overbroad motion to compel.

Hutchins' argument that he is entitled to such information because it might support a motion to suppress his post-arrest statement is meritless. Under Rule 16(a)(1)(E)(i), a defendant may have access documents and objects that are "material to the preparation of the defendant's defense." The Supreme Court has interpreted "material to the preparation of the defendant's defense" to mean material to "the defendant's response to the Government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). This "does not include materials deemed by defendants necessary to prove their defense theory or to challenge the [government's] conduct in the case." *See United States v. Pearson*, 340 F.3d 459, 469 (7th Cir. 2003), *rev'd on other grounds*, *Hawkins v. United States*, 543 U.S. 1097 (2005) (citing *Armstrong*, 517 U.S. at 462). In other words, the government's obligations under Rule 16(a)(1)(E)(i) relate to items that are material to a *trial* defense. *Id.* Even if Rule 16(a)(1)(E)(i) applied to pre- and post-trial motions, the

defendant has failed to explain why information beyond what has already been disclosed is "material."

Because the government has complied with its discovery obligations relating to Hutchins' arrest, the Court should deny the defendant's motion to compel additional, non-material records on that subject.

III. Hutchins' request for "all materials and communications relating to Mr. Hutchins' codefendant" should be denied.

Next, Hutchins seeks "all materials and communications relating to Mr. Hutchins' codefendant." Doc. #44 at 2, 8-10. In support of this request, Hutchins asserts that such items "must be material to preparing Mr. Hutchins' defense" because the indictment alleges a conspiracy; that "the government may be withholding information that could exculpate Mr. Hutchins"; and that he has a right to "locate the codefendant." Doc. #44 at 8-9. Because the government has disclosed information relating to the codefendant, and there is no authority supporting the defendant's request for additional information, his motion to compel the production of this information should be denied.

Of note, Hutchins' codefendant has not yet been arrested in connection with this case. And, the government has disclosed certain information relating to the codefendant to Hutchins. This includes (1) the codefendant's name; (2) materials responsive to an MLAT request that included a redacted copy of the codefendant's passport; (3) undercover chats between the codefendant and the FBI related to the marketing, sale, and distribution of Kronos; and (4) various Internet postings

related to Kronos that are attributable to one of the aliases used by the codefendant, including on the now shuttered Darkode forum.

Hutchins' speculation that "the government must be withholding substantial additional information in its possession," including information that may show the codefendant acted independently of Hutchins, is not supported. Doc. #44 at 8. While it might be true that the codefendant was involved in criminal activity in addition to distributing Kronos with Hutchins, the government is not suppressing that information. It simply does not possess such information. If additional records in the government's possession are identified and deemed material, the government will provide those records to the defendant.[1]

As to Hutchins' argument that he is entitled to further information in the government's possession regarding the location of the codefendant, that request should be denied for several reasons. As noted above, the codefendant has not yet been arrested in connection with this case and is therefore a fugitive. Hutchins' belief that he is entitled to information to try to track down a fugitive independent of law enforcement has no support. Moreover, Hutchins' reliance on *Bethel v. United States*, 458 F.3d 771, 717 (7th Cir. 2006) is misplaced. *Bethel* concerns a post-conviction matter that touches on a defense attorney's need to properly advise his client during plea negotiations. *See Id.* (stating "that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of

---

[1] In his motion, Hutchins states that "the government likely has records of the codefendant's activities on AlphaBay." Doc. #44 at 9. The government is still pursing information from the AlphaBay marketplace, but it has not yet located any materials subject to disclosure.

a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty"). *Bethel* does not support the defendant's position that the government is obligated to disclose investigative leads for a yet-to-be-apprehended codefendant.

Further, this information requested cannot be considered material to a trial defense. Hutchins' has received information regarding the identity of the codefendant, as discussed above. And, he told agents that he knew his codefendant only by various online aliases; his dealings with his codefendant were all online; and he has never met his codefendant in person or even seen a photograph of the codefendant. It therefore makes no sense for Hutchins to claim that, if provided the requested "materials and communications," he will be able to locate the fugitive codefendant and obtain exculpatory information from that individual.

In sum, the production of the requested information is not required under *Brady*, *Giglio*, or Rule 16. Therefore, the defendant's motion to compel production of additional information on this subject should be denied.

IV. Hutchins' request for "all materials and communications relating to 'Randy'" should be denied.

Hutchins' third discovery request is for "all materials and communications" related a confidential source of information working for the FBI ("CS-1"). Like the defendant's other requests, this one is overbroad. Moreover, the defendant is not entitled to further information on CS-1 at this time because it is covered by the informant privilege.

