UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                    Case No. 17-CR-124

MARCUS HUTCHINS,

        Defendant.
_____

**DEFENDANT MARCUS HUTCHINS'
REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY**
_____

        The government's response to defendant Marcus Hutchins' motion to compel lacks merit and is flawed for many reasons, including because it shows a troubling insensitivity to the tie between the government's discovery obligations and a defendant's right to prepare a defense.

        Mr. Hutchins is not seeking discovery that he is not entitled to under the law, as the government claims. At its core, discovery in a criminal case is about what is just and creating a level playing field at trial. There can be no doubt from the government's response that it has a bounty of additional materials and communications relevant to the defense discovery requests. But the government is not honoring its discovery obligations by failing to disclose them. As such, the Court should grant Mr. Hutchins' motion to compel discovery.

- **Request 1**: Materials and Communications Relating to the Surveillance and Arrest of Mr. Hutchins

Although the government has now produced two reports and two e-mails related to Mr. Hutchins' surveillance and arrest, it is withholding additional discoverable materials and communications. The government's response neglects to mention that these records that the government references as being disclosed "recently" were produced to the defense earlier on the same day the response was filed. (*See* Dkt. No. 45 at 3.)

This defense request is focused on information that relates to how the government discussed handling, and did handle, Mr. Hutchins' arrest and interview. This would include issues relating to intoxication, exhaustion, and Miranda warnings, as well as the facts that Mr. Hutchins is a citizen of the United Kingdom and that the FBI only partially recorded his post-arrest interview. As such, the government's complaint about overbreadth is misplaced: it quibbles that Mr. Hutchins requests "all materials and communications." (*See id.* at 2.) The defense intended that language as distinct from seeking merely "some" responsive information.

The government's production the day it filed its response validates the merits of this defense request. That production included one e-mail, dated August 2, 2017 (the day of Mr. Hutchins' arrest), discussing what the agents should do if Mr. Hutchins started drinking at the airport (the plan: "pull him out

2

of terminal"). This shows the agents' contemporaneous awareness of, and concern about, the possibility of Mr. Hutchins being impaired. There surely might be other communications, including e-mails and text messages on agents' phones, touching on the voluntariness of Mr. Hutchins' supposed proper waiver of his Miranda rights, as well as the voluntariness of the resulting statement.

The government argues that communications relating to agent travel and coordinating meetings are not discoverable, but that concern can be swept aside. (*See id.* at 4.) The defense does not seek those types of communications; the defense seeks substantive communications.

Importantly, the government does not claim that such communications do not exist. It has said only that the government has "not located any additional reports related to the surveillance of the defendant while he was in Las Vegas." (*Id.* at 3.) Since the agents started surveillance on July 26, 2017 and it ran through August 2, 2017, it is inconceivable that the agents actively surveilling him exchanged nothing but a single e-mail right before Mr. Hutchins' arrest.[1] There may also be communications with the prosecutors. As an example, after Mr. Hutchins was arrested, the agents may have notified the prosecutors of the

---

[1] The only other e-mail disclosed by the government appears to have been sent from an FBI agent in Milwaukee on July 26, 2017, and requests FBI Las Vegas assistance to conduct surveillance of Mr. Hutchins.

3

arrest and informed them of pertinent particulars like the partial recording of his interview.

The defense motion also makes it abundantly clear that the discovery sought is necessary for the jury to evaluate Mr. Hutchins' post-arrest statements "in their full context at trial, should the government to seek to introduce them into evidence." (Dkt. 44 at 4.) This request is not geared solely toward motion practice. The requested information is material to trial—undoubtedly, the government intends to introduce portions of the post-arrest interview in its case-in-chief.

Finally, the government does not dispute that intoxication and exhaustion are proper grounds for a motion to suppress or on which to cross-examine the agents who testify at trial about what was purportedly said in the interview. The government makes much of the fact that Mr. Hutchins was asked by FBI agents if he had been drinking. But even if the FBI 302 (which was written over four months after the arrest) is accurate, it does not mention exhaustion or other possible forms of intoxication (it only mentions drinking). The government's response also ignores the significance of Mr. Hutchins' foreign citizenship and whether there is any information related to that not already produced.

