UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                Case No. 17-CR-124

MARCUS HUTCHINS,

        Defendant.
_____

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
(WITH REQUEST FOR AN EVIDENTIARY HEARING)**
_____

Defendant Marcus Hutchins asks this Court to suppress his post-arrest statements, along with any evidence the government may have obtained as a result of them. In conducting the custodial interrogation, the government coerced Mr. Hutchins, who was sleep-deprived and intoxicated, to talk. Moreover, because Mr. Hutchins is a citizen of the United Kingdom, where a defendant's post-arrest rights are very different than in the United States, he did not sufficiently understand any warnings he may have been given or rights being waived. Overall, the government's post-arrest interview violated Mr. Hutchins' rights.

Mr. Hutchins also seeks an evidentiary hearing and an opportunity to submit briefing following the development of facts at that hearing. The parties

corresponded and spoke in the lead up to this motion in compliance with Criminal Local Rule 12(b). The government indicated that it intends to oppose the request for an evidentiary hearing, although it may change its mind upon review of this motion.

The Court has tentatively scheduled an evidentiary hearing for April 18, 2018 at 1:30 p.m. The defense believes a half-day evidentiary hearing, at most, is needed, so the entire hearing should be able to proceed as scheduled.

## BACKGROUND

The following is a brief rundown of the facts and circumstances of Mr. Hutchins post-arrest interview. As the Court will see, there are a number of reasons an evidentiary hearing is merited. The existing record is materially incomplete in ways compromising this Court's ability to evaluate the voluntariness of any waiver by Mr. Hutchins of his Miranda rights, as well as the voluntariness of his post-arrest statements. *See United States v. LeShore*, 543 F.3d 935, 941 (7th Cir. 2008) (citing *Baskin v. Clark*, 956 F.2d 142, 145 (7th Cir. 1992) for the proposition that "[a] valid waiver is necessary but not sufficient for a voluntary statement" because "a statement may still be found involuntary under the totality of the circumstances even though the [*Miranda*] waiver was valid.").

On August 2, 2017, federal agents executed a warrant for Mr. Hutchins' arrest by taking him into custody at the airport in Las Vegas. *See United States v.*

*Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996) (a suspect is "in custody" for purposes of *Miranda* when his movement is restrained to a degree comparable to formal arrest). Mr. Hutchins was arrested based on the pending six-count indictment alleging a variety of computer-related crimes dating from approximately July 2014 to July 2015. At the time of his arrest, Mr. Hutchins, a citizen of the United Kingdom, resided with his family in England, and he worked remotely for a Los Angeles-based computer security company.

When Mr. Hutchins was arrested, he was sitting in an airline lounge awaiting a flight home to the United Kingdom. He had been in Las Vegas for over a week in conjunction with DEF CON, an industry conference.

The agents did not find Mr. Hutchins at the airport by accident. The FBI had conducted surveillance of him while he was in Las Vegas, and was aware of his travel plans. The FBI monitored Mr. Hutchins the morning of his arrest, starting at 6:44 a.m., according to an FBI physical surveillance log. The FBI's log noted Mr. Hutchins' arrival at the airport (12:18 p.m.), time at the ticket counter (12:34 p.m.), approach to the TSA check point (12:39 p.m.), clearance through security (12:41 p.m.), entry to the lounge (12:49 p.m.), and presence in the airline lounge (12:56 p.m.). There, agents took him into custody (1:17 p.m.).

An email sent between FBI agents and discussing what was happening during this time period stated:

> Subject is at airport and thru security. After talking with cbp they usually do arrests upon boarding and have a very discrete rout to take him to a secure location. Very quiet and out of the public eye. So that is the plan currently. One contingency if he starts drinking we will pull him out of the terminal.

As Mr. Hutchins sat in the airport lounge, he was not drinking, but he was exhausted from partying all week and staying up the night before until the wee hours. He had also used drugs.

