UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                  Case No. 17-CR-124

MARCUS HUTCHINS,

        Defendant.

**UNITED STATES' PRE-HEARING MEMORANDUM REGARDING DEFENDANT'S MOTION TO SUPPRESS HIS POST-ARREST STATEMENT (DOC. # 55)**

      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this memorandum in advance of the evidentiary hearing on defendant Marcus Hutchins's motion to suppress post-arrest statements. Doc. #55. This memorandum is intended as an aid to the court to preview legal and factual issues surrounding Hutchins' motion. As discussed below, the United States anticipates that the evidence presented at the hearing will establish that Hutchins' post-arrest statement was knowing and voluntary, and therefore his motion must be denied.

I.   Introduction

      Marcus Hutchins was charged by indictment with several computer-related criminal offenses. Doc. #1. On March 30, 2018, Hutchins filed several motions,

including a motion to suppress his post-arrest statement made to FBI agents on August 2, 2017. Doc. #55. In this motion, Hutchins contends that he sleep deprived, intoxicated, and a citizen of another country, and therefore he "did not understand any [*Miranda*] warnings he may have been given or rights being waived." Doc. #55 at 1.

II. Legal Standard

A confession is admissible at trial if the government shows by a "preponderance of the evidence the defendant's *Miranda* waiver and voluntariness of the confession." *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 169 (1986) and *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)). In determining whether a defendant "voluntarily, knowingly, and intelligently" waived his *Miranda* rights, courts evaluate the totality of the circumstances related to the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also United States v. Tellefsen*, Case No. 11-CR-43, 2011 WL 4442539, at *11 (E.D. Wis. 2011) (Joseph, M.J.) (finding voluntary waiver of *Miranda* rights). A waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. It must also be made with full awareness of both the rights being abandoned and the consequences of the decision to abandon it. *Id.*

"[A]n essential predicate to a finding that a suspect's confession was involuntary" is a finding that police engaged in coercive activity. *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009) (citing *Connelly*, 479 U.S. at 167); *see also*

*United States v. Thompson*, Case No. 16-CR-132, 2017 WL 899915, *2 (E.D. Wis. 2017) (finding voluntary waiver of *Miranda* rights). When determining whether the police coerced a suspect, courts look to "'the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep.'" *Carson*, 582 F.3d at 833 (quoting *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001)). Evidence showing that the defendant was intoxicated, while relevant to determining whether the suspect was coerced into providing a confession, does not eliminate the requirement that police engaged in coercion. *See id.* at 833-34 (citing *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991)); *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992) (stating that a defendant's claim of intoxication—without some showing of coercion by the government—will not negate voluntariness).

Where defendants have asserted that that they did not have the ability to understand the rights they were waiving, courts employ a "low bar" in proving intelligent waiver. *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Id.* (citing *Colorado v. Spring*, 479 U.S. 564, 574 (1987)). "'A waiver is valid 'if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it.'" *Id.* (emphasis in original) (citing *United States v.*

*Ruiz*, 536 U.S. 622, 629 (2002)). A person can sufficiently understand and waive their rights even if he is unfamiliar with the U.S. legal system, lacks fluent understanding of English, or has a mental disability. *Id.* (collecting cases, including *United States v. Frank*, 956 F.2d 872, 876-78 (9th Cir. 1991), in which the Ninth Circuit rejected a defendant's argument that he, a Navajo Indian, lacked understanding of the U.S. legal system and therefore did not understand *Miranda* rights). "It is only when the evidence in the case shows that the defendant could not comprehend even the most basic concepts underlying the *Miranda* warnings that the courts have found an unintelligent waiver." *Id*. "One example is a defendant whose command of English is so poor that the police might as well have been speaking gibberish." *Id.*

Moreover, in the absence of a showing by the defendant that he could not understand and comprehend English, courts have found that "reading the [Advice of Rights] form to a defendant and giving him a chance to read it himself, followed by his statement that he understands his rights and his signature on the form, is sufficient to satisfy the *Miranda* test." *United States v. Springer*, 460 F.2d 1344, 1348-49 (7th Cir. 1972); *see also Collins*, 613 F.3d at 587-88.

III. Argument

At the outset, there is no valid argument that Hutchins lacked the mental capacity to understand English or lacked the ability to comprehend "the most basic concepts underlying the Miranda warnings" due to language or mental-capacity barriers. To the contrary, he travels across continents, is a self-proclaimed computer

Page **4** of **8**

Case 2:17-cr-00124-JPS-NJ    Filed 04/18/18    Page 4 of 8    Document 63

expert, works the field of cybersecurity for an American company, and had been attending "DEF CON, the world's largest and longest running hacking conference" immediately before his arrest. Doc. #44 at 5; Doc. #55 at 3. Therefore, to succeed on his motion, it must be established that his post-arrest statement was obtained through coercion sufficient to overcome his free will.

