UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                   Case No. 17-CR-124

MARCUS HUTCHINS,

        Defendant.
_____

**DEFENDANT'S PRE-EVIDENTIARY HEARING MEMORANDUM**
**(MOTION TO SUPPRESS)**
_____

Defendant Marcus Hutchins submits this memorandum in advance of the May 16, 2018 hearing on his motion challenging the admissibility of his post-arrest statement. On the eve of the originally scheduled hearing, the government: (1) filed a pre-hearing memorandum; (2) disclosed to the defense significant new information relevant to the pending motion; and (3) notified the defense that it intends to offer into evidence at the hearing calls Mr. Hutchins purportedly made to his boss from jail after his arrest. This memorandum addresses each of these developments.

# DISCUSSION

1. **The Court Should Exclude the Miranda Waiver Form Because the FBI Altered the Form, a Circumstance Supporting an Adverse Inference**

The night before Mr. Hutchins' originally scheduled evidentiary hearing, the government e-mailed the defense "new information about the arrest and interview of Mr. Hutchins" based on meetings it had that day with the two FBI agents who interrogated Mr. Hutchins. The government disclosed, among other things, that one of the agents revealed that she altered the advisement of rights form used when Mr. Hutchins was arrested, doing so *five* days after Mr. Hutchins' interrogation, by adding—and then twice changing—the time the agents and Mr. Hutchins allegedly signed the form. The form sets forth the Miranda warnings and appears to reflect Mr. Hutchins' signature waiving those rights at the start of the FBI's post-arrest interrogation, based on the handwritten time added days after the fact. Until the agent's eve-of-hearing disclosure to the prosecutors, the defense had no idea of this significant alteration.

Based on law enforcement's alteration of the form, the Court should exclude that evidence—the form—from the record relevant to Mr. Hutchins' suppression motion. The Court should also draw from the circumstance an inference adverse to the government's position that Mr. Hutchins was warned of and waived his constitutional rights before making a post-arrest statement. The

2

agent's alteration of the form undercuts not just the credibility of that FBI agent, but also undermines the integrity of the government's entire version of events on which it bases its claim that Mr. Hutchins validly waived his Miranda rights before answering questions.

The form, a copy of which is attached as <u>Exhibit A</u>, is dated August 2, 2017 (the day of Mr. Hutchins' arrest). It reflects two crossed-out times, 11:08 a.m. and 2:08 p.m., and one uncrossed-out time, 1:18 p.m. Coincidentally, this "final" time is only one minute after the FBI log states Mr. Hutchins was arrested, at 1:17 p.m. Those three times are handwritten in both the form's header and below the two agents' signatures at the bottom of it.

Hours before the scheduled April 19 evidentiary hearing, the government revealed to the defense for the first time how the handwritten times listed on the form came about. Since receiving the form from the government in discovery last fall, the defense had assumed that one of the agents had added the times contemporaneously with the interrogation. But that was not so.

One of the two agents who interrogated Mr. Hutchins, Agent Butcher, disclosed to the prosecutors that:

> The header information on the advice of rights form
> was entered after the interview. [She] realized the time
> she entered on the form was incorrect when she was
> drafting the 302 and attempted to reconstruct the time
> based on information available to her.

3

Agent Butcher wrote that 302, which is the FBI's official report of the interrogation, *five* days after the interrogation, when she was presumably back in Milwaukee. The agent did not note her alteration of the form in the 302 or anywhere else.

The agent's 302, which was produced to the defense last fall, only generically states: "After being advised of the identity of the interviewing Agents, the nature of the interview and being advised of his rights, HUTCHINS provided the following information . . ." The 302 does not note anywhere the time that advisement was purportedly given, despite the fact that the FBI's Domestic Investigations and Operations Guide requires agents to include in the FBI 302 "the details of the recording (e.g., date, time, start and stop periods, reasons for stopping.)"[1] The report's only reference to it is that generic opening statement.

