UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

              Plaintiff,

      v.                    Case No.  17-CR-124

MARCUS HUTCHINS,

              Defendant.

_____

## UNITED STATES' RESPONSE TO DEFENDANT'S PREHEARING MEMORANDUM (Doc. #75)

_____

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this memorandum to address various claims and assertions raised in defendant Marcus Hutchins's "Pre-evidentiary Hearing Memorandum." Doc. #75.

## I. Introduction

In February 2018, this Court issued a motion schedule and set an evidentiary hearing, if necessary, for April 19, 2018. Doc. #50. On March 30, 2018, Hutchins filed several motions, including a motion to suppress a post-arrest statement he made to FBI agents on August 2, 2017. Doc. #55. In that motion, Hutchins asserted that he was sleep deprived, intoxicated, and a citizen of another country, and therefore he "did not understand any [*Miranda*] warnings he may have been given or rights being waived." Doc. #55 at 1. Additionally, Hutchins asserted the

Case 2:17-cr-00124-JPS-NJ   Filed 05/15/18   Page 1 of 9   Document 77

statement should be excluded because the interviewing agents coerced him into giving the inculpatory statement. As part of the motion, Hutchins sought an evidentiary hearing to "explore" the circumstances surrounding his interview with the FBI. Doc. #55. The Court granted Hutchins's request for a hearing. Docs. #59, 61.

On April 18, 2018, the government submitted a pre-hearing memorandum setting forth the applicable law and a preview of the evidence it anticipated to present at the hearing. Doc. #63. On that date, the government also met with the FBI agents who interviewed Hutchins after his arrest, and the prosecutors sent a summary of certain information learned at that meeting to defense counsel at defense counsel's request. The government believes that it had no obligation to send this summary to defense counsel; it sent that information to defense counsel as a courtesy and in the hope of streamlining the evidentiary hearing.

At the outset of the hearing on April 19, 2018, Hutchins's attorneys told the government and the Court that Hutchins wanted additional time to prepare for the hearing. In particular, Hutchins' attorneys asserted that they wanted to brief the issue of whether jail calls made by Hutchins shortly after his interview with the FBI were admissible at the hearing, and that they wanted to digest the "new information" the government provided regarding its meeting with the agents. The government responded that while it was ready to proceed with the hearing, it would not object to Hutchins's request for more time. Doc. #68. The Court agreed to reschedule the hearing, and it inquired about whether it should review Hutchins's

recorded post-arrest statement, which the parties agreed was admissible, prior to the rescheduled hearing. Hutchins objected to the Court reviewing the statement in advance of the hearing, and the Court said it would therefore not order the government to provide a copy of the statement to the Court at that time. The Court ordered the defense to file any brief it had relating to the matters raised at the hearing by May 9, 2018.

On May 9, 2018, Hutchins filed a "Pre-evidentiary Hearing Memorandum." Doc. #75. In that memorandum, Hutchins states that the Court should exclude the *Miranda*-waiver form that Hutchins signed at the time he was interviewed by the FBI following his arrest. Hutchins further asserts that the Court should draw an "adverse inference" against the government's position that Hutchins's post-arrest statement was voluntary. Finally, Hutchins asserts that the government should be barred from introducing the jail calls made by Hutchins shortly after his interview with the FBI. Each of these requests are addressed in turn.

## II. Hutchins' assertion that the *Miranda*-waiver form should be excluded is frivolous.

Hutchins contends that the *Miranda*-waiver form that he signed should be excluded as evidence at the evidentiary hearing on whether he voluntarily waived his *Miranda* rights when he signed the form. Doc. #75 at 2. This argument makes no sense. Unsurprisingly, Hutchins fails to cite any authority that supports this argument.

