UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                          Case No. 17-CR-124

MARCUS HUTCHINS,

        Defendant.

---

**POST-HEARING MEMORANDUM BY THE UNITED STATES**

---

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this post-hearing memorandum in response to defendant Marcus Hutchins's motion to suppress. For the reasons stated below, and in light of the evidence and arguments presented at the evidentiary hearing, Hutchins's motion to suppress should be denied.

**I.    Introduction**

Hutchins was arrested on August 2, 2017, as he waited to board a flight to the United Kingdom. Doc. #82 at 16-17. At the time of his arrest, Hutchins was handcuffed with his hands placed behind his back. *Id*. at 20. Hutchins was told that he was being arrested based on a federal arrest warrant issued from the Eastern District of Wisconsin. *Id*. at 19.

Following his arrest, Hutchins was interviewed by two FBI agents. *Id.* at 28. Before the interview started, Hutchins's handcuffs were removed, and the agents identified themselves and the nature of their investigation. *Id.* at 21, 23. Hutchins was also advised of his rights under *Miranda*, both orally and in writing using an Advice of Rights form. *Id.* at 23-25. An agent handed the Advice of Rights form to Hutchins, who read the Advice of Rights form. *Id.* After Hutchins read the Advice of Rights form, Hutchins stated that he understood his rights, and he waived his rights by signing the Advice of Rights form below the statement, "I have read this statement of my rights and understand what my rights are. At this time, I am willing to answer questions without a lawyer present." *Id.*; Evidentiary Hearing Exhibit ("Ex.") 9. Both FBI agents observed Hutchins sign the form, and they then signed the form as witnesses. *Id.*

Additionally, before the interview started, Hutchins read and signed a form titled "Acknowledgement of Penalties for False Statements to the FBI." *Id.* at 27; Ex. 8. Hutchins signed the form below that statement, "I have read and understand the provision set forth above [18 U.S.C. § 1001] and agree that I am making an oral or written statement subject to those provision and attended parties." Ex. 8. Like the Advice of Rights form, both FBI agents signed that form as witnesses. *Id.* at 27-28.

Hutchins then gave a recorded (audio) statement to the FBI that lasted approximately 1:41:50. Ex. 1. During the interview, Hutchins signed a consent form allowing his backpack, phones, and laptops to be searched. Doc. #82 at 29; Ex.

Page **2** of **17**

Case 2:17-cr-00124-JPS-NJ    Filed 05/30/18    Page 2 of 17    Document 84

4. After the interview was over, Hutchins was detained at a local jail to await his initial appearance before a U.S. Magistrate Judge under Rule 5 of the Federal Rules of Criminal Procedure. Doc. #82 at 101. During his detention at the jail, Hutchins initiated two phone calls, which were recorded by the jail. *Id.* at 101-02; Exs. 2-3, 7 and 10. Before the start of each phone conversation, the automated phone system advised the parties that the phone call was subject to monitoring and recording. Exs. 2-3. During one of the phone calls, the individual speaking to Hutchins advised Hutchins multiple times not to say anything over the phone and told Hutchins he would try to find a lawyer for Hutchins. Exs. 2- 3. Nonetheless, Hutchins made multiple incriminating statements during that phone call. *Id.* These statements were all in the context of describing his interview with the FBI. Exs. 2-3; Doc. #82 at 107. At one point during the call, Hutchins stated that he told the FBI that he wrote the code for a banking Trojan and that he sent a compiled malware binary to someone. Ex. 2.

On March 30, 2018, Hutchins filed several motions, including a motion to suppress the post-arrest statement he made to FBI agents on August 2, 2017.[1] Doc.

---

[1] As the government argued at the evidentiary hearing and in its response to Hutchins's pre-evidentiary hearing memorandum, Doc. #78, the government has not identified, nor has Hutchins asserted or identified, any agent-induced statements by Hutchins that were not recorded by the agents. *See* Ex. 1. The question before the Court, as articulated by Hutchins, is whether he knowingly and voluntarily waived his rights under *Miranda* before making the incriminating statements. Doc. #55 and 61. It is not, as the Court queried Hutchins's attorneys during the hearing, the "timing" of advising Hutchins of those rights or whether or not they were given at all. Doc. #82 at 212-14. At no time has Hutchins alleged he was not advised of his rights before he confessed. Doc. #55. Instead, Hutchins has argued that he received his rights, but may not have understood them because he is a U.K. citizen, and he was exhausted and possibly intoxicated after being in Las Vegas for the prior week. *See* Doc #55, at 10 (Hutchins stating "the colloquy involving the advisement and waiver of rights happened before any recording started.") Based on the Court's order

Page **3** of **17**

Case 2:17-cr-00124-JPS-NJ    Filed 05/30/18    Page 3 of 17    Document 84

#55. In his motion to suppress, Hutchins asserted that the agents "coerced . . . him to talk" because Hutchins was sleep deprived, intoxicated, and a citizen of another country, and therefore "did not understand any [*Miranda*] warnings he may have been given or rights being waived." Doc. #55 at 1.

As part of the motion to suppress, Hutchins sought an evidentiary hearing to "explore" the circumstances surrounding his interview with the FBI. Doc. #55. After receiving briefing from the parties, the Court granted Hutchins's request for an evidentiary hearing. Doc. #61. In granting the request, the Court noted that Hutchins "sufficiently alleges that at the time of his questioning 'he was exhausted from partying all week and staying up the night [before] until the wee hours.'" Doc. #61 (quoting Doc. #55 at 4). The Court stated that "Hutchins [also] allege[d] that the agents exploited the fact that he was a citizen of the United Kingdom because the U.K. version of the *Miranda* warnings is different than that of the U.S." *Id.* The Court concluded that "these facts, if true, would be material to the voluntariness inquiry, [and therefore] an evidentiary hearing is warranted." *Id.* at 2.

On May 9, 2018, Hutchins filed a pre-evidentiary hearing memorandum. Doc. #75. In his pre-evidentiary memorandum, Hutchins, for the first time,

---

granting Hutchins' request for an evidentiary hearing, it appears that this was also the Court's understanding. Doc. #61 ("[Hutchins] further alleges that because he is a citizen of the United Kingdom, where a defendant's post-arrest rights are very different than in the United States, he did not sufficiently understand any warnings he may have been given or rights being waived."]. Finally, while Hutchins spent a great deal of time at the hearing challenging Special Agent Butcher about the time markings on the Advice of Rights form, there is no dispute that Hutchins reviewed and signed the form before substantive questioning and before the audio recorder was activated. *See* Doc. #82 at 23, 27-28, 80, 100.

proffered a new theory to suppress his post-arrest statement – that the FBI deceived him into waiving his rights. Doc. #75 at 6-11. Hutchins alleged that he did not "understand the nature and the posture of the investigation" and that the "agents hid the ball" from him when he "sought clarification." Hutchins had not asserted this theory in his motion to suppress and request for an evidentiary hearing. *See* Doc. #61.

The evidentiary hearing was held May 16, 2018. At the hearing, the government presented testimony from the two FBI agents who interviewed Hutchins. The government introduced several documents and recordings into evidence: (1) an audio recording of the post-arrest interview (Ex. 1); (2) two recordings of phone calls Hutchins made from jail and transcripts of those calls (Exs. 2-3, 7, 10); (3) an advice of rights (*Miranda* waiver) form signed by Hutchins (Ex. 9); (4) an acknowledgment of penalties for making false statements signed by Hutchins (Ex. 8); (5) a consent to search form signed by Hutchins (Ex. 4); (5) and a chat from February 2015 between Hutchins (irp@jabber.se) and a confidential source of information working for the FBI (Ex. 11). Doc. #80. Hutchins called no witnesses. Doc. #82 at 175-76.[2] And, after being advised by the Court of his right to testify, Hutchins declined to testify. *Id.*

---

[2] Hutchins tried to call the prosecuting attorneys as witnesses. Doc. #82 at 155. The Court rightly rejected this absurd request. Doc. #82 at 165-66.

Page **5** of **17**

## II. Hutchins knowingly and voluntarily waived his rights under *Miranda.*

It is well established that in the absence of a showing by the defendant that he could not understand and comprehend English, courts have found that "reading the [Advice of Rights] form to a defendant and giving him a chance to read it himself, followed by his statement that he understands his rights and his signature on the form, is sufficient to satisfy the *Miranda* test." *United States v. Springer*, 460 F.2d 1344, 1348-49 (7th Cir. 1972); *see also Collins v. Gaetz*, 612 F.3d 574, 587-88 (7th Cir. 2010). Here, the evidence establishes that before Hutchins spoke to agents, an agent read Hutchins his *Miranda* rights from the Advice of Rights form. Doc. #82 at 23-25; Ex. 9. Hutchins then read the form to himself and a portion of the form aloud. *Id.* Hutchins then signed the form indicating that he understood his rights and waived those rights. *Id.* The Advice of Rights form used by the agents identifies each right individually rather than in a paragraph form. Ex. 9. It is uncontroverted that Hutchins speaks, writes, reads, and understands the English language; and that Hutchins was advised of his rights in English. Ex. 1. Under current Seventh Circuit case law, those facts support a finding that Hutchins knowingly and voluntarily waived his rights under *Miranda*.

As noted above, Hutchins has proffered three reasons why the Court should find his waiver of rights under *Miranda* was not voluntary or knowing: (1) he was a citizen of the United Kingdom and the agents "knew . . . that the provision of *Miranda* warnings to a citizen of the United Kingdom requires special care" because "post-arrest rights are very different" in the United Kingdom, Docs. #55, 75; (2)

Hutchins was "exhausted from partying all week and staying up the night before until the wee hours . . . [and] [h]e also used drugs," Doc. #55 at 4; and (3) "Hutchins did not understand the nature and posture of the investigation" when he waived his rights due to deceit by the investigating agents. Doc. #75 at 10. These arguments are addressed in turn.

### A. Hutchins's claims that agents exploited his citizenship and that he was confused about his rights under *Miranda* are baseless.

In his pre-hearing filings, Docs. #55, 75, Hutchins continually alleged that he did not knowingly and voluntarily waive his rights because he was a U.K. citizen and the U.K. version of *Miranda* rights are different from the U.S. version. Doc. #55 at 8. Moreover, Hutchins secured an evidentiary hearing by alleging that the interviewing agents "preyed upon" the fact that Hutchins was a citizen of the U.K. and the U.K. version of *Miranda* is different than the U.S. version. Doc. #55 at 8-9; *see also* Doc. #61. At the evidentiary hearing, Hutchins failed to offer any evidence to substantiate those claims.

During the evidentiary hearing, Hutchins successfully established only one thing with respect to his citizenship—that the agents knew that Hutchins was citizen of the U.K. Doc. #82 at 113-14. This, of course, was not a disputed fact. But Hutchins never presented evidence that the interviewing agents were aware of a U.K. version of *Miranda*, let alone that the agents "preyed upon" the difference between the U.K. and U.S. versions of *Miranda*. *See* Doc. #55, at 9. Indeed, Hutchins did not even present evidence establishing that there is a U.K. version of *Miranda* or, assuming there is, what the rights are under the U.K. version of

Page **7** of **17**

Case 2:17-cr-00124-JPS-NJ    Filed 05/30/18    Page 7 of 17    Document 84

*Miranda.* More importantly, Hutchins failed to present any evidence that he *himself* was aware of a U.K. version of *Miranda* or that he somehow confused the U.K. version of *Miranda* and the U.S. version of *Miranda.* In short, Hutchins obtained an evidentiary hearing by alleging there was a disputed fact related to his and the agents' understanding of U.K. and U.S. post-arrest rights, and then declined to present any evidence to support such a claim. Doc. #82 at 175-76.[3] Because the facts establish that Hutchins's citizenship played no role in his decision to voluntarily waive his rights and agree to speak to the agents after his arrest, Hutchins's argument on this point must be rejected.

**B. Hutchins failed to present any evidence that he was intoxicated or impaired at the time of the interview.**

Hutchins also argued in his motion to suppress evidence that his waiver of rights was not voluntary and knowing because he was "exhausted from partying all week and staying up late the night before until the wee hours." Doc. #55 at 4. Further, Hutchins claimed that "he had also used drugs," though he never identified the "drug" he supposedly used, or when, where, and how much of the "drug" he supposedly used. *Id.*

---

[3] In his closing argument, Hutchins at one point alleged that he was unfamiliar with the American legal system. Doc. #82 at 207. This conclusory statement has no relevance to whether he voluntarily waived his *Miranda* rights, and it provides no grounds for suppressing evidence. *See Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010) (stating a person can sufficiently understand and waive their rights even if he is unfamiliar with the U.S. legal system, lacks a fluent understanding of English, or has a mental disability.) (collecting cases); *United States v. Frank*, 956 F.2d 872, 876-78 (9th Cir. 1991) (rejecting a defendant's claim that he, a Navajo Indian, lacked an understanding of the U.S. legal system and therefore did not understand *Miranda* rights).

The Court relied on Hutchins's claim of intoxication when it granted Hutchins an evidentiary hearing. Doc. #61 at 1-2 (noting that Hutchins' claim that he was exhausted and had used drugs, if true, would be relevant to the voluntariness inquiry and therefore an evidentiary hearing is appropriate). But, like his claim regarding his citizenship, he failed to put forward any evidence or argument that he was intoxicated, let alone impaired, when he waived his rights or confessed to the FBI.

Moreover, even if Hutchins had presented some evidence that he was intoxicated (which he did not), it is clear he was not impaired when he waived his rights and gave a statement to the FBI. *See United States v. Tellefsen*, Case No. 11-CR-43, 2011 U.S. Dist. LEXIS 108495, *31-36 (E.D. Wis. 2011 (Joseph, M.J.) (noting the difference between intoxication and impairment, and that intoxication itself is not sufficient to find involuntary waiver of rights). In fact, Hutchins has *never* claimed, in any filing, that he was impaired at any time during his interaction with law enforcement.[4] Here, the agents testified that Hutchins was lucid and mentally aware of what was happening during the interview with the agents. Doc. #82 at 35, 94. Hutchins asked clarifying questions. Doc. #82 at 33, 35. Hutchins asked follow-up questions. Doc. #82 at 94. Hutchins was evasive at times. Doc. #82 at 33. All of this is verified on the audio recording of the interview. Ex. 1. Further,

---

[4] Now that the government has identified the difference between impairment and intoxication under the law, no doubt Hutchins will once again change his theory on why his waiver of rights and post-arrest statement should be suppressed and argue that he was "impaired." If he does, the Court should reject defendant's ever-shifting attack on the admissibility of his post-arrest statement because, as discussed in this filing, the evidence does not support such a finding.

Hutchins was not sweating, complaining of nausea, or vomiting during the interview. Doc. #82 at 34. Hutchins's appearance and demeanor during the interview was no different than his appearance and demeanor on any of the other occasions in which the agents interacted with or observed him after the interview, including at the evidentiary hearing. Doc. #82 at 151-52.

Additionally, Hutchins completed a number of tasks during the interview that showed he was not intoxicated, much less impaired. For example, Hutchins unlocked both of his cell phones for the agents. Doc. #82 at 31-32. One of the cell phones had a long, complex password that Hutchins stated was difficult for him to unlock when was drunk, but Hutchins successfully unlocked that phone during the interview with agents. Ex. 1 and Doc. #82 at 31-32. Hutchins was also able to decipher a chat from February 2015 between himself (irp@jabber.se) and a confidential source of information working for the FBI. Exs. 1,11; Doc. #82 at 39-41.

Finally, the recorded jail calls also evidence Hutchins's mental awareness at the time he waived his rights and implicated himself in the charged conspiracy. In those jail calls, Hutchins recounted the details of his interview with the FBI during the recorded jail calls. *See* Exs. 2,7. His memory of the interview was sharp. As he recounted the interview, Hutchins did not complain about being intoxicated or impaired during the interview. *Id.* Hutchins did not complain about how he was treated by the agents. *Id.* Hutchins did not complain about being confused about the nature of the interview. *Id.* In fact, during one of the jail calls, (as he did during the interview), Hutchins said he had always expected to be questioned by

law enforcement about creating Kronos: "Yeah, I knew it [developing Kronos] was always going to come back, I just [didn't] think it would be so soon." *Id.*

In his closing argument at the hearing, Hutchins made the conclusory remark that "he could have been on drugs." Doc. # 82 at 211. This, of course, is not evidence. While Hutchins said in his post-arrest comment to agents that he went to parties instead of attending the DEF CON conference, he did not claim to be using drugs. Doc. #82 at 71. Hutchins also said during the interview that he did not sleep much, but again, he never said he was unable to comprehend what was going on. *Id.* at 72. Indeed, all of the evidence presented at the hearing shows that Hutchins fully understood what was going on at all times surrounding his interview with the agents.[5]

### C. Hutchins knew the interview with the FBI was criminal in nature and the agents did not use trickery or deceit to obtain Hutchins's confession.

In his memorandum filed shortly before the evidentiary hearing, Doc. #75, and during arguments following the hearing, Hutchins appeared to abandon the allegations that secured him an evidentiary hearing and instead focus on a new theory to suppress his post-arrest statement—that agents deceived him. Doc. #75, at 6-11. Specifically, Hutchins argued that he waived his rights under *Miranda* and confessed only because the interviewing agents refused to tell him that their investigation related to Kronos malware. Doc. #92 at 206. So the argument goes,

---

[5] Hutchins's attorney's comments and questions, i.e. regarding the Las Vegas "pool party scene," Doc. #82 at 71, or the fact that Hutchins was not asked specifically about "synthetic marijuana . . . club drugs, like Molly, ecstasy . . . and Adderall," Doc. #92 at 69, are not evidence that Hutchins was in fact intoxicated or impaired at any time.

Hutchins was unaware of what he agreed to talk about when he waived his rights. In support of his position, Hutchins relies on *United States v Serlin*, 707 F.2d 953, 956 (7th Cir. 1983) and *United States v. Giddins*, 858 F.3d 870, 855 (4th Cir. 2017). Doc. #75 at 8-9. As explained below, neither of the decisions supports Hutchins's argument. Consistent with other defense filings, Hutchins misstates (or misunderstands) the law on the issue of deceit and trickery. Because the FBI never misled Hutchins about the *nature* of its inquiry (i.e. Hutchins knew it was a *criminal*, not civil, inquiry) this Court should reject Hutchins's deceit-based attack on the admissibility of his post-arrest statement.

To suppress a statement based on a theory of deceit or trickery, a defendant must produce clear and convincing evidence that the agents affirmatively misled him as to the true *nature* of their investigation. *Serlin*, 707 F.2d at 957 (citing *United States v. Nuth*, 605 F.2d 229, 234 (6th Cir. 1979); *United States v. Lehman*, 468 F.2d 93 (7th Cir. 1972), *Cohen v. United States*, 405 F.2d 34 (8th Cir. 1968)). A defendant must also prove that the misinformation was material in his decision to speak with the agents. *Serlin*, 707 F.2d at 957 (citing *United States v. Tonahill*, 430 F.2d 1042 (5th Cir. 1970)). Simple failure to inform a defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead. *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977); *Lehman,* 468 F.2d 93; *United States v. Prudden*, 424 F.2d 1021 (5th Cir. 1970).

Before addressing the substance of this new claim, it is important to note that as with his other blanket assertions, Hutchins did not present *any* evidence to establish deceit or trickery by the agents, much less establish it by clear and convincing evidence. *Serlin*, 707 F.2d at 957. Moreover, Hutchins failed to even allege "that the [supposed] misinformation was material in his decision to speak with the agents." *Id.* As a result, Hutchins has failed to meet his burden on this issue and his baseless claim of deceit and trickery should be rejected.

As the government stated during its post-hearing argument, suppression based on a theory of deceit is predominately seen in the area of tax investigations. *Serlin*, 707 F.2d at 957 (stating that "[t]he typical deceit case involves a taxpayer who claims that his volubility was induced by assurances that the investigation was 'routine' and only civil rather than criminal.") Indeed, the *Serlin* case relied on by Hutchins originated from a taxpayer investigation. *Id.* Unsurprisingly, the *Serlin* decision does not support Hutchins's argument. *Id.*

In *Serlin*, IRS agents told the defendant that they wanted to ask him questions related to a criminal investigation. *Id.* at 955. Initially, an IRS agent told the defendant that he was not the subject of the investigation, "but after several minutes of conversation warned [the] defendant of his rights not to incriminate himself." *Id.* The defendant acknowledged his rights and continued talking to the IRS agents. *Id.* The defendant and agents met several more times, during which the defendant made inculpatory statements to the IRS agents. *Id.* at 955-56. After being indicted for tax fraud, Serlin asked the district court to

suppress the admissibility of statements he made to the IRS, arguing that they were "the product of government deceit," among other reasons. *Id.* at 956. The district court denied his motion to suppress, and Serlin appealed. *Id.*

On appeal, the Seventh Circuit rejected the Serlin's deceit claim for several reasons. *Id.* at 957. First, the court found that unlike the typical deceit case, Serlin "was aware of the criminal nature of the investigation." *Id.* at 957. Second, the agent's repeated questions concerning Serlin's failure to file taxes "would have alerted even the most unsuspecting taxpayer that he was the . . . focus of the [criminal inquiry]." *Id.* Finally, the court held that the agents accurately described the nature of their inquiry and that "true statements cannot be equated to affirmative deceit." *Id.*

Like the defendant in *Serlin*, Hutchins was aware of the nature of the FBI inquiry. Hutchins knew that the FBI's interview on August 2, 2017, related to a *criminal* inquiry because Hutchins was handcuffed with his hands placed behind his back and told that he was under arrest based on federal arrest warrant. Doc. #82 at 20. And as if that was not enough, the questions posed to Hutchins, like the questions in *Serlin*, "would have alerted even the most unsuspecting [individual] that he was the . . . focus of the [criminal inquiry]." *Id.*; *see* Ex. 1.

In response to the government informing the Court that most deceit-theory cases are taxpayer cases, Hutchins implored the Court to read *Giddins*. Doc. #82 at 206, 211. But the *Giddins* decision is of no help to Hutchins either. The facts of

*Giddins* like the facts of *Serlin* do not support Hutchins's most recently generated reason to suppress his post-arrest statement.

In *Giddins*, the police obtained a warrant to arrest Giddins for his role in a series of bank robberies. 858 F.3d at 870-76. The day after securing a warrant, officers invited Giddins to the police station under a ruse that he could come to the police station to retrieve his car, which had been used in a robbery and seized by police. *Id.* Before he was advised of his rights under *Miranda*, Giddins was taken to an interview room and questioned by police. *Id.* at 876. An officer began questioning Giddins about why Giddins lent his car to another defendant already under arrest for his role in the robberies. *Id.* Giddins then asked the officer, "Am I in trouble?" to which the detective responded, "No, you're just getting your car right?" *Id.* The questioning proceeded from there, with the interviewing officers never telling Giddins about the active arrest warrant and concealing the true nature of the interview. *Id.* at 875-78. On appeal, the court found the interviewing officers "affirmatively misled" Giddens as to the true nature of the investigation. *Id.* 884-85. The court found that form of deceit constituted coercion. *Id.*

Unlike the defendant in *Giddins*, Hutchins was never misled about the criminal *nature* of the FBI investigation. There is no dispute that Hutchins was placed in handcuffs and told he was under arrest based on an arrest warrant issued from the Eastern District of Wisconsin, and that before any questioning, Hutchin was advised of his rights and waived those rights. Doc. #82 at 19-20, 49-50, 53, 55, 62, 63, 78.

At the evidentiary hearing, Hutchins implied that the fact he was not shown a copy of the indictment was somehow important. But seeing a copy of the indictment was not required for Hutchins to know that the *nature* of the investigation was criminal. *See Colorado v. Spring*, 479 U.S. 564, 577 (1987) (holding the failure of law enforcement officials to inform [a defendant] of the subject matter of the interrogation could only affect the "wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature"); s*ee also United States v. Braxton*, 112 F.3d 777, 784 (4th Cir. 1997) (stating that officers have no duty to advise a defendant of the specific identity of the offense under investigation). The criminal nature of the investigation was obvious to Hutchins because he was placed in handcuffs and told he was under arrest. Doc. #82 at 20. It was also clear that the questioning related to Kronos because the agents questioned him about Kronos. Likewise, even if Hutchins had been shown a copy of the indictment and saw that it related to his development of Kronos, he cannot (and did not) establish that the absence of that information was "material to his decision to speak with agents." 707 F.2d at 957.

Because Hutchins failed produce clear and convincing evidence that the agents affirmatively mislead him as to the true *nature* of their investigation his deceit-based attack on the admissibility of his post-arrest statement should be rejected by this Court.

## III. Conclusion

The government's burden is to prove by a preponderance of the evidence that Hutchins knowingly and voluntarily waived his rights under *Miranda*. The government has met this burden. The undisputed evidence shows the *Miranda* test was satisfied because an agent read the Advice of Rights form to Hutchins, Hutchins read the Advice of Rights form, and Hutchins waived his rights by signing the form. *United States v. Springer*, 460 F.2d 1344, 1348-49 (7th Cir. 1972); *see also Collins*, 613 F.3d at 587-88. The undisputed evidence shows that Hutchins understood English, understood the circumstances, understood his rights, was not coerced or pressured, and agreed to make a statement to the agents. Therefore, Hutchins's motion to suppress his post-arrest statement motion must be denied.

Respectfully submitted,

MATTHEW D. KRUEGER
United States Attorney

By: s/Michael J. Chmelar
MICHAEL J. CHMELAR (IL 6277248)
BENJAMIN W. PROCTOR
Assistant United States Attorneys
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Email: michael.chmelar@usdoj.gov
Email: benjamin.proctor@usdoj.gov