UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Case No. 17-CR-124

     v.

MARCUS HUTCHINS,

                Defendant.

_____

**DEFENDANT'S MOTION TO DISMISS
THE FIRST SUPERSEDING INDICTMENT
(IMPROPER EXTRATERRITORIAL APPLICATION OF LAW)
[REPLACING DKT. NO. 57]**

_____

Defendant Marcus Hutchins seeks dismissal of the first superseding indictment due to the improper extraterritorial application of United States law to him. This Court should dismiss the charges with prejudice for three reasons.

First, Congress has not clearly indicated that the Wiretap Act is intended to have extraterritorial reach, and certain Wiretap Act counts—specifically, Counts Two and Three—are not a domestic application of that law as they are charged.

Second, the prosecution violates Mr. Hutchins' due process rights as to Counts One through Eight and Ten because he had no substantial nexus with the United States during the relevant time period covered by the indictment.

Third, if the Court grants this motion and dismisses Counts One through Eight and Ten, it should also dismiss Count Nine. That count charges a violation of 18 U.S.C. § 1001(a), which is violated only when a false statement is made about a "matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." This motion asserts a lack of domestic jurisdiction over the alleged offenses—and any false statement made by Mr. Hutchins about those offenses is not subject to prosecution under § 1001. Accordingly, the Court should grant this motion and dismiss the first superseding indictment in its entirety.

***

This updated motion to dismiss replaces the one the defense filed on March 30, 2018, Dkt. No. 57. The government filed a response on April 14, 2018, Dkt. No. 64, and the defense filed a reply on April 30, 2018, Dkt. No. 69. Per the Court's June 22, 2018 order, those filings should be stricken and not considered. (Dkt. No. 91 at 2.)

## BACKGROUND

This case stems from the alleged development and sale of two types of purportedly malicious software: UPAS Kit and Kronos. Mr. Hutchins was indicted on July 12, 2017 on six counts alleging violations of the Computer Fraud

and Abuse Act (CFAA) and the Wiretap Act. (Dkt. No. 6.) The government filed a first superseding indictment on June 5, 2018. (Dkt. No. 86.)[1]

In the first superseding indictment, most of the offenses charged against Mr. Hutchins concern his alleged relationship with Individual A, who is a foreign citizen located abroad. At all times material to the allegations, Mr. Hutchins was also a citizen and resident of a foreign country, the United Kingdom.

Per the superseding indictment, Individual A personally performed most of the described criminal acts and played the most significant and lead role. Allegedly, Individual A: (1) twice sold and distributed UPAS Kit to individuals located in the Eastern District of Wisconsin; (2) advertised Kronos on internet forums; (3) sold and distributed Kronos to an individual located in the Eastern District of Wisconsin; and (4) offered crypting services for Kronos. (*Id.* ¶¶ 4(b), (c), (f), (g), (k), (l) & (m).)

---

[1] The superseding indictment includes new factual allegations, substantially broadens Count One, and adds four new counts. Specifically, Count One charges Mr. Hutchins with conspiring to violate the CFAA and Wiretap Act. Counts Two and Three charge Mr. Hutchins with advertising and aiding and abetting the advertisement of an electronic communication interception device in violation of the Wiretap Act. Counts Four and Five allege that Mr. Hutchins aided and abetted another person in sending and selling an electronic communication interception device in violation of the Wiretap Act. Count Six charges that Mr. Hutchins endeavored to intercept and procured another person to intercept electronic communications in violation of the Wiretap Act. Count Seven alleges that Mr. Hutchins caused and aided and abetted another in attempting to cause damage to a computer without authorization in violation of the CFAA. Count Eight charges that Mr. Hutchins aided and abetted another to access a computer without authorization in violation of the CFAA. Count Nine alleges that Mr. Hutchins made a false statement to the FBI in violation of 18 U.S.C. § 1001. Finally, Count Ten claims that Mr. Hutchins conspired to engage in wire fraud in violation of 18 U.S.C. § 1343.

3

Mr. Hutchins' alleged participation in Individual A's activities amounts to a handful of alleged acts. He allegedly developed UPAS Kit and Kronos. (First Superseding Indictment ¶¶ 4(a) & (d).) It is also alleged that he intended for Individual A "to advertise, promote, sell, and distribute" Kronos (*id.* ¶ 4(d)), and that he and Individual A used a video posted to YouTube to demonstrate how Kronos worked and to promote its sale (*id.* ¶ 4(e)). It is not alleged, however, that either Mr. Hutchins actually created or posted the video. Finally, it is alleged that Mr. Hutchins and Individual A updated Kronos (*id.* ¶ 4(i)), and that Mr. Hutchins referred Kronos customers to Individual A (*id.* ¶ 4(n)). None of Mr. Hutchins' acts is alleged to have occurred while he was in the United States or to have been directed toward the United States.

Separately, Mr. Hutchins is alleged to have distributed Kronos to Individual B, purportedly based in California. (*Id.* ¶ 4(j).) Mr. Hutchins is also alleged to have "hacked control panels associated with Phase Bot," another form of malicious software (*id.* ¶ 4(h)), written a blog post discussing the vulnerability (*id.*). Mr. Hutchins allegedly told Individual B about both the Phase Bot hack and updates to Kronos. (*Id.* ¶¶ 4(j) & (i).) None of these allegations have any connection to the Eastern District of Wisconsin, and the government alleges no connection between Individual A and Individual B.

***

4

The defense has concurrently filed two other separate motions to dismiss. The first focuses on the indictment's failure to state offenses and multiplicity in Counts One through Eight and Ten. The second additionally seeks dismissal of Count Seven because it mis-describes the mental state required by the statute at issue. This motion seeks dismissal on extraterritoriality grounds.

## LEGAL STANDARD

The United States must have territorial jurisdiction over a defendant to pursue or hear a case against that person. The Seventh Circuit characterizes this requirement as a matter of whether a statute reaches outside the United States to conduct performed abroad. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 482 (7th Cir. 2017); *In re Hijazi*, 589 F.3d 401, 408 (7th Cir. 2009). Other courts have treated this requirement a question of subject-matter jurisdiction. *United States v. Al Kassar*, 660 F.3d 108, 118-19 (2d Cir. 2011).

A court must dismiss the indictment when it fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Risk*, 843 F.2d 1059, 1060 (7th Cir. 1988). Furthermore, a defendant may move to dismiss a criminal case on the ground that the court lacks jurisdiction at any time during the pendency of the matter. Fed. R. Crim. P. 12(b)(2). Finally, the government is required to prosecute an offense in a district where it was committed. Fed. R. Crim. P. 18.

5

The United States government may not prosecute anyone anywhere in the world under federal criminal law. *Hijazi*, 589 F.3d at 412. Counts One through Eight and Ten should be dismissed because they are an improper attempt to enforce United States law against Mr. Hutchins, who was a citizen and resident of the United Kingdom acting abroad at all times material to the first superseding indictment.

1. **The Court Should Dismiss Counts Two and Three Because Congress Did Not Intend the Wiretap Act to Have Extraterritorial Application and the Offenses are Not Domestic as Charged**

A fundamental premise of the American legal system is that "United States law governs domestically but does not rule the world." *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007). As such, courts presume that statutes do not apply extraterritorially unless Congress says otherwise: "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Community*, --- U.S. ---, 136 S. Ct. 2090, 2100 (2016); *Morrison v. National Australia Bank Ltd.,* 561 U.S. 247, 255 (2010); *see also Hijazi*, 589 F.3d at 409. United States criminal law generally does not reach acts committed by foreign nationals acting abroad against foreign interests due to the presumption against extraterritorial effect:

"[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison,* 561 U.S. at 255.

Courts have sometimes found that the presumption against extraterritoriality does not apply to criminal statutes, relying on nearly century-old precedent in *United States v. Bowman*, 260 U.S. 94 (1922). *See, e.g., Al Kassar*, 660 F.3d at 118. In 2010, however, the Supreme Court made clear that the presumption applies "in *all* cases." *Morrison,* 561 U.S. at 261 (emphasis added); *see also United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013).

## A. The Extraterritoriality Test

The Supreme Court has adopted a two-part test to determine whether a statute applies to foreign conduct. A court first asks whether "the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 136 S. Ct. at 2101. If Congress does not clearly indicate that a statute is meant to apply extraterritorially, a court then determines whether the case involves a domestic application of the statute by looking to the "focus" of congressional concern. *Id.* at 2101; *Morrison*, 561 U.S. at 249.

Under the test's second prong, "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad[.]" *RJR Nabisco*, 136 S. Ct. at 2101. But if the conduct relevant to the statute's focus occurred in a foreign country, "then the case involves an impermissible extraterritorial application

7

regardless of any other conduct that occurred in U.S. territory." *Id.; see also Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 124-25 (2013).

### B. Congress Did Not Intend the Wiretap Act, 18 U.S.C. § 1343, or 18 U.S.C. § 1001 to Have Extraterritorial Application, So the Government Must Allege Domestic Violations of Those Statutes to State Viable Claims

When Congress does not clearly indicate that it intends for a statute to have extraterritorial effect, the government must plead a domestic application of that law to avoid running afoul of the presumption against extraterritoriality. Three of the four substantive laws charged in the superseding indictment do not clearly indicate that they are meant to apply abroad, so only domestic applications of these statutes to Mr. Hutchins are permissible.

As to the CFAA—at issue in Counts One, Seven, and Eight—there is evidence that Congress intended its extraterritorial application. The CFAA prohibits certain conduct with respect to "protected computers," 18 U.S.C. § 1030(e)(2)(B), and the legislative history shows that Congress crafted the definition of that term with foreign-based attackers in mind. S. Rep. 104-357, at 4-5 (1996).

But the Wiretap Act—at issue in Counts One through Six—is different. Neither the statutory text nor the legislative history shows a clear congressional mandate that it should apply extraterritorially. Accordingly, courts have repeatedly found that it "has no extraterritorial force." *Huff v. Spaw*, 794 F.3d

8

543, 547 (6th Cir. 2015) (quoting *United States v. Peterson,* 812 F.2d 486, 492 (9th Cir. 1987)).

Section 2512 contains references to sending or transporting devices in "foreign commerce." But the Supreme Court has found that "general" or "fleeting" references to foreign commerce in a statute do not overcome the presumption against extraterritoriality. *Morrison,* 561 U.S. at 262-63; *see also EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991). And the legislative history does not reflect that Congress intended § 2512 to reach offenses in which the essential conduct—the elements of the offense—are performed abroad. Furthermore, Congress has explicitly stated that the Wiretap Act "regulates only those interceptions conducted within the territorial United States." S. Rep. 99-541, at 12 (1986). Thus, Congress did not intend for the Wiretap Act to have extraterritorial application.

Several courts have similarly concluded that Congress did not clearly indicate that § 1343 (the wire fraud statute, at issue in Count Ten) is meant to apply abroad. *See, e.g., European Community v. RJR Nabisco, Inc.,* 764 F.3d 129, 141 (2d Cir. 2014), *rev'd on other grounds,* 136 S. Ct. 2090 (quoting *Morrison,* 561 U.S. at 263); *United States v. All Assets Held at Bank Julius,* 251 F. Supp. 3d 82, 101-02 (D.D.C. 2017); *United States v. Sidorenko,* 102 F. Supp. 3d 1124, 1129 (N.D. Cal. 2015).

9

Finally, the plain text of 18 U.S.C. § 1001(a), charged in Count Nine, shows that the statute is domestic in scope because it is limited to false statements made in regard to "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States[.]"

Because Congress did not clearly intend to apply the Wiretap Act, § 1343, and § 1001 to conduct abroad, the government's charges under these statutes are only potentially proper if they allege domestic offenses.

### C. The Superseding Indictment Does Not Allege Domestic Applications of the Wiretap Act in Counts Two and Three

Counts Two and Three do not charge a domestic application of the law. These counts allege that Mr. Hutchins violated §§ 2512(1)(c)(i) and (ii) by disseminating and aiding and abetting the advertisement of Kronos. The counts allege a domestic application of the statute only "[i]f the conduct relevant to the statute's focus occurred in the United States . . . even if other conduct occurred abroad[.]" *RJR Nabisco*, 136 S. Ct. at 2101. And the "focus" of congressional concern in § 2512(1)(c) is the dissemination of advertisements for surreptitious interception devices.

The first superseding indictment does not claim that Mr. Hutchins or any alleged co-conspirators disseminated such advertisements in the United States. It only alleges that Individual A—not Mr. Hutchins—marketed and offered to sell Kronos on internet forums (*i.e.*, exploit.in, Darkode, and AlphaBay). (First

10

Superseding Indictment ¶¶ 4(f), (g), and (k).)  None of those internet forums are alleged to be based in the United States, hosted on United States servers, or otherwise have any connection to this country.  And neither Mr. Hutchins nor Individual A was located in the United States at that time.

The first superseding indictment also claims that a video showing the functionality of Kronos was posted on the video sharing platform YouTube, but it does not allege that either Mr. Hutchins or Individual A posted that video.  (*Id.* ¶¶ 4(e).)  Instead, it alleges that Mr. Hutchins and Individual A pointed to the video to demonstrate how Kronos worked and to promote its sale. (*Id.*)  But again, the superseding indictment draws no link to the United States.  It does not claim that Mr. Hutchins or Individual A posted the video. And it does not claim that Mr. Hutchins or Individual A disseminated the video to anyone located in the United States, or even that it was hosted on servers in the United States.

The first superseding indictment alleges only that a video was posted on YouTube for all the world to see, and that Mr. Hutchins and Individual A purportedly used it to show how Kronos worked to promote its sale.  Mr. Hutchins' alleged actions were performed abroad in the United Kingdom, and on the face of the indictment, no specific act or result is alleged to have occurred within the United States. This is a far cry from alleging a domestic application of the law.

11

In sum, Counts Two and Three should be dismissed because they impermissibly attempt to apply United States law to Mr. Hutchins' foreign conduct. The presumption against extraterritoriality defeats those charges.

**2. The Court Should Dismiss Counts One Through Eight and Ten Because Their Extraterritorial Application Violates Mr. Hutchins' Fifth Amendment Right to Due Process**

Even when Congress clearly shows that it intends a criminal statute to apply extraterritorially, the law may only do so if it doesn't violate the Fifth Amendment. *Al Kassar*, 660 F.3d at 117; *United States v. Yousef*, 327 F.3d 56, 86 (2d Cir. 2003). Mr. Hutchins' prosecution in the United States is arbitrary and fundamentally unfair.

The Fifth Amendment requires a "sufficient nexus" between the United States and a foreign national facing criminal prosecution to ensure that application of United States law "would not be arbitrary or fundamentally unfair." *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir. 1990); *see also Hijazi*, 589 F.3d at 401 (Lebanese citizen living in Kuwait properly raised due process objections to his indictment).

This requirement is akin to the "minimum contacts" test for personal jurisdiction in the civil context and "ensures that a United States court will assert jurisdiction only over a defendant who should reasonably anticipate being haled into court in this country." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (internal quotation marks omitted). Under the "minimum

contacts" test, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Each person over whom a court exercises personal jurisdiction must independently have sufficient contacts with that forum. *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (personal jurisdiction depends on "contacts that the defendant himself creates with the forum State") (internal quotation marks omitted). Thus, the Court must find an independent sufficient nexus for each individual.

The first superseding indictment's reliance on conspiracy and aiding and abetting theories of liability does not create jurisdiction over Mr. Hutchins. Whether Mr. Hutchins has a sufficient nexus with this District to be haled into court here is a threshold matter "totally distinct from the crime itself" and "must be considered" before the Court determines whether Mr. Hutchins has criminal liability. *United States v. Perlaza*, 439 F.3d 1149, 1168 (9th Cir. 2006).

While the government has alleged that acts performed by Individual A and Individual B contacted the United States, these allegations do not create a sufficient nexus for Mr. Hutchins. The Court must still "inquire into the defendant's purposeful connections with the forum—a central element of fairness in due process analysis." Lea Brilmayer & Charles Norchi, *Federal Extraterritoriality and Fifth Amendment Due Process*, 105 HARV. L. REV. 1217, 1259-60 (1992).

13

The first superseding indictment fails to articulate a clear nexus between Mr. Hutchins and the United States on Count One through Eight and Ten. The counts rely heavily on Individual A and Individual B's own completely distinct contacts with the United States to charge Mr. Hutchins in this country. But other people's contacts cannot be imputed to Mr. Hutchins to create a substantial nexus for purposes of prosecution.

The allegations attempting to create a direct nexus between Mr. Hutchins and the United States for the charges involving Individual A are threadbare at best. First, Mr. Hutchins is not alleged to have created or updated UPAS Kit or Kronos in the United States, nor to have provided software to Individual A when that person was located in the United States. (*See* First Superseding Indictment ¶¶ 4(a), (d) & (i).)

Second, the first superseding indictment does not allege that Mr. Hutchins and Individual A agreed to distribute UPAS Kit or Kronos in the United States or that they otherwise agreed to target the United States. It only claims that Mr. Hutchins referred customers to Individual A, but he is not alleged to have referred United States customers to Individual A. (*Id.* ¶ 4(n).)

While Mr. Hutchins is alleged to have "intended Individual A to advertise, promote, sell, and distribute Kronos" (though not UPAS Kit), there is no allegation that Mr. Hutchins intended for Individual A to advertise or promote Kronos in the United States, or sell or distribute Kronos to buyers in the United

14

States. (*Id.* ¶ 4(d).) The first superseding indictment claims that Mr. Hutchins and Individual A pointed to the YouTube video to demonstrate how Kronos worked and to promote its sale. (*Id.* ¶ 4(e).) But it does not claim that either Mr. Hutchins or Individual A created or posted that video on YouTube, or that the video was used to advertise or promote the sale of Kronos to anyone in the United States. (*Id.*)

A foreign defendant like Mr. Hutchins is not subject to the jurisdiction of the United States merely because someone else posted a video on the Internet and Mr. Hutchins allegedly pointed to that video to show how Kronos worked. If that conduct alone constitutes a sufficient nexus to hale a foreign citizen into a United States court, a person could theoretically be haled into any court in the world merely for publishing a link to a website that is considered objectionable in that court's country. Such an expansive theory of criminal liability would create profound free expression problems.

Next, the government attempts to plead around the due process problems in the original indictment and manufacture a substantial nexus by alleging that Mr. Hutchins provided Kronos to Individual B—described in the first superseding indictment as located in California—and chatted with Individual B about Kronos as part of the conspiracy with Individual A. (First Superseding Indictment ¶ 4(j).) This theory suffers from several defects.

15

First, the government conflates two different alleged conspiracies into a single one to manufacture jurisdiction in this District. The first superseding indictment does not claim that Individual A and Individual B agreed to accomplish any shared criminal objective. So to the extent that Mr. Hutchins and Individual B interacted while Individual B was purportedly in the United States, that circumstance cannot, as the first superseding indictment tries to do, subject Mr. Hutchins' alleged dealings with Individual A to domestic prosecution.

Second, it is not alleged that Mr. Hutchins *intended* to distribute Kronos to a person based in California or purposefully directed the software to Individual B knowing that he was in California at that time.

Third, the first superseding indictment alleges that Mr. Hutchins "hacked control panels" associated with the Phase Bot malware and told Individual B about it in a chat. (First Superseding Indictment ¶ 4(h).) But there is no indication that the computer Mr. Hutchins purportedly accessed was located in the United States or had any other domestic connection. (*Id.* ¶ 4(h).) And allegedly chatting with someone after the fact who is purportedly in California does not create a substantial nexus.

Fourth, even if the Court determines that Mr. Hutchins' alleged connection to Individual B in California establishes a sufficient nexus between Mr. Hutchins and the United States, the allegations involving Individual B are only relevant to

16

Counts One, Eight, and Ten. The allegations do not establish a sufficient nexus for Counts Two through Seven.

Finally, even if the Court should find that Mr. Hutchins' alleged connection to Individual B in California establishes a sufficient nexus to prosecute Mr. Hutchins under United States law, it does not establish a sufficient connection between Mr. Hutchins and this District to prosecute Mr. Hutchins in this Court. Should the Court deny this motion and allow the prosecution to proceed solely on the basis of Mr. Hutchins' contacts with Individual B in California, venue in this District would be improper. This District is not the *locus delicti* of any of the allegations against Mr. Hutchins involving Individual B, nor is there any allegation that any effect of those allegations was intended in this District.

For all these reasons, Mr. Hutchins does not have sufficient contacts to be haled into court in this District.

### 3. If The Court Dismisses Counts One Through Eight and Ten on Extraterritoriality Grounds, It Should Also Dismiss Count Nine

If the Court grants this motion as to Counts One Through Eight and Ten, it should also dismiss Count Nine. That count charges a violation of 18 U.S.C. § 1001 and flows from an allegedly false statement Mr. Hutchins made to law enforcement during a post-arrest interrogation focusing on the conduct charged in the broader indictment. Section 1001 is violated only when a false statement is

17

made about a "matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a). This motion asserts a lack of domestic jurisdiction over the alleged offenses such that any false statement made by Mr. Hutchins about those offenses is not subject to prosecution under § 1001.

## CONCLUSION

A criminal statute may be applied to an individual abroad only if it does not violate the Fifth Amendment. The first superseding indictment does not meet that test. For the foregoing reasons, this Court should grant this motion to dismiss with prejudice.

DATED: July 13, 2018    Respectfully submitted,

           */s/ Marcia Hofmann*
           MARCIA HOFMANN
           Zeitgeist Law PC
           25 Taylor Street
           San Francisco, CA 94102
           Email: marcia@zeitgeist.law
           Telephone: (415) 830-6664

           */s/ Brian E. Klein*
           BRIAN E. KLEIN
           Baker Marquart LLP
           2029 Century Park E – Suite 1600
           Los Angeles, CA 90067
           Email: bklein@bakermarquart.com
           Telephone: (424) 652-7800

_/s/ Daniel W. Stiller_
DANIEL W. STILLER
DStillerLLC
Box 511130
Milwaukee, WI 53203
Email: dan@dstillerllc.com
Telephone: (414) 207-3190

_Attorneys for Marcus Hutchins_