UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                         Case No.  17-CR-124

MARCUS HUTCHINS,

        Defendant.

**UNITED STATES' RESPONSE TO DEFENDANT'S
RENEWED MOTION TO COMPEL (Doc. #94)**

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this response to defendant Marcus Hutchins's renewed motion to compel the government to provide him with the identity of a government informant.  Doc. #94.

As discussed below, Hutchins's (rehashed) arguments are meritless and his motion should be denied.  Importantly, this Court has already ruled on this exact issue. In fact, it *granted* in part Hutchins's prior motion for disclosure (over the government's objection), and ordered the government to disclose the confidential informant's identity 30 days before trial.  Doc. #50; Doc. #53 at 31.  The superseding indictment *does not change anything* regarding the role this informant played in the investigation, which the defense has known through discovery well before any

Page **1** of **10**

Case 2:17-cr-00124-JPS-NJ   Filed 07/27/18   Page 1 of 10   Document 99

motions were filed in this case. Hutchins's insistence on repeating the same argument does not make the argument valid.

## I. Introduction

More than one year ago, on July 11, 2017, a grand jury in the Eastern District of Wisconsin returned an indictment charging Hutchins with one count of conspiracy to violate federal law, three counts of distributing and advertising an electronic communication interception device, one count of endeavoring to intercept electronic communications, and one count of aiding and abetting an attempt to access a computer without authorization. Doc. #6. Subsequently the government provided discovery to Hutchins per its obligations under Federal Rule of Criminal Procedure 16, Criminal Local Rule 16(a), and other applicable law.

Some of the discovery related to a confidential source of information ("CS-1"). That discovery included the following: (1) A redacted proffer letter between the government and CS-1; (2) undercover chats between a government cooperator and CS-1 regarding the sale of stolen credit card numbers; (3) chats between CS-1 and Hutchins regarding Hutchins's involvement in creating the Kronos banking Trojan, among other criminal conduct; and (4) a redacted FBI 302 report memorializing a FBI interview of CS-1 regarding Hutchins and others. Doc. #45.

On January 5, 2018, Hutchins filed a motion to compel discovery. Doc. #44. In the motion to compel, Hutchins asked the Court to, among other things, order the government to provide Hutchins with CS-1's true identity. Doc. #44 at 10. In response, the government described the role of CS-1, asserted that CS-1's identity

was subject to the informant's privilege, asserted that CS-1's role was more like that of a "tipster" than a "transactional witness," and that in any event, Hutchins's had not shown that CS-1's identity is relevant and helpful to his defense under the circumstances. Doc. #45 at 7-10. But, the government agreed that if it determined that CS-1 would be a testifying witness, it would disclose CS-1's identity in accordance with Judge Stadtmueller's anticipated trial scheduling order. Doc. #45 at 10-11.

After receiving the parties' written submissions on the issue of disclosing CS-1's identity, the Court held a hearing and heard extensive argument from the parties on the matter. Doc. #50. At the close of that hearing, the Court granted in part and denied in part Hutchins's motion to compel, determining that the government must disclose CS-1's identity to Hutchins 30 days prior to trial. Doc. #50; Doc. #53 at 31.

On May 4, 2018, Hutchins filed a renewed motion to compel the disclosure of CS-1's identity. Doc. #73. In his first renewed motion to compel (Doc. #73), Hutchins requested that the Court vacate its prior order and require the government to disclose CS-1's identity immediately based on what he represented to be newly revealed information about CS-1 in the government's response to one of his motions to dismiss the indictment. Doc. #73.

Before the Court ruled on Hutchins's renewed motion to compel, a grand jury returned the first superseding indictment against Hutchins. Doc. #86. In response, Hutchins refiled his renewed motion to compel. Doc. #94. In his newly filed

Page **3** of **10**

Case 2:17-cr-00124-JPS-NJ    Filed 07/27/18    Page 3 of 10    Document 99

renewed motion to compel, Hutchins continues to pretend that the government has revealed new information about CS-1 that justifies immediate disclosure of CS-1's identity. But Hutchins's renewed motion is simply a rehash of the arguments he presented in his original motion to compel combined with misrepresentations of government prior statements concerning CS-1 and discovery. Because Hutchins does not present any new information in his renewed motion to compel, there is no reason for the Court to alter its prior order concerning the disclosure of CS-1's identity.

## II. Argument

In support of his renewed motion to compel, Hutchins inaccurately casts CS-1 as a "central figure in this case" and that CS-1 is an "uncharged co-conspirator." Doc. #94 at 1-2. Hutchins bases his mischaracterization of CS-1 on the fact that the first superseding indictment now refers to CS-1 in three of the overt acts alleged in Count One. Doc. #86. But the three overt acts referencing CS-1 (Count One, paragraphs 4(h), (i), and (j)) contain information *known the defense and the Court at the time we argued Hutchins's original motion to compel disclosure CS-1's identity.* The information alleged in the three overt acts does not in any way alter the government position regarding CS-1's role in the case or the Court's analysis regarding disclosure of CS-1's identity.

First, to the extent it matters in this analysis, CS-1 is not an "uncharged co-conspirator," but rather Hutchins's customer and acquaintance.[1] Second, and more

---

[1] The practice in this district is to identify unindicted co-conspirators so that the defendant can determine if statements in discovery might be admissible as co-conspirator statements

importantly, CS-1 is no more a "central figure" at this point of the case than he/she was when the Court issued its order concerning the disclosure of CS-1's identity. Again, the substance of the information alleged in paragraphs 4(h), (i), and (j)) was known to the defense and the Court before the Court issued its order concerning disclosure of CS-1's identity.

For instance, in the government's response to Hutchins's original motion to compel, the government advised the Court that "Hutchins sent a copy of the Kronos malware to CS-1 in 2015, but CS-1 was not acting as an agent for the government at that time." Doc. #45 at 10. Also, during the hearing on February 22, 2018, while arguing against the need to disclose CS-1's identity to Hutchins, the government stated, "We do note that he did have – on an occasion he [CS-1] received the Kronos malware from Mr. Hutchins, but that was before he [CS-1] was acting as a government source. And we produced the malware that was received [by CS-1] to the defense as well." Doc. #53 at 29-30. Thus, the substance of the information in paragraph 4(j) was known to all involved before the Court issuing its order regarding disclosure of CS-1's identity.

Additionally, the existence of extensive, incriminating chats between CS-1 and Hutchins was known to the defense and the Court at the time the Court issued its order regarding disclosure of CS-1's identity. Those chats, a small portion of which serve as the basis for the allegations in paragraphs 4(h) and (i), were

---

under Federal Rule of Evidence 801(d)(2)(E). Hutchins appears to label Individual B an "uncharged co-conspirator" to take advantage of this local practice and circumvent the Court's earlier order on the issue of disclosure.

discussed in the government's response to Hutchins's original motion to compel. Doc. #45 at 3, 8, 10, and fn. 2. Those same chats, as they related to the need to have CS-1 testify at trial, were also discussed at hearing on the motion to compel before the Court issued its order concerning CS-1's identity. Doc. #53 at 29-30.

Importantly, the information alleged in paragraphs 4(h), (i), and (j) that Hutchins pretends is "new" information was disclosed to Hutchins well before he drafted his original motion to compel. For example, as part of discovery, the government turned over to the defense Hutchins's own post-arrest statements to the FBI, as well as recorded jail calls Hutchins made following his arrest. During his post-arrest statement and in the recorded jail calls, Hutchins admitted that he compiled and sent a malware binary to someone. During one of the recorded jail calls, Hutchins stated, "They [the FBI] questioned me. They have some chat logs of me with some other guy. I don't know how they got them, but, they have some chat logs . . . the chat logs are completely undeniable." Later on during the jail call, Hutchins stated, "So, I wrote code for a guy a while back who incorporated it into a banking malware, so they have logs of that . . . and there were also some [chat] logs [showing] that I gave the compiled binary to someone . . . ." The other person on the call then asked, "You gave a complied binary to somebody on that chat log?" Hutchins responded, "To repay a debt, yeah." And during the post-arrest interview with the FBI, Hutchins reviewed the same chat logs and admitted that the chat logs showed that he complied and sent a malware binary to the other person on the chat: CS-1.

Page **6** of **10**

Case 2:17-cr-00124-JPS-NJ   Filed 07/27/18   Page 6 of 10   Document 99

discussed in the government's response to Hutchins's original motion to compel. Doc. #45 at 3, 8, 10, and fn. 2. Those same chats, as they related to the need to have CS-1 testify at trial, were also discussed at hearing on the motion to compel before the Court issued its order concerning CS-1's identity. Doc. #53 at 29-30.

Importantly, the information alleged in paragraphs 4(h), (i), and (j) that Hutchins pretends is "new" information was disclosed to Hutchins well before he drafted his original motion to compel. For example, as part of discovery, the government turned over to the defense Hutchins's own post-arrest statements to the FBI, as well as recorded jail calls Hutchins made following his arrest. During his post-arrest statement and in the recorded jail calls, Hutchins admitted that he compiled and sent a malware binary to someone. During one of the recorded jail calls, Hutchins stated, "They [the FBI] questioned me. They have some chat logs of me with some other guy. I don't know how they got them, but, they have some chat logs . . . the chat logs are completely undeniable." Later on during the jail call, Hutchins stated, "So, I wrote code for a guy a while back who incorporated it into a banking malware, so they have logs of that . . . and there were also some [chat] logs [showing] that I gave the compiled binary to someone . . . ." The other person on the call then asked, "You gave a complied binary to somebody on that chat log?" Hutchins responded, "To repay a debt, yeah." And during the post-arrest interview with the FBI, Hutchins reviewed the same chat logs and admitted that the chat logs showed that he complied and sent a malware binary to the other person on the chat: CS-1.

A quick review of the "undeniable" chat logs between CS-1 and Hutchins, which were also disclosed long ago as part of discovery, reveals that Hutchins knew CS-1 lived in California when Hutchins delivered the compiled binary to CS-1. During the chats, CS-1 and Hutchins discuss Hutchins visiting CS-1 in California and they discuss the idea of Hutchins moving to California to work as a malware developer for CS-1 and another individual.

With this in mind, Hutchins's attempt to spin allegations in the first superseding indictment as "confirm[ation] that [CS-1] is a transactional witness the government will call at trial" is baseless. As discussed above, the allegations in the first superseding indictment do not add anything new about CS-1's role in this case. The government's statements regarding CS-1's role in the offense, CS-1's status as an informant subject to the informant's privilege, and whether CS-1 may be a testifying witness, *all remain the same as when the Court originally ruled on the issue*.

Even assuming for the sake of argument that CS-1 was a transactional witness, such a status does not mandate the immediate disclosure of CS-1's identity. *United States v. McDowell*, 687 F.3d 904, 911 (7th Cir. 2012). That is especially true where, as here, the proffered reason for disclosure is weak. *Id.* Indeed, to obtain immediate disclosure of CS-1's identity, rather than disclosure 30 days before trial as ordered by the Court, Hutchins is required to show that immediate disclosure is "relevant and helpful to his defense or is essential to a fair determination of a cause." *United States v. Wilburn*, 581 F.3d 618, 623 (7th Cir.

2009). A defendant like Hutchins faces such a burden because there is a recognized public interest in protecting the flow of information to law enforcement. *Id. (citing Roviaro*, 353 U.S. at 62). Here, Hutchins's falls far short of meeting this burden, instead offering only vague statements that he has a "right to investigate" CS-1. Courts have routinely found that such a generalized, speculative claim is insufficient. *See United States v. Valles*, 41 F.3d. 355, 358 (7th Cir. 1994) (quoting *Dole v. Local 1942, IBEW*, 870 F.2d 368, 373 (7th Cir. 1989) (holding that the confidential informant privilege "will not yield to permit a mere fishing expedition, nor upon bare speculation that the information my possibly prove useful.")).

Hutchins also clings to the claim that "there's no basis for the government's deviation from what Criminal Local Rule 16(a) demands: . . . [disclosure of CS-1's] true identity." Doc. #94 at 6-7. But Hutchins reliance on Criminal Local Rule 16(a) on this issue is misplaced. Local Criminal Rule 16(a) does not direct the parties to exchange preliminary witness lists, which is what the defense is asking for here. In fact, Local Rule 16(a)(3) specifically excludes "material identifying confidential informants" from "open file materials." The disclosure of witness lists is mandated in U.S. District Court J.P. Stadtmueller's pretrial order, which the Court has already modified to accommodate Hutchins's request for the name of a potential witness.

An additional concern weighs against the Hutchins request – reprisal against CS-1 for cooperating with the government against Hutchins and other cybercriminals. *See Dole*, 870 F.2d at 371-73. Hutchins has already used his

Twitter account, "MalwareTech," to criticize someone he perceived to be a government cooperator and to generally complain about people who decide to cooperate with the government against cybercriminals:[2]



### III. Conclusion

The overt acts listed in the first superseding indictment were known to government, the defense, and most importantly to this Court before the Court ordered the government to disclose the identity of CS-1 to Hutchins 30 days prior to the commencement of trial. Doc. # 50. Nothing in the first superseding indictment or previously filed submissions is "new" or inconsistent with the government's response to Hutchins's original motion to compel disclosure of CS-1's identity. Hutchins's argument to the contrary is based on either a misstatement of the record or an apparent lack of familiarity with discovery. Because Hutchins's renewed

---

[2] Hutchins has used his Twitter account to discuss this case and criticize the prosecution team and the grand jury. For example, after the first superseding indictment was returned, Hutchins wrote, "These [expletive] nuggets just won't give up." His tweet was quickly picked up and published in numerous publications before Hutchins deleted it.

motion to compel presents nothing new for this Court to consider, his motion must be denied. Moreover, Hutchins is still unable to articulate a valid reason justifying the disclosure of CS-1's identity any earlier than 30 days before trial.

    Respectfully submitted,

    MATTHEW D. KRUEGER
    United States Attorney

By:   *s/Michael J. Chmelar*
    MICHAEL J. CHMELAR
    BENJAMIN W. PROCTOR
    Assistant United States Attorneys
    Michael Chmelar Bar No.: IL 6277248
    Office of the United States Attorney
    Eastern District of Wisconsin
    517 E. Wisconsin Ave. Suite 530
    Milwaukee, Wisconsin 53202
    Tel: (414) 297-1700
    Email: michael.chmelar@usdoj.gov
    Email: benjamin.proctor@usdoj.gov