At the outset, the defendant misstates the status of discovery when he claims the government has produced only one "heavily redacted FBI 302 of an interview" with CS-1. Doc. #44 at 10. In reality, the government has produced the following materials related to CS-1: (1) A redacted proffer letter between the government and CS-1; (2) undercover chats between a government cooperator and CS-1 regarding the sale of stolen credit card numbers; (3) chats between CS-1 and Hutchins regarding Hutchins' involvement in creating the Kronos banking Trojan, among other criminal conduct; and (4) a redacted FBI 302 report (which Hutchins refers to in his motion) memorializing a FBI interview of CS-1 regarding Hutchins and others.

The government is not disclosing CS-1's identity or CS-1's attorney's identity at this time because that information is subject to the informant's privilege. The government has a "limited privilege" to withhold the identity of a confident informant from a criminal defendant. *United States v. Harris*, 531 F.3d 507, 514 (7th Cir. 2007 ) (citing *Roviaro v. United States*, 353 U.S. 53, 59-60 (1957)). The government is granted this limited privilege as a right, and need not make a threshold showing of likely reprisal or retaliation against the informant in order to assert the privilege." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994) (citing *Dole v. Local 1942*, 870 F.2d 368, 372 (7th Cir. 1989)). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge

of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro,* 353 U.S. at 59.

When determining whether to compel disclosure of an informant's identity, courts must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *United States v. Andrus*, 775 F.2d 825, 841-42 (7th Cir. 1985) (quoting *Roviaro*, 353 U.S. at 62.). Relying on *Roviaro*, the Seventh Circuit has noted that "the defendant must establish a genuine need for disclosure before disclosure should be ordered." *Id.* at 842.

"[T]he nature of the CI's role [is] an important factor to consider when determining whether that informant's identity should be disclosed. *United States v. Wilburn*, 581 F.3d 618, 623 (7th Cir. 2009) (citing *Harris*, 531 F.3d at 515.) "[W]hen the confidential informant [is] a mere 'tipster'—someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining a search warrant—rather than a 'transactional witness' who participated in the crime charged against a defendant or witnessed the event in question, disclosure would not be required." *Id*. In *Roviaro*, the Court required disclosure of a confidential informant who was the sole participant, other than the defendant, in the transaction charged against the defendant. 353 U.S. at 64. The Court found the

informant's testimony "highly relevant" because he "had helped to set up the criminal occurrence and had played a prominent part in it." *Id.*

CS-1's position in this case is more of a like a "mere tipster" than a transactional confidential informant. Hutchins sent a copy of the Kronos malware to CS-1 in 2015, but CS-1 was not acting as an agent for the government at that time. If the government called CS-1 as a witness at trial, his/her primary role would be to testify about the third-party admissions Hutchins made during chats with CS-1. Even if the Court found CS-1 acted more like a transactional witness, that finding does not automatically justify disclosure of CS-1's identity. *United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012). The defendant would still need to establish that knowing CS-1's identity is "relevant and helpful to his defense or is essential to a fair determination of a cause," *Wilburn*, 581 F.3d at 623. Here, his request for disclosure of CS-1's identity is based on speculation, which is insufficient. *See Valles*, 41 F.3d at 358 ("The confidential informant privilege 'will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful.'" (quoting *Dole*, 870 F.2d at 373)).

Nonetheless, the government agrees to disclose CS-1's identity to the defense if it determines that CS-1 will be a testifying witness at trial.[2] Such a disclosure will be made at the time designated by U.S. District Judge Stadtmueller for disclosure

---

[2] To be sure, it might not be necessary to call CS-1 as a witness at trial because the defendant was shown the chats he had with CS-1 during his post-arrest interview and the defendant admitted that he was one of the parties in those conversations. Later, the defendant made phone call from jail in which he described the chats as "undeniable." Therefore, the admissions Mr. Hutchins made to CS-1 are admissible non-hearsay statements, which Mr. Hutchins previously identified as accurate.

of each party's witnesses, which is one of the many items required as part of Judge Stadtmueller's standard final pretrial report. This delayed disclosure of confidential informants' identities is common practice in this district.

In sum, the defendant demands disclosure of CS-1's identity because he expects CS-1 to testify at trial. Because the government has agreed to disclose on the terms addressed above, the defendant's request on this point is moot.

V.  Hutchins is not entitled to "portions of grand jury transcripts dealing with legal instructions for crimes charged in the pending indictment."

Hutchins also demands a court order requiring the government to prepare and disclose a transcript of the grand jury proceedings involving "legal instructions provided to the grand jury." Doc. #44 at 2, 13. Hutchins asserts that he needs a copy of the grand jury transcript "to ensure the grand jury was properly instructed." Doc. #44 at 13.

Grand jury proceedings are presumptively secret. *See* Fed. R. Crim. P. 6(e). However, under Fed. R. Crim. P. 6(e)(3)(E)(ii), a court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." In seeking such disclosure, the defendant bears the burden of demonstrating a "'compelling necessity' or 'a particularized need'" that is sufficient to overcome the important interest in securing grand jury secrecy. *See United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir. 1984) (citing *In re Grand Jury Proceedings, Miller Brewing Company*, 687 F.2d 1079, 1088 (7th Cir. 1982)); *see also United States v. Buske*, Case No. 09-CR-65, 2010 WL 3023364 (E.D. Wis. July 29, 2010) (Adelman, J.)

(denying motion to disclose grand jury minutes). "'There is a presumption of regularity which attaches to such proceedings and the defendants have a difficult burden to prove any irregularity.'" *Lisinski*, 728 F.2d at 893 (quoting *United States v. Battista,* 646 F.2d 237, 242 (6th Cir. 1981)); *see also In re EyeCare Physicians of Am.*, 100 F.3d 514, 518 (7th Cir. 1996) (discussing importance of grand jury secrecy).

Dismissing an indictment based on an alleged error in the grand jury process is very rare. And, an allegation of improper legal instructions is not generally grounds for dismissal of an indictment. "The prosecutor is under no obligation to give the grand jury legal instructions." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (citing *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981)). "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Id.* (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)).

Even assuming that misinstruction could qualify as an error in the grand jury process, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such error[] prejudiced the defendants." *United States v. Anderson*, 61 F.3d 1290, 1296 (7th Cir. 1995) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)). "Prejudice occurs if a 'violation substantially influenced the grand jury's decision to indict, or if there is grave doubt

that the decision to indict was free from the substantial influence' of the violation."
*Id.* (quoting at *Bank of Nova Scotia*, 487 U.S. at 256)).

Here, Hutchins cannot show that that grand jury was improperly instructed, let alone show that any allegedly improper instruction resulted in actual prejudice. Indeed, he admits that his allegation of misinstruction is based on based on speculation: he speculates that the prosecutor instructed the grand jury erroneously and that this misinstruction is the reason the grand jury issued the indictment that he believes is facially invalid. *See* Doc. #44 at 16. As a general matter, speculation is insufficient to overcome the presumption that the grand jury returned a valid indictment. *See e.g., Lisinski*, 728 F.2d at 894; *United States v. Canino*, 949 F.2d 928, 943 (7th Cir. 1991) ("Mere unsupported speculation of possible prosecutorial abuse does not meet the particularized need standard."); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) ("Mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." (citing cases)); *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972) ("[M]ere speculation that such improprieties may have occurred will not suffice to support that required showing."); *United States v. Jenkins*, Case No. 12-CR-34, 2012 WL 1571505, at *3 (Adelman, J.) (E.D. Wis. May 3, 2012) (denying motion to disclose grand jury transcripts); *Buske*, 2010 WL 3023364, at *3 (denying defendant's motion for disclosure of grand jury transcript based on allegation that prosecutor may have improperly instructed the grand jury, concluding that the defendant "offers no more

than speculation that the government misinstructed the jury on this issue" (citing *United States v. Stafford*, No. 08–122, 2009 WL 275470, at *3 (D. Del. Feb. 5, 2009); *United States v. Trie*, 23 F. Supp. 2d 55, 61 (D.D.C. 1998)).

Moreover, Hutchins' asserted basis for seeking the grand jury instructions (if there were any) is to support a possible challenge to the sufficiency of the indictment. Specifically, Hutchins claims that the indictment is defective because Count Two of the indictment states that the defendant acted "knowingly" instead of "intentionally."[3] Likewise, despite the fact that Count Six charges an attempt, Hutchins argues Count Six fails to allege that defendant "intentionally" attempted to cause damage to a protected computer.[4] This, however is not an allegation of "error in the grand jury proceedings" under Rule 12(b)(3)(A)(v). It is an allegation of a defect in the indictment under Rule 12(b)(3)(B)(v). Thus, if Hutchins truly believes Counts Two and Six are facially defective, he can file a motion dismiss those counts under Rule 12(b)(3)(B)(v). There is no need for any grand jury documents.

---

[3] Count Two appears to contain a drafting error because Counts Three and Four, which also allege violations of 18 U.S.C. § 2512, state that the defendant acted "intentionally" rather than "knowingly." This further undermines Hutchins' speculation that the grand jury was erroneously instructed.

[4] According to Seventh Circuit jury instructions, an attempt means to take a substantial step towards committing the offense, with the "intent to commit the offense." Therefore, because Count Six is charged as an attempt to violate section 1030, including the word "intentionally" before "attempted" would be unnecessary and redundant.

Under these circumstances, Hutchins has not come close to establishing a "'compelling necessity' or 'a particularized need'" for grand jury transcripts, and he provides no authority indicating otherwise.[5]

VI. Hutchins is not entitled to "all materials and communications relating to" MLATs and search warrants.

The last part of Hutchins' motion seeks "all materials and communications relating to the search warrants and Mutual Legal Assistance Treaties (MLAT) requests in this case." Doc. #44 at 2, 17-18. The point of this request, as explained in the motion, is for disclosure of the actual MLAT request and search warrant "applications." Doc. #44 at 17. The defendant seeks these documents "to help understand the government's theory of the case." Doc. #44 at 17. Hutchins also asserts that an agent may have signed one or more of these documents, which makes it subject to disclosure. The defendant is wrong on the facts and the law.

At the outset, the government is well aware of its discovery obligations under Rule 16, 18 U.S.C. § 3500, *Brady*, and *Giglio*. Material information that falls under those categories will continue to be turned over as appropriate.

Here, the defendant relies on Rule 16(a)(1)(E)(i) in seeking disclosure of MLATs and search warrant applications. But that Rule is inapplicable. With regard to MLATs, they are not signed or attested to by law enforcement agents. Instead, they are signed by an attorney representing the United States. Information received in response to an MLAT that is subject to disclosure under Rule 16 has been, and

---

[5] The government has already explained to the defense that it will likely seek a superseding indictment in this case. That superseding indictment would address any possible drafting errors noted by the defense.

will continue to be, turned over to the defense in this case. Indeed, the defendant acknowledges that he has received materials responsive to an MLAT request. Doc. #44 at 17. The MLAT request itself, however, is not subject to production. In fact, MLAT requests (rather than the responsive materials) are explicitly excluded from production under Rule 16(a)(2). Defendant has not pointed to any authority supporting a different conclusion.[6]

There is no support for the defendant's argument that he is entitled to any document he believes "contains information regarding the government's theory of the case." Doc. #44 at 17. "[T]he defendant's constitutional rights under the [F]ifth and [S]ixth amendments require that he be informed of the nature of the offense charged to allow him to prepare a defense and to protect his double jeopardy rights; they do not require the government to reveal the details of how it plans to prove its case." *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991). Here, the indictment and the discovery produced to date provide the defendant considerable information regarding the charged offenses and evidence to be used at trial.

With regard to search warrant materials, the government has explained to Hutchins that no search warrants were executed that focused on Hutchins' activities. There was a search warrant executed in an unrelated case that revealed statements made by Hutchins to CS-1, and those statements were turned over in

---

[6] Moreover, the MLAT request submitted in this case related to Hutchins's codefendant and not Hutchins. As noted above, the government has disclosed materials received in response to the MLAT, but the MLAT itself is not subject to production under Rule 16, *Giglio*, *Brady*, or § 3500.

Page **16** of **17**

Case 2:17-cr-00124-JPS-NJ Filed 01/19/18 Page 16 of 17 Document 45

discovery under Rule 16. But, there is no authority supporting the production of that search warrant affidavit or other documents relating to that warrant. The warrant was executed at a residence in the United States and did not involve Hutchins' property or privacy interests. The affidavit is not subject to disclosure under 18 U.S.C. § 3500 because it was made in connection with an unrelated investigation. Given the separation between this case and the other investigation, the government does not believe at this time that the affiant's statements in the affidavit supporting that warrant "relate to the subject matter of the testimony" to be presented in this case. 18 U.S.C. § 3500

VII.  Conclusion

For the reasons stated above, the Court should deny Hutchins' motion to compel in its entirety.

Dated at Milwaukee, Wisconsin, this 18th day of January, 2018.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney

By:   s/ Benjamin W. Proctor

BENJAMIN W. PROCTOR
MICHAEL J. CHMELAR
Assistant United States Attorneys
Benjamin Proctor Bar No.: 1051904
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Email: michael.chmelar@usdoj.gov
Email: benjamin.proctor@usdoj.gov