4

- **Request 2: Materials and Communications Relating to Mr. Hutchins' Co-Defendant**

The Court should reject the government's arguments as to why it thinks it appropriate to withhold additional information about Mr. Hutchins' co-defendant, the person he is accused of conspiring with.

The fact that the government has produced some information concerning the co-defendant does not obviate the requirement for it to produce more, which appears to be gist of the government's argument. The government provides no legal basis at all for failing to turn over the co-defendant's discovery simply because that person has not been arrested.

Mr. Hutchins and his co-defendant are inextricably intertwined in the indictment. For that reason alone, anything the government would produce to the co-defendant upon arrest should be produced to Mr. Hutchins (with a few minor possible exceptions). That the co-conspirator has not yet been arrested is immaterial to the government's obligations in Mr. Hutchins' case. And it is clear from the government's response that it is withholding just such discovery.

The government claims the defense is speculating that the government possesses more information about the co-defendant, including (important) information that he operated independently of Mr. Hutchins. (Dkt. No. 45 at 6.) The government does not deny, however, that this is the case. The government only claims it does not possess information relating to criminal activity outside of

5

what is charged in the indictment, and it will produce additional records if it identifies them and deems them material. (*Id.* at 6.) From this, it is apparent that the government has additional information it is not disclosing based on its own materiality determinations. This is reinforced by the government's later assertion the "information requested cannot be considered material to a trial defense." (*Id.* at 6-7.) The government provides no support or explanation for that alleged lack of materiality. Indeed, the government fails to describe the information it is withholding so that the Court to make a meaningful determination about whether the government should produce it.

Rather, the government simply goes on to argue that Mr. Hutchins is not in a position to use the requested information, assuming it is provided, to locate the co-defendant and obtain exculpatory information because of purported claims that Mr. Hutchins previously made about not knowing the co-defendant. (*Id.* at 7.) This argument glosses over two important points, while at the same time conceding that information is being withheld. First, Mr. Hutchins made those purported statements before the government produced any discovery, which could have refreshed his memory and also assisted his defense team in its investigation. Second, and more importantly, the requested information may contain exculpatory information (*e.g.,* the co-defendant operated independently from Mr. Hutchins).

6

As noted in the motion to compel, the defense is willing to enter into an amended protective order to alleviate any concerns the government might have about how the requested discovery could impede the co-defendant's arrest (although the government has not voiced any such concern).

- **<u>Request 3</u>: Materials and Communications Relating to "Randy"**

The government is wrong that the defense is "not entitled to further information" about the cooperating witness known as "Randy" because such information "is covered by the informant privilege." (*See id.* at 7.) And this request is not overbroad, as the government claims, for the same reasons that the defense's earlier requests are not overly broad.[2]

The government fundamentally misapplies the informant's privilege.[3] "Randy" is not a tipster, which would potentially permit the government to invoke the protections of the informant's privilege. To the contrary, the government concedes the facts necessary for the Court to find that "Randy" is a transactional witness, which would make the informant's privilege inapplicable.

---

[2] The government mischaracterizes events relating to this request in the apparent hopes of undermining the substance of the defense's points. The government claims "the defendant misstates the status of discovery when he claims the government has produced <u>only</u> one 'heavily redacted FBI 302 of an interview with ['Randy']." (*Id.* at 8.) But the defense motion merely noted that "[i]n response the defense's discovery requests, the government produced a heavily redacted 302," and it is not willing to provide additional discovery relating to "Randy." (Dkt. No. 44 at 10.) This is, of course, accurate.

[3] Nothing about the allegations in this case, nor anything about Mr. Hutchins, suggests that concealing "Randy" from the defense is necessary for witness safety. The government does not attempt to make that argument. (*See* Dkt. No 45 at 7-11.)

7

Specifically, "Randy" claims, according to the government, that Mr. Hutchins sent him a copy of the relevant malware and made "admissions" during their chats. (*Id.* at 10.)

In this way, "Randy" is on equal footing with, for instance, the bank teller who observed an alleged robber's facial characteristics. Words Mr. Hutchins may have communicated to "Randy" have evidentiary value only if the latter testifies, the same as the teller's observations of the alleged robber's appearance. "Randy" is, in fact, a purported percipient witness who the government cannot conceal from the defense merely by artificially assigning him the label "informant." And, to be clear, the government wants it both ways, wishing to maintain "Randy" as a witness available to the government at trial. (*Id.* at 10-11.)

The government's proposed solution merits particular mention (due to its lack of merit): it offers that if it decides to present "Randy" as a trial witness, the defense will learn "Randy's" identity in connection with the pretrial report that Judge Stadtmueller requires a week or two before trial. (*Id.*) On this basis, the government dismisses Mr. Hutchins' desire to prepare his defense with awareness of a fact witness' identity as "moot."[4] (*Id.* at 11.)

---

[4] Mootness could arise if the government declared that it does not intend to use "Randy" as a trial witness. Until then, the government's position is an example of wanting to have its cake (*i.e.*, concealing a fact witness' identity), while eating it, too (*i.e.*, keeping its options open to use the witness at trial).

8

The government's proposal, however, ignores its discovery obligations. The government cannot restrain a witness' cooperation with the defense. Concealing even "Randy's" identity (and attorney's name) does worse than chill a fact witness' availability to the defense; it prevents the defense from even reaching out to that witness' counsel. *See United States v. DeRobertis*, 766 F.2d 270, 274 (7th Cir. 1985).

The government's response also implicitly acknowledges that "Randy" eventually became "an agent for the government." (*See id.* at 10.) Consideration offered to "Randy" is, of course, something the government must disclose.

In sum, the government's unilateral concealment of "Randy" interferes with Mr. Hutchins' ability to prepare his defense, and the government has not articulated any reason to justify nondisclosure.

- **Request 4: Portions of the Grand Jury Transcripts Dealing with Legal Instructions**

The Court should order the government to disclose the legal instructions provided to the grand jury because the indictment raises non-speculative questions about whether the grand jury was properly instructed on the law to Mr. Hutchins' prejudice.

To obtain grand jury materials, a defendant must demonstrate a "compelling necessity" or a "particularized need." (Dkt. No. 44 at 14.)

9

Importantly, a court has "substantial discretion" to order disclosure. *United States v. Lisinski*, 728 F.2d 887, 893 (7th Cir. 1984).

Mr. Hutchins has shown a "compelling necessity" and a "particularized need" for access to instructions given to the grand jury. First, rather than engaging in baseless "speculation," as the government claims (Dkt. No. 45 at 13-14), the defense has pointed to two specific instances in the indictment in which the charged offenses fail to conform to the legal requirements in the law. (Dkt. No. 44 at 15-16.) Specifically, Counts 2 and 6 each misstate an essential element of the offense.

These two material discrepancies raise a genuine question about whether the grand jury properly understood the basic elements of the charged offenses. If they were misinformed as to essential elements, this error could have "substantially influenced the grand jury's decision to indict," or it may raise "grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (internal quotation marks omitted).[5] The legal instructions are needed to avoid a possible injustice in Mr. Hutchins' criminal prosecution.

---

[5] *See also United States v. Buske*, No. 09-CR-65, 2010 WL 3023364, at *3 (E.D. Wis. July 29, 2010) (Adelman, J.) (an inference may arise that a grand jury has been erroneously instructed where the prosecutor is "on record advocating an erroneous construction of the law").

10

Furthermore, the defense's need for the instructions outweighs the necessity for continuing secrecy. *Lisinski*, 728 F.2d at 893. Any need for secrecy now is weak, at best. Mr. Hutchins and his co-defendant have been indicted, and there are no known ongoing grand jury deliberations.

The defense seeks a very limited subset of materials: those reflecting how the grand jury was instructed as to the law. This information would show simply what the grand jury understood the relevant law to be and disclose nothing more. Indeed, some courts have held that a defendant is entitled to know instructions to the grand jury even without a showing of particularized need, as they are the "ground rules" by which a grand jury conducts its proceedings rather than a part of the proceedings themselves. *See, e.g., United States v. Belton*, 2015 WL 815273, at *3 (N.D. Cal. Apr. 21, 2015) (citing *United States v. Alter*, 482 F.2d 1016, 1029 n. 21 (9th Cir. 1973)).

While the Seventh Circuit requires a showing of need for access to instructions given to a grand jury, *United States v. Barry*, 71 F.3d 1269, 1274 (7th Cir. 1995), the defense is seeking limited ministerial materials that will reveal only how the grand jury was instructed on the law. This is another factor that weighs in favor of disclosure.

The government may not be required to give the grand jury legal instructions—but the government does not say that it didn't do so. (*See* Dkt. No.

11

45 at 12.) The government's claim that the defense "cannot show the grand jury was improperly instructed" and thus cannot show prejudice dodges the issue. (*See id.* at 13.) The defense seeks the instructions to confirm the grand jury was improperly instructed for a motion to dismiss, since there are good faith and non-speculative reasons to believe it was not based on the material errors in how Counts 2 and 6 were charged. Without the first (the instructions), it is harder to prove the second (prejudice).

At a minimum, the defense asks that this Court review any instructions given to the grand jury *in camera* to determine whether they should be disclosed.[6]

- **Request 5: Materials and Communications Relating to Search Warrants and MLAT Requests**

The government's opposition to disclosure of MLATs rests largely on its claims that MLATs are not subject to production pursuant to Federal Rule of Criminal Procedure 16(a)(2). (Dkt. No. 45 at 16.) But that rule only excludes from discovery "reports, memoranda, or other *internal* government documents."[7] (Emphasis added.) An MLAT by its nature is not an internal document: it is sent

---

[6] *See, e.g., United States v. Ho*, No. 08-00337, 2009 WL 2591345, **4-5 (D. Haw. Aug. 20, 2009) (finding the possible misleading of the grand jury about a requirement of the charged offense to be sufficient grounds for an *in camera* review of grand jury transcripts as they relate to the government's instructions about that requirement).

[7] It states: "Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."

12

to a foreign government. Nothing could be less "internal." Rule 16(a)(2) is inapplicable and provides no grounds for non-disclosure.

The government's remaining arguments are equally misplaced. For example, the defense is not seeking "details" about how the government "plans to prove its case." (Dkt. No. 45 at 16 (citation omitted).) The defense simply seeks an important document used in connection with investigating this case, not the government's trial plans.

Regarding the requested search warrant materials, the government states that it does not have to produce the one it acknowledges having because it was executed at a United States residence and "did not involve [Mr.] Hutchins' property or privacy interests." (*Id.* at 16-17.) The fact that it was executed at a United States residence is irrelevant, of course, even if Mr. Hutchins is a foreign citizen. And the government does not explain how it came to the conclusion that the search warrant "did not involve Mr. Hutchins' property or privacy interests," other than baldly claiming it was executed in connection with what it believes is an unrelated case. There may be some relationship, though, because that search produced evidence the government is keeping available for its use in this case: purported statements between Mr. Hutchins and "Randy," as the government otherwise acknowledges. (*See id.* at 16.) And the government ignores the fact

13

that if an agent who is going to testify at trial attested to any search warrant, the government should produce it as a witness statement.

## CONCLUSION

For all the reasons above and those in the motion to compel, the Court should order the government to produce all of the requested discovery.

DATED: January 26, 2018          Respectfully submitted,

                                     */s/ Brian E. Klein*
                                   BRIAN E. KLEIN
                                   Baker Marquart LLP
                                   2029 Century Park E – Suite 1600
                                   Los Angeles, CA 90067
                                   Email: bklein@bakermarquart.com
                                   Telephone: (424) 652-7800

                                     */s/ Daniel W. Stiller*
                                   DANIEL W. STILLER
                                   DStillerLLC
                                   Box 511130
                                   Milwaukee, WI 53203
                                   Email: dan@dstillerllc.com
                                   Telephone: (414) 207-3190

                                     */s/ Marcia Hofmann*
                                   MARCIA HOFMANN
                                   Zeitgeist Law PC
                                   25 Taylor Street
                                   San Francisco, CA 94102
                                   Email: marcia@zeitgeist.law
                                   Telephone: (415) 830-6664

                                   *Attorneys for Marcus Hutchins*