According to an FBI memorandum, before "initiating a post arrest interview," an agent asked Mr. Hutchins if he had been drinking that day, and he responded that he had not. That memorandum, written over four months after the arrest, then states that the agent asked Mr. Hutchins "if has [sic] in a good state of mind to speak to the FBI Hutchins agreed." Mr. Hutchins did not understand it to be an inquiry as to whether he had used drugs or was exhausted.

An FBI memorandum states that an agent called the British consulate at 1:26 p.m. to notify them of Mr. Hutchins' arrest. Thus, the FBI was fully aware that Mr. Hutchins was a citizen of another country (and one with a very different set of rights relating to post-arrest interviews).

4

Two agents interviewed Mr. Hutchins after his arrest. Here is a summary of what is presently known about that interrogation:

- An FBI memorandum written five days after the interrogation generically states: "After being advised of the identity of the interviewing Agents, the nature of the interview and being advised of his rights, HUTCHINS provided the following information . . ." The memorandum does note the time that advisement was purportedly given. At the end, it notes that Mr. Hutchins provided consent to search his two phones, two laptops, and a thumb drive in his backpack, although it does not note when that allegedly happened during the course of the interview.

- An FBI Advice of Rights form sets forth Miranda warnings and reflects Mr. Hutchins' signature. It is dated August 2, 2017, but the time it was completed includes two crossed out times, 11:08 a.m. and 2:08 p.m., and one uncrossed out time, 1:18 p.m. (which is one minute after the FBI log reflects Mr. Hutchins' arrest, as noted above).

- A lengthy portion of Mr. Hutchins' post-arrest statement was audio recorded by the FBI. Importantly, however, the agents did not record the part of the interview in which they purportedly advised of him of his Miranda rights, answered any questions he might have had, and had him sign a Miranda waiver form. The audio recording commences with a conversation-in-progress with an FBI agent asking to look at Mr. Hutchins' phones and any laptops in his bags. Mr. Hutchins discussed his partying while in Las Vegas, as well as his lack of sleep, during the interrogation.

## DISCUSSION

Based on what is currently known, there can be no doubt that the FBI agents subjected Mr. Hutchins to a custodial interrogation. And there seems to be little doubt that the agents—in some unspecified fashion, at an uncertain

5

time—advised Mr. Hutchins of his rights under Miranda, and that he signed a form intended to memorialize his waiver of those rights.

But the advisement of warnings and the signature on a waiver form begin, rather than end, the constitutional inquiry. *See Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) ("the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused . . . knowingly and voluntarily waived [Miranda] rights when making the statement"). And a waiver inquiry "has two distinct dimensions." *Id.* First, the "waiver must be 'voluntary' in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, there has to have been "full awareness" on the defendant's part "of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The relevant inquiry demands consideration of the totality of the circumstances surrounding the advisement, the waiver, and the statement. *Fare v. Michael C.*, 442 U.S. 707, 725 (1979) (the "totality of the circumstances surrounding the interrogation" must "reveal both an uncoerced choice and the requisite level of comprehension").

Here, the reason why an evidentiary hearing is necessary is that the totality of circumstances surrounding the FBI's claim that Miranda warnings

6

were given and a waiver form bearing Mr. Hutchins' signature is shrouded in ambiguity and missing key information:

- The audio recording of Mr. Hutchins post-arrest interview does not reflect the giving of Miranda warnings or any waiver of those rights (including whether the agents knew he was sleep-deprived and intoxicated, or took into account his United Kingdom citizenship), and it reflects a joined-in-progress interview of Mr. Hutchins.

- No report depicting the advisement of rights and waiver of them sheds any meaningful light on the relevant conversation surrounding that transaction. The FBI memorandum only includes generic "we-advised-and-he-waived" language.

- The Advice of Rights form, itself, includes crossed off times that call into question when any advisement and waiver occurred. Also the non-crossed out time is one minute after Mr. Hutchins was arrested, suggestive of a cursory advisement, at best.

The concerns these issues raise are not idle or speculative, for at least two reasons.

First, the Seventh Circuit recognizes that intoxication is relevant to the voluntariness—legally, in terms of a statement's admissibility, and factually, in terms of the weight to be given to an admissible statement—of post-arrest statements. *See, e.g., United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009). And here, an FBI e-mail from the day of Mr. Hutchins' arrest reveals the agents' concern that Mr. Hutchins—a young man wrapping up a solid week of the Las Vegas experience—might start drinking at the airport (the plan: "pull him out of terminal"). This shows the agents' contemporaneous awareness of, and concern

7

about, the possibility of Mr. Hutchins being impaired. And while an FBI memorandum—one written more than four months afterward—claims Mr. Hutchins was asked about drinking, it does not mention exhaustion or other possible forms of intoxication (*e.g.,* drugs).

Second, the agents knew they were dealing with a citizen of the United Kingdom, a place where a defendant's post-arrest rights are very different than in the United States.[1] The United Kingdom's version of *Miranda* contains no mention of the right to counsel, and if a defendant does not talk, it may later be used against him under certain circumstances.[2] The Seventh Circuit recognizes that deceptive interrogation tactics can overcome a defendant's free will. *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009); *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998). So a circumstance highly relevant to the validity of Mr. Hutchins' waiver and the voluntariness of his statement is one that nothing available to the defense, or to this Court, addresses: whether the agents were

---

[1] United Kingdom law requires the following caution being given upon arrest (though minor wording deviations are allowed): "You do not have to say anything. But it may harm your defence if you do not mention when questioned something which you later rely on in Court. Anything you do say may be given in evidence." Police and Criminal Evidence Act 1984 Code G ¶ 3.5, Revised Code of Practice for the Statutory Power of Arrest by Police Officers (revised July 2012),
https://www.gov.uk/government/uploads/system/uploads/attachment_data/file/117583/pace-code-g-2012.pdf.

[2] *See* Police and Criminal Evidence Act 1984 Code C Annex C, Revised Code of Practice for the Detention, Treatment and Questioning of Persons by Police Officers (revised Feb. 2017),
https://www.gov.uk/government/uploads/system/uploads/attachment_data/file/592547/pace-code-c-2017.pdf.

aware of the differing rights and how those differences may have been accounted for—or preyed upon—during the (unrecorded) colloquy regarding Mr. Hutchins' rights.

Again, a waiver of the relevant rights is enforceable only when it is accompanied by a "full awareness" on the defendant's part "of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421. There are many reasons to believe Mr. Hutchins did not have full awareness.

## CONCLUSION

The post-arrest interview of Mr. Hutchins violated his rights. The agents knew (or had ample reason to know) that Mr. Hutchins was sleep-deprived and intoxicated, but they proceeded to interview him anyway. Further, the agents knew (or had ample reason to know) that the provision of Miranda warnings to a citizen of the United Kingdom requires special care, particularly in light of the foregoing.

But the evidentiary record—a record thus far under the government's sole control—is incomplete on these critical points. And so Mr. Hutchins' request at this point is for an evidentiary hearing to explore what did and did not happen before, ultimately, the agents decided the time was ripe to turn on the audio-

9

recording device. Again, the colloquy involving the advisement and waiver of rights happened before any recording started.

The admissibility of Mr. Hutchins' custodial statements depends on their voluntariness, and voluntariness is dependent upon the totality of the circumstances. The totality of circumstances here includes what transpired between Mr. Hutchins' arrest and the commencement of audio recording. Mr. Hutchins, therefore, requests an evidentiary hearing on this motion to suppress his post-arrest statements.

DATED: March 30, 2018          Respectfully submitted,

  /s/ Brian E. Klein
BRIAN E. KLEIN
Baker Marquart LLP
2029 Century Park E – Suite 1600
Los Angeles, CA  90067
Email: bklein@bakermarquart.com
Telephone: (424) 652-7800

  /s/ Daniel W. Stiller
DANIEL W. STILLER
DStillerLLC
Box 511130
Milwaukee, WI 53203
Email: dan@dstillerllc.com
Telephone: (414) 207-3190

  /s/ Marcia Hofmann
MARCIA HOFMANN
Zeitgeist Law PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law

10

Telephone: (415) 830-6664

*Attorneys for Marcus Hutchins*