Hutchins, however, points to no evidence indicating that he was coerced into giving a statement following his arrest on the afternoon of August 2, 2017. Instead, he makes the conclusory assertions that "he was exhausted from partying all week and staying up the night before until the wee hours . . . [h]e also used drugs." Doc. #55 at 4. He admits that he told the FBI that he had not been drinking that day and that he was "in a good state of mind to speak to the FBI," but he asserts that he did not understand the FBI to be inquiring "whether he had used drugs or was exhausted." Doc. #55 at 4. Hutchins also implies that he *may* not have fully understood his Miranda rights because he is "a citizen of the United Kingdom, a place where a defendant's post-arrest rights are very different than in the United States." Doc. #55 at 8. He asserts that, because he was a U.K. citizen, the FBI was required to use "special care." Doc. #55 at 8-9.

The United States submits that evidence presented at the hearing will require denial of Hutchins' motion. The evidence will show that Hutchins was arrested on August 2, 2017, in Las Vegas as he waited to board a flight to the United Kingdom. Following his arrest, Hutchins was interviewed by two FBI agents: Special Agent Jamie Butcher and Special Agent Lee Chartier. Before the

interview started, the agents identified themselves and the nature of their investigation. Hutchins was also advised of his rights, both orally and in writing. Hutchins stated that he understood his rights, and he then signed a waiver of his rights on an Advice of Rights form below the statement "I have read this statement of my rights and understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Both FBI agents signed the form as witnesses.

Additionally, before the interview started, Hutchins read and signed a form titled Acknowledgement of Penalties for False Statements to the FBI. Hutchins signed the form below that statement "I have read and understand the provision set forth above [18 U.S.C. § 1001] and agree that I am making an oral or written statement subject to those provision and attended parties." Like the Advice of Rights form, both FBI agents signed that form as witnesses.

Hutchins then gave a recorded (audio) statement to the FBI that lasted approximately one hour and forty-one minutes. During the interview, Hutchins was lucid and answered many detailed questions posed by the FBI. As part of the interview, Hutchins signed a consent form allowing the FBI to search his backpack, phones, and laptops.

After the interview was over, Hutchins was detained a local jail before he appeared before a U.S. Magistrate Judge for his removal hearing under Rule 5 of the Federal Rules of Criminal Procedure. During his detention at the jail, Hutchins participated in two recorded phone calls that he initiated. Before the start of the

phone conversation, the automated phone system advised the parties that the phone call was subject to monitoring and recording. During the phone call, the individual speaking to Hutchins advised Hutchins multiple times not to say anything over the phone and told Hutchins he would try to find a lawyer for Hutchins. Nonetheless, Hutchins made multiple incriminating statements during the phone call including writing the code for a banking Trojan and compiling malware binaries and sending them to someone.

This evidence will show that Hutchins' post-arrest statement to the agents was knowing, voluntary, and intelligent. From his motion, it does not appear Hutchins actually contests this course of events. Instead, his argument focuses on his personal characteristics at the time of the interview. But his British citizenship does not provide cover; neither does his generic allegation of "drug use." *See, e.g., Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997) ("Absent a showing of some type of official coercion, however, a defendant's personal characteristics alone are insufficient to render a confession involuntary." (citing I, 479 U.S. at 167); *Collins*, 612 F.3d at 585 (noting that the Supreme Court has "never held [] that police can render a waiver of *Miranda* rights involuntary simply by failing to take 'special care' that a suspect with a mental disability understands his rights.").

IV. Conclusion

The above discussion attempts to set forth the legal context in which to view the anticipated evidence. The United States intends to supplement this memorandum following the evidentiary hearing, if acceptable to the Court.

Page **7** of **8**

Case 2:17-cr-00124-JPS-NJ    Filed 04/18/18    Page 7 of 8    Document 63

Dated at Milwaukee, Wisconsin, this 18th day of April, 2018.

                Respectfully submitted,

                MATTHEW D. KRUEGER
                United States Attorney

By:   s/ Benjamin W. Proctor

                BENJAMIN W. PROCTOR
                MICHAEL J. CHMELAR
                Assistant United States Attorneys
                Benjamin Proctor Bar No.: 1051904
                Office of the United States Attorney
                Eastern District of Wisconsin
                517 E. Wisconsin Ave. Suite 530
                Milwaukee, Wisconsin 53202
                Tel: (414) 297-1700
                Email: michael.chmelar@usdoj.gov
                Email: benjamin.proctor@usdoj.gov