It appears the prosecutors did not know Agent Butcher altered this important piece of evidence until their April 18 meeting with her. When the

---

[1] "When recording a custodial interview, the recording should include an advice and waiver of *Miranda* rights, as well as a question and answer segment designed to demonstrate that the interviewee's statements are voluntary and not the product of coercion. After completing the recorded interview, the agent must document the fact that the interview took place in an FD-302, noting . . . the details of the recorded session (e.g., date, time, start and stop periods, and reasons for stopping)." Federal Bureau of Investigation, Domestic Investigations and Operations Guide, Electronic Recordings of Interviews, § 18.5.6.4.16 at 18-35 (2013), https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29/fbi-domestic-investigations-and-operations-guide-diog-2013-version/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202013%20Version%20Part%2001%20of%2001/view.

4

government produced the form, it did not disclose that it had been altered multiple times several days after the interrogation. To date, the defense has not received an unadulterated copy of the form, presumably because there is none.

The agent's belated addition and alteration of times on the form is important. When Mr. Hutchins signed the form (before, during, or after the interrogation commenced) is part of the analysis of whether his purported Miranda waiver was proper. The integrity of the supposedly contemporaneous document that speaks to that significant issue is compromised. The agent's alteration of evidence also calls into question her credibility, since she did not make any record of her alterations and only revealed them when, presumably, the prosecutors called on her to explain the form's facial idiosyncrasies.

Evidence crucial to determining whether law enforcement honored Mr. Hutchins' constitutional rights in connection with custodial interrogation is spoiled, at law enforcement's hands. The form, as it existed whenever Mr. Hutchins signed it, apparently no longer exists. In its place is an altered version, and the government should not be permitted to introduce and rely on altered evidence in defending against Mr. Hutchins' suppression motion. *See Whitlock v. Brueggemann*, 682 F.3d 567, 585 (7th Cir. 2012) (Section 1983 case explaining that the deliberate manufacture of false evidence violates the Due Process Clause). The Court should therefore exclude the altered form from the record informing

5

its treatment of Mr. Hutchins' motion.² And the Court should also draw from the circumstance an inference adverse to the government's position that Mr. Hutchins was warned of and waived his constitutional rights before making a post-arrest statement. *See United States v. Laurent*, 607 F.3d 895, 902 (1st Cir. 2010) (noting that a "spoliation" instruction, allowing adverse inferences, is "commonly appropriate" in both civil and criminal cases where it is reasonable to conclude that evidence favorable to one side was destroyed by the other).

**2. Marcus Hutchins' Post-Arrest Statements Should Be Suppressed**

Nothing in the government's pre-hearing memorandum establishes the voluntariness of Mr. Hutchins' participation in custodial interrogation under the totality of circumstances.

Because Mr. Hutchins had been indicted before he was arrested and interrogated, his Sixth Amendment right to counsel had attached. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). This is important to the Court's consideration of whether Mr. Hutchins' purported Miranda waiver and his statement were voluntary. As the Seventh Circuit has noted, but the government's pre-hearing memorandum overlooks, "the importance of the Sixth Amendment in protecting the accused" requires that "courts indulge in <u>every</u> reasonable presumption

---

² The focus here is exclusion of the altered form from the Court's consideration of Mr. Hutchins' suppression motion. The defense additionally believes that the altered form should be declared inadmissible at trial.

against waiver[.]" *Id.* at 404 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 238-40 (1973) (emphasis added) (internal quotation marks omitted). The burden is on the government to overcome <u>every</u> reasonable presumption. *See Colorado v. Connelly*, 479 U.S. 157, 169 (1986).

In deciding if a Miranda waiver was effective, as noted in the defense's underlying motion to suppress, the Court is required to make two separate inquires. (Mot. to Suppress at 6 (Dkt. No. 55).) First, the "waiver must be 'voluntary' in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the defendant has to have had "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Again, this burden is the government's. *Connelly*, 479 U.S. at 421. The Court may find that Mr. Hutchins waived his Miranda rights only if the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *Moran*, 475 U.S. at 421 (internal quotation marks omitted).

Coercion, which can be both physical and mental, is analyzed from the perspective of reasonable person in the position of the suspect. *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir. 1997). Among the defendant-centric factors a court should consider are "the nature of the interrogation and mental state" and

7

"experience with the criminal justice system." *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001); *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997).

The Seventh Circuit also recognizes that intoxication is relevant to the voluntariness of post-arrest statements — legally, in terms of a statement's admissibility, and factually, in terms of the weight to be given to an admissible statement. *See, e.g., United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009). The Seventh Circuit has explained:

> When the interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, 'a <u>lesser quantum of coercion</u> may be sufficient to call into question the voluntariness of the confession.'

*Id.* at 833-34 (citing *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991) (emphasis added)).

Deception, as an independent basis for suppression, requires that the defense produce clear and convincing evidence that the agents affirmatively mislead the defendant as to the true nature of their investigation, and that the deception was material to the decision to talk. *United States v. Serlin*, 707 F.2d 953, 956 (7th Cir. 1983). Importantly, as the Seventh Circuit explained:

> Simple failure to inform defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit <u>unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead</u>.

8

*Id.* (emphasis added).

As an example, in *United States v. Giddins*, the Fourth Circuit concluded that a defendant's Miranda waiver and statements were involuntary when law enforcement deceived him in connection with custodial interrogation. 858 F.3d 870, 885 (4th Cir. 2017). There, the police obtained an arrest warrant for a defendant who was tied to a series of bank robberies. *Id.* at 875. The police informed the defendant that they had his car (which had been used in one of the robberies), and he went to the police station intending to retrieve it. *Id.* When he arrived at the police station, however, the defendant was taken to an interrogation room. *Id.* at 875-76. When the defendant asked if he was "in trouble," the police told him "no" both before and after they had presented him with a Miranda waiver form, which he signed. *Id.* at 884. He was subsequently indicted and the statements he made to the police were admitted into evidence at trial. *Id.* at 878.

On appeal, the Fourth Circuit found that the waiver and statement were both involuntary because the police affirmatively misled the defendant as to the "true nature of the investigation by not informing him that he was the subject of the investigation." *Id.* It was important to the Fourth Circuit's analysis that law enforcement was going to execute the arrest warrant during the interrogation. *Id.* The Fourth Circuit proceeded to find on the totality of the circumstances that

9

the deception rose to such a level that the defendant's "will was overborne or his capacity for self-determination critically impaired." *Id.* at 885. As such, the Fourth Circuit concluded that the post-waiver statements were inadmissible and reversed the judgment of conviction. *Id.* at 887.

The Court should reject the government's arguments in its pre-hearing memorandum opposing the motion to suppress Mr. Hutchins' statements. The government contends that Mr. Hutchins knowingly and voluntarily waived his Miranda rights. (Gov't Memo. at 1 (Dkt. No. 63).) In doing so, it generally contends that because Mr. Hutchins is a native English speaker, smart and well-traveled, the only ground for suppression is coercion sufficient to overcome his free will, and that did not happen. (*Id.* at 5.) In this regard, the government reduces the totality to just a few cherry-picked circumstances.

First, as noted above and in the defense's motion, deception can also be a ground for suppression. (Mot. to Suppress at 6.) And the defense anticipates that the evidence before the Court, including the partially recorded post-arrest interrogation, will show that Mr. Hutchins did not understand the nature and posture of the investigation. And that the agents hid the ball when Mr. Hutchins sought clarification.

Second, the defense expects the evidence to show that the interrogating agents knew that Mr. Hutchins was exhausted at the tail-end of a week-long

10

partying binge. They also knew that he was a citizen of the United Kingdom, where a defendant's post-arrest rights are very different than in the United States, and that he had minimal prior contact with this country.

These are circumstances the Court should consider in light of the legal reality that a defendant's waiver of Miranda rights is enforceable only when it is made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421.

### 3. The Court Should Not Consider the Jails Calls

The government believes that two calls Mr. Hutchins made to his boss from jail are somehow indicative that he previously and voluntarily waived his Miranda rights and made statements when subjected to custodial interrogation. But those calls are not relevant to the issues this Court must consider in evaluating Mr. Hutchins' suppression motion.[3]

The two calls the government wants the Court to consider were made by Mr. Hutchins to his boss from the Henderson Detention Center in Nevada, where he spent the night before his first appearance in federal court. They occurred the day of, but hours after, the post-arrest interrogation.

---

[3] The calls were audio-recorded and the government has disclosed those recordings, along with draft transcripts reflecting what was said. The defense's review of the draft transcripts reveals minor discrepancies between the transcripts and the actual conversations. If, over Mr. Hutchins' objection, the Court chooses to consider the calls, that consideration should be based on listening to the actual calls, not just reviewing the transcripts.

11

As the Seventh Circuit has explained, the voluntariness of a Miranda waiver is determined by the circumstances and events leading up to the decision. *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997). The analysis does not include events that occur after the fact. Nonetheless, the government wishes for the Court to consider events after the interrogation as part of the totality of the circumstances relevant to the voluntariness of Mr. Hutchins' willingness to be interrogated. This is improper because it shows nothing about Mr. Hutchins' state of mind at the time of his waiver.

Beyond the after-the-fact nature of the jail calls, their relevance to the voluntariness of Mr. Hutchins' participation in custodial interrogation is undermined by two other circumstances. First, the calls are between Mr. Hutchins and his boss, not law enforcement. One's comfort in discussing sensitive matters with a personal confidant does not speak to the voluntariness of an earlier decision to speak about those same matters with law enforcement. Second, the calls do not involve Mr. Hutchins reflecting on his earlier decision about whether to participate in the post-arrest interrogation. The calls do not make any fact in dispute more or less probable (*i.e.,* the voluntariness of Mr. Hutchins' decision to waive his right and participate in post-arrest interrogation).

The Court should not consider the two jail calls.

12

## CONCLUSION

For all the above reasons, the Court should: (1) impose sanctions for the spoliation of evidence; (2) suppress Mr. Hutchins' post-arrest statements, and any evidence the government may have obtained as a result of those statements; and, as a matter of procedure, (3) not consider the two post-interrogation jails calls between Mr. Hutchins and his boss.

DATED: May 9, 2018                          Respectfully submitted,

                                           */s/ Brian E. Klein*
                                           BRIAN E. KLEIN
                                           Baker Marquart LLP
                                           2029 Century Park E – Suite 1600
                                           Los Angeles, CA 90067
                                           Email: bklein@bakermarquart.com
                                           Telephone: (424) 652-7800

                                           */s/ Daniel W. Stiller*
                                           DANIEL W. STILLER
                                           DStillerLLC
                                           Box 511130
                                           Milwaukee, WI 53203
                                           Email: dan@dstillerllc.com
                                           Telephone: (414) 207-3190

                                           */s/ Marcia Hofmann*
                                           MARCIA HOFMANN
                                           Zeitgeist Law PC
                                           25 Taylor Street
                                           San Francisco, CA 94102
                                           Email: marcia@zeitgeist.law
                                           Telephone: (415) 830-6664

                                           *Attorneys for Marcus Hutchins*

# EXHIBIT A

| FD-395 | FEDERAL BUREAU OF INVESTIGATION |
| Revised | **ADVICE OF RIGHTS** |
| 11-05-2002 | |

### LOCATION

Place: McCarran International Airport    Date: 8/2/2017    Time: 11:03am 2:06pm ~1:18p

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: *[signature]*

### WITNESS

Witness: *Jimmie Butcher*

Witness: *[signature]*

Time: 11:08 am - 2:08 pm ~1:18 p.m.