The basis for Hutchins's request is not a claim that Hutchins did not sign the form; rather, it is the prosecutors' note to Hutchins's attorneys stating that one of

Case 2:17-cr-00124-JPS-NJ   Filed 05/15/18   Page 3 of 9   Document 77

the FBI agents who interviewed Hutchins wrote the time on the *Miranda*-waiver form after the interview was concluded. Doc. #75 at 3-4. According to Hutchins, this note was a big deal because Hutchins' attorneys "assumed that one of the agents had added the times contemporaneously with the interrogations." Doc. #75 at 3. But what Hutchins's attorneys may have "assumed" about the form is not a basis to exclude the form from consideration at the evidentiary hearing. Moreover, the agent's recitation of time on the form has nothing do to with whether Hutchins knowingly and voluntarily waived his *Miranda* rights prior to the interview with FBI agents (the waiver being something he could do without even signing a form).

As discussed in the government's pre-hearing memorandum, courts evaluate the totality of the circumstances to determine if the waiver of *Miranda* rights was voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also United States v. Tellefsen*, Case No. 11-CR-43, 2011 WL 4442539, at *11 (E.D. Wis. 2011) (Joseph, M.J.) (finding voluntary waiver of *Miranda* rights). Here, the entire basis of Hutchins's argument that his waiver of rights was not valid is that (1) he may have been too intoxicated or exhausted to understand his rights; and (2) he may not have understood his rights because he is a citizen of the United Kingdom. Doc. #55 at 1. Absent from those allegations is a claim that Hutchins did not sign the *Miranda*-waiver form before the interview, which he has already acknowledged doing in his motion to suppress. Doc. # 55 at 10.[1]

---

[1] In his motion to suppress, Hutchins acknowledges that he signed the form. Doc. #55 at 5-6 ("And there seems to be little doubt that the agents—in some unspecified fashion, at an uncertain time—advised Mr. Hutchins of his rights under *Miranda*, and that he signed a form intended to memorialize his waiver of those rights."). Moreover, Hutchins

At best, Hutchins complaint goes to the weight to be given to the evidence, not the admissibility of that evidence. *See United States v. Prieto*, 549 F.3d 513, 524-26 (7th Cir. 2008); Fed. R. Evid. 401. So, even if the Federal Rules of Evidence applied during the hearing (which they do not, see Fed. R. Evid. 1101(d)(1)), the form would be admissible evidence. Hutchins can certainly question the agent about how she recorded the time on the form, but those types of questions, even at a trial, would never serve as a basis to exclude the *Miranda*-waiver form, which is undisputedly relevant to the inquiry.

Relatedly, Hutchins requests an "adverse inference" be drawn against the government's "position that Mr. Hutchins was warned of and waived his constitutional rights before making a post-arrest statement." Doc. #75 at 6. Hutchins appears to be arguing that because the agents filled in the time on the form after the interview, the *Miranda*-waiver form is "spoiled." This argument, like the previous one, is frivolous. The absurdity of Hutchins's argument is demonstrated by his own assertion that "the form, as it existed whenever Mr. Hutchins' signed it, apparently no longer exists." Doc. #55.

First, despite Hutchins's assertion, there is no "spoiled" evidence. The agent's recitation of hours and minutes in the portion of the form expressly titled "Time:_____" in no way destroyed (i.e. "spoiled") the signed *Miranda* waiver.

---

acknowledges that the waiver of *Miranda* occurred before the interview. Doc. #55 at 10 ("Again, the colloquy involving the advisement and waiver of rights happened before any recording started."). Also, it is also worth noting that the parties have not identified any statements that are *not* recorded that the government will seek to introduce at trial. In other words, the statements Hutchins is seeking to suppress are the audio recorded statements.

Case 2:17-cr-00124-JPS-NJ   Filed 05/15/18   Page 5 of 9   Document 77

Likewise, an attempt to correct the time on the form does not equate to destroying evidence.

Second, "adverse inferences" are primarily for juries. They are not applicable in the context of this criminal evidentiary hearing. Even if they were, in order for the adverse inference rule to apply, there must be a loss or destruction of evidence. *Bracey v. Grondin*, 712 F.3d 1012, 1018-20 (7th Cir. 2013); *Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 217-18 (1st Cir. 1982). Additionally in the Seventh Circuit, there must be a showing that a party intentionally destroyed the evidence in bad faith. *Bracey*, 712 F.3d at 1018-19. In this case, Hutchins cannot show that the form was somehow "destroyed," much less that it was destroyed in bad faith.

III.   **Hutchins's recorded jail calls support a finding that he was not intoxicated or exhausted during the interview with the FBI, that he understood his rights under *Miranda*, and that his statement to the FBI was voluntary.**

As noted in the government's pre-hearing memorandum, shortly after his arrest and interview with the FBI, Hutchins participated in two recorded phone calls that he initiated. Before the start of the phone conversations, the automated phone system advised the parties that the phone call was subject to monitoring and recording. Doc. #63 at 6-7. During one of the phone calls, the individual speaking to Hutchins advised Hutchins multiple times not to say anything over the phone and told Hutchins he would try to find a lawyer for Hutchins. Nonetheless, Hutchins made multiple incriminating statements during that phone call. These statements were all in the context of describing his interview with the FBI. At one point during

the call, Hutchins stated that he told the FBI that he wrote the code for a banking Trojan and that he sent a compiled malware binary to someone.

In his most recent filing, Hutchins now asks the Court not to consider the jail calls. To support this argument, Hutchins asserts that because these calls occurred *after* his interview with FBI, they are irrelevant to the question of whether his *Miranda* waiver was voluntary. Doc. #75 at 12. Hutchins is wrong.

As noted earlier, the Court is to consider the totality of the circumstances in determining whether Hutchins's waiver of his *Miranda* rights was voluntary. Because Hutchins has asserted that he was likely too intoxicated and exhausted at the time of the interview to understand his rights, evidence relating to his alertness at that time is relevant. The jail calls at issue were made within a few hours of Hutchins's arrest and interview. The government's position is that if he was in fact too intoxicated and exhausted to understand his rights at the time of the interview, he would have exhibited those impediments during the phone calls too, but he did not. Additionally, one might expect Hutchins to express his concerns about his mental status, the FBI's alleged coercive conduct, or his confusion regarding his right to remain silent during such a phone call, but he did not.

Under a totality of the circumstances approach regarding admissibility of the post-arrest statement, the jail calls support a finding that Hutchins's waiver of his *Miranda* rights was valid and his statement to the FBI was voluntary. Hutchins's statements during those calls are clear and candid. At no point does Hutchins complain about being intoxicated, being unable to understand the circumstances,

the FBI's conduct, or confusion regarding his legal rights. To the contrary, he discussed his interview with the FBI during the calls, and he recalled numerous facts from memory. All of this is relevant and undermines Hutchins's arguments.[2] At the end of the day, the Court can determine how much weight to give to any particular piece of relevant evidence.

## IV.    Conclusion

For the reasons stated above, Hutchins's assertions are baseless, and the Court should reject Hutchins's requested relief.

As a final note, at the April 19, 2018 hearing, the defense objected to the Court receiving a copy of Hutchins's post-arrest statement, even though both parties believe the statement is relevant and admissible. Hutchins's objection made little sense to the government at the time, and his pre-hearing memorandum does nothing to clarify his position.

At the close of that hearing, the Court said it might ask the parties to present oral argument at the close of the evidentiary hearing in order to expedite the process. With this in mind, the government believes that providing the Court with copies of the audio-recorded, post-arrest statement (Exhibit 1), audio-recorded first

---

[2] Looking at it from another point of view, if the jail calls indicated that Hutchins was not coherent during the call, or acted shocked at being told he did not have to talk to the FBI, or if he complained that he did not understand his rights, the defense would certainly argue that the jail calls are relevant. The fact that the calls support the government's position rather than the defendant's position does not make them any less relevant.

Case 2:17-cr-00124-JPS-NJ   Filed 05/15/18   Page 8 of 9   Document 77

jail call made on August 2, 2018 (Exhibit 2), and transcript of that call (Exhibit 7)[3], prior to the hearing is the most appropriate course of action.[4]

Dated at Milwaukee, Wisconsin, this 18th day of April, 2018.

Respectfully submitted,

MATTHEW D. KRUEGER
United States Attorney

By:    s/ Benjamin W. Proctor
       s/Michael J. Chmelar

BENJAMIN W. PROCTOR
MICHAEL J. CHMELAR
Assistant United States Attorneys
Benjamin Proctor Bar No.: 1051904
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Email: michael.chmelar@usdoj.gov
Email: benjamin.proctor@usdoj.gov

---

[3] In his pre-hearing memorandum, Hutchins asserts that he found "minor discrepancies" between the jail call transcripts prepared by the government and the actual recordings. Doc. #75 at 11 n.3. Hutchins, however, has not yet provided the government with a list of these "minor discrepancies." In any event, if Hutchins believes there are discrepancies, he can advise the government and the Court at any time.

[4] Copies of the audio-recorded post-arrest statement (Exhibit 1), and the first jail call made on August 2, 2018 (Exhibit 2), will be hand-delivered to the Court's chambers today. The transcript of the August 2, 2018 jail call is attached to this brief and marked as Exhibit 7. The exhibit numbers on these items correspond to the exhibit numbers assigned by the government to these items in advance of the evidentiary hearing. The defense has copies of all of these items. *See, e.g.*, Doc. #75 at 11 n.3 (noting that defense has copies of the jail calls and transcripts).

Case 2:17-cr-00124-JPS-NJ   Filed 05/15/18   Page 9 of 9   Document 77

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION



3600 South Lake Drive
St. Francis, Wisconsin 53235-3716

File Number:

Typist Name: Patricia L. Johnson/Jamie Butcher

Name of Document File: MH-40

Name and Office of Reviewer(s):  Jamie Butcher / Milwaukee Field Office
Kelsey Roets / Milwaukee Field Office

Date of Recording: 8/2/2017

Time of Recording: 18:05:27

Participants: Marcus Hutchins

Abbreviations:
 [UI]   Unintelligible
 [PH]   Phonetic
 [SC]   Simultaneous Conversation
 [OV]   Overlapping Voices

EXHIBIT
7

SYSTEM:              Hello, this a collect call from "Marcus", an inmate at Henderson Detention
                     Center. To pay for just this call using your credit or debit card, please
                     press one, to decline this call, press two. If you would like to permanently
                     block this number form making… This call will cost 21 cents plus any
                     applicable federal, state and local taxes, plus a onetime transaction fee of
                     three dollars. You will only be charged the per minute rate for the amount
                     of time you are on the phone. If you do not want to connect this call, but
                     would like to fund an account to pay for future calls, please hang up now
                     and dial 800-844-6591.

                     Your payment has been approved

                     This call is subjecting to recording and monitoring. To continue press 1 to
                     disconnect press 2, you may start the conversation now

�no�no:                Hey Marcus can you hear me?

HUTCHINS:            Hey, um yeah I am in jail.

�no�no:                I was earlier today at the FBI building
                     they gave me a courtesy, to let me know that they
                     detained you.  Any info you can provide on the call they
                     gave you and start with that.

HUTCHINS:            Yeah um UI, I used to write malware, they picked me up on some old shit.

�grey:                Okay, um, so did they have you detained?  Are they going to let
                     you go at all?

HUTCHINS:            Um right now it looks like I am going to have to spend the night in
                     Hudson police station or some shit.

�text:                Okay

HUTCHINS:            So I am in county lock up right now

�text:                Um, first off, it sucks, um, but we are going to try to help you here, um

HUTCHINS:            Sorry about this

2

|  | : | I have talked to Jamie already, and I told him, you know, what's going on. They asked me to secure the kill switch. So I removed just your user from the registrar and from the Cloudflare so I could at least comply, we still hold it. |

HUTCHINS:     Yeah

|  | : | But I did remove it so that they don't, they don't feel like, you know, that anything bad is going happen when they release you. I did that to make sure that they could release you at some point. |

HUTCHINS:     Yeah.

|  | : | I'm told that you are going see, you are going before what is called a Chief Magistrate tomorrow |

HUTCHINS:     Yeah

|  | : | And your current investigation is evidentially sealed, so I wasn't able to get any information about it. I'm told they are going to unseal it tomorrow. |

HUTCHINS:     Yeah

|  | : | Um, so, that is what I know so far. Uh, have you talked to them at all? And have you gotten a lawyer yet? |

HUTCHINS:     No, I don't have a lawyer

|  | : | Okay. And, um, did you talk to them at all about anything? did you tell them stuff? Or what is your situation? |

HUTCHINS:     They questioned me, they have some chat logs of me with some other guy, I don't know how they got them, but, they have some chat logs

|  | : | Okay, so they got chat logs, and, um, it was related, is this related to something Jamie would know about that I could talk to him about separately? |

3

HUTCHINS:          No, he doesn't know

_____ :                    Okay

HUTCHINS:          It was a long time ago

_____ :                    Okay, were you, what, um so they have chat logs from a long time ago, um what I'm going to do is I am going to see if I can get you a lawyer.

HUTCHINS:          Alright, UI

_____ :                    Um and I don't know if you are going stay in Nevada, or if they are going to move you to Washington, I don't think so, um but I think they are going to keep you in Nevada.  Don't say anything over the phone, don't talk about anything, that is not needed, whatever they have, they have, and they are going to investigate that, um you know, I pretty, uh pretty sad to hear that, that they've,  they've taking something like of this matter and, you know, expedited it in this way, so

HUTCHINS:          I'm wondering UI, because like I've been in the US multiple times since then, but this time they picked me up

_____ :                    Yeah, I don't know, um I mean the timing is unusual, that's all I could say but I'm going to see if I can get you a lawyer, and did they give you way that we can can try to contact you back or um

HUTCHINS:          No

_____ :                    okay, but you are being held right now at, or you're going to be tonight now at, what is it called

HUTCHINS:          Hudson something, Hudson County something, it's like the county lock up thing

_____ :                    Okay, Okay, um what I'd like you to do is just, you know, I don't think you're compelled to answer anything, uh, you have a right to an attorney and

4

HUTCHINS:     Yeah, UI they kind of just dumped me here for the night

⬛:     Yeah, yeah, and anything, obviously anything you say on this call is
recorded, um so you know it is a stupid situation that, that is unfortunate
so I'll, I, I'll see if I can get a lawyer, the other thing I want to
know, and or at least give you a recommendation for a lawyer.
The other thing I want to know is, um, did they did they offer you
any kind of information on what is going to happen tomorrow

HUTCHINS:     Um I think they are going to put me in before a judge and that'll decide
what happens next or something along those lines, I don't really know
how it works

⬛:     Okay, did you call anybody else, does anybody else know what
is happening?

HUTCHINS:     No, just you.

⬛:     Okay good, um I'm going to work as hard as I can and keep this under
the radar, I don't think it is going to stay under the radar, I'm told it
is sealed for now no one knows about it

HUTCHINS:     Yeah don't worry about that it's going to get out anyway.

⬛:     Yeah, I, I, from what I am told whatever it is, has already been known
about for a long time so I don't know what

HUTCHINS:     I think something triggered it, like they must have known for a long time
and I think they just brought it up now.

⬛:     Yeah, and that speaks volumes by the way, so okay so I what I am going
to is try to find a way to try to get back in contact with you, but you said
Hudson

HUTCHINS:     UI Hudson Correctional Facility, I don't know it's like a county lock up
sort of thing

⬛:     Okay and you are still in Nevada

HUTCHINS:          Yeah UI

[REDACTED]:          Okay, hold on one sec I, I lost a little bit of reception, can you still hear me?

HUTCHINS:          Yeah

[REDACTED]:          Okay, um let me go back where it is quieter, um so Hudson Facility, correctional facility, you are still in Nevada, uh they, did they take you from the airport?  Is that where they took you?

HUTCHINS:          Yeah

[REDACTED]:          Okay and then were you in the airplane yet or not in the airplane?

HUTCHINS:          No, they picked me up in the first class lounge

[REDACTED]:          Okay so they pick you up first class lounge, um, they took you in, they showed you some chat logs, and did you speak about anything at all, did you confirm anything, um, or did you talk for a while, or you just say you had nothing to offer.

HUTCHINS:          Um we talked for a while like, the chat logs are completely undeniable

[REDACTED]:          Okay

HUTCHINS:          But they were, they wanted me to basically give them information on people I was in contact with, but I don't actually even have any information

[REDACTED]:          Just, I, I mean I figured if they do anything that is what they are going to do, to kinda find out where it went, that's what they are after, you know what I mean

HUTCHINS:          Yeah

[REDACTED]:          That is what they are after, and, you know, that is usually what these investigations, they want to obviously get somebody, you

know, who is responsible for doing bad things.

HUTCHINS:          Yeah the problem is I don't have anything to give them.

████████ :          Yeah, okay, um, the nature of it, did they disclose the nature of it in the chat logs?

HUTCHINS:          Ah, yeah, to an extent

████████ :          To an extent?

HUTCHINS:          Yeah

████████ :          Okay, can you tell me what you told them, um, in general, like a high level?

HUTCHINS:          So I wrote code for a guy a while back who then incorporated it into a banking malware, so they have logs of that, and essentially they want to know my part of the banking operation or if I just sold the code onto some guy then they wanted me to, once they found I sold the code to someone, they wanted me to give them his name, and I don't actually know anything about him

████████ :          Right. So um so basically the nature of the conversation was you wrote code and that code was sold to somebody

HUTCHINS:          Yeah

████████ :          and then that person went in turned and took that code and used it to do banking malware

HUTCHINS:          Yeah

████████ :          Okay

HUTCHINS:          Yeah, and there were also some logs that I gave the compiled binary to someone to repay a debt

████████ :          You gave a compiled binary to somebody on the chat log?

7

HUTCHINS:          To repay a debt yeah

[redacted]:          Okay, um what was the nature of the debt, I mean did you tell them the nature of the debt?

HUTCHINS:          Yeah

[redacted]:          Okay, um was the nature of the debt anything significant?

HUTCHINS:          It was about five grand

[redacted]:          Oh not the amount, but was the nature of the debt significant, like was it related to something else, or just your personal debt?

HUTCHINS:          Um he, no he asked me to hold some Bitcoins for him, and my software fucked up, and I lost some of the money

[redacted]:          Oh so you had to pay him back?

HUTCHINS:          Yeah

[redacted]:          Okay, how old were you when that happened?

HUTCHINS:          Um I think the coding part I was less than 18, but I think giving him the binary I might have been older than 18

[redacted]:          Okay, so the coding was 18, and then the binary was later on.

HUTCHINS:          Yeah

[redacted]:          Uh around eighteen?

HUTCHINS:          Yeah around eighteen, nineteen I think

[redacted]:          So this all happened like within like the same twelve months really when you were eighteen, or before eighteen?

HUTCHINS:          Yeah I think so

8

⬛:                 Okay

HUTCHINS:         UI I don't know exactly but I could find them out

⬛:                 Did GCHQ know about this, is had you told them about this stuff?

HUTCHINS:         Yeah

⬛:                 Ok, and the NCSC as well?

HUTCHINS:         No

⬛:                 Okay, um

HUTCHINS:         Because it came up in my vetting

⬛:                 Okay, so you disclosed that for them and they were like no, okay.
                  um, okay but they do know about it, alright, um so

HUTCHINS:         Yeah, I feel like maybe they've been sitting on this for a while

⬛:                 Yeah basically they, they, they that's where that information came
                  from almost certainly.

HUTCHINS:         No, it didn't come from GCHQ, I think because they had chat logs so
                  they've got it from a different source, whereas GCHQ only had my UI

⬛:                 Hum okay

HTUCHINS:         Like what they have is a lot more than what I gave GCHQ

⬛:                 Yeah, what was the chat over what, like what, medium?

HUTCHINS:         Over OTR with Jabber, so I don't actually know how they were
                  intercepted

⬛:                 Hum interesting okay um well, it is unfortunate, um, but tomorrow
                  They're are going to basically give you a hearing where they are

9

going to read the charges UI is what I assume, uh the chat log

HUTCHINS:          Yeah

████:          And they probably going to want to get some help to figure out who this guy is and where it went and what that guy has been doing with that code ever since if he is still even using it, God knows I don't know.

HUTCHINS:          Yeah

████:          Um so, okay, um anyway, I'm going to do my best, I have already talked to lawyers all day, I talked to the FBI as well, they gave us a courtesy call. So, they, they just give us the courtesy to tell us this was happening, I think is an issue for a number of reasons, um because if it does come out, or when it comes out, um I don't know if people are going to hit the kill switch, you know {laugh} or you know if, if I can't even predict what could happen so

HUTCHINS:          Yeah I don't think anyone, any criminals are going to do shit, but I think it is going to look bad.

████:          Yeah, yeah, well obviously its, um, I'm going to work on that as well and see what we could do. I don't know the nature of all of this all new to me so I have to talk to, you know, the legal counsel and see what they think, and we're going to see if can find a very good lawyer for you,  you know to at least make sure that this is not criminal, you know, for what happened, especially you were seventeen doing some of this, um, and you have been doing a lot of good work, and you, Jamie told me even up until this morning, uh that you guys were working on a criminal investigation with the NCSC on botnets so you know, you know it's unusual.  But anyways I, got this UI Hudson, I will see if I can get somebody for you, and um now I know what you told them and I'll, I'll relay that to them and as well.  And uh try to take it easy, it is not the end of the world, um it just sucks,

HUTCHINS:          UI

[REDACTED]:     but yeah it just sucks.  But we will work on it, it is all we
can do right now, so we will find out tomorrow what they
charge you with, whatever it is that or try to charge you with

HUTCHINS:     Sorry I brought all this on you

[REDACTED]:     Oh man, you know Marcus, you did a lot of good things, I think
you have done so many good things, that this something you did
when you were very young, and you didn't know any better
and you had no money

HUTCHINS:     Yeah I knew it was always going to come back, I just did think it would be
so soon

[REDACTED]:     Yeah, well look I'm going to work on it and just take it easy okay
um and I've already talked to Jamie and I told them to keep it low key
for now until we figure out something so let's get you a lawyer,
um hopefully, you know, they will be reasonable, and um that's all we can
ask for and just move forward and try to you know expedite and help with
the investigation and  hopefully, you know this can get resolved soon.

HUTCHINS:     Alright

[REDACTED]:     Okay I will talk to you soon, I'll try, if you need to call me again,
just call me anytime, um just say look at this point you told all I can
tell you and you will have a lawyer tomorrow and you will speak with the
lawyer.

HUTCHINS:     They're not coming back, they just left me here overnight

[REDACTED]:     Okay, ah yeah they are going to pick you up tomorrow for the charges
that's what they are going to do

HUCTHINS:     Okay

[REDACTED]:     okay well take it easy for now, stay calm, I know you are
cool headed I know you thought about this before, so
lets just take it easy, and you know stay tough and strong,
and you are going to be alright okay.

11

HUTCHINS:          Alright

SYSTEM:            You have one minute left

███████:          Okay we have one minute left apparently, but look let's leave that minute for you to, uh stay out, so I haven't told anybody, again I am going to try and keep it low key and Jamie has got this under control too

HUTCHINS:          Okay, yah he'll have to take over my job for a while I guess

███████:          Well, I think, I think you'll be okay just right now all that matters is the kill switch doesn't go down, and that has been taken care of, everything else it doesn't matter it is not a big deal, we can live without it okay so don't be thinking about that stuff okay

HUTCHINS:          Okay

███████:          I will talk to you soon, I think.

HUTCHINS:          Alright see ya man

███████:          Bye
HUTCHINS:          Bye

END