UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                              Case No. 17-CR-124

MARCUS HUTCHINS,

    Defendant.

# UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS BASED ON AN IMPROPER EXTRATERRITORIAL APPLICATION OF THE LAW AND A VIOLATION OF DUE PROCESS (DOC. #96)

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, file this response to defendant Marcus Hutchins's motion to dismiss. Doc. #96. In his motion to dismiss, Hutchins argues that (1) Counts Two and Three should be dismissed because they are in improper extraterritorial application of U.S. law (Doc. #96 at 12); (2) Counts One through Eight and Count Ten should be dismissed because prosecuting Hutchins in the U.S. is "arbitrary and fundamentally unfair" (Doc. #96 at 12); and (3) Count Nine should be dismissed because the FBI lacked jurisdiction to conduct its investigation. Doc. #96 at 18. The government will discuss each complaint in turn. As discussed below, each of Hutchins's arguments are meritless and his motion should be denied.

## A. Counts Two and Three do not constitute an unlawful extraterritorial application of the Wiretap Act

Hutchins argues that Counts Two and Three are an improper extraterritorial application of the Wiretap Act.[1]  Doc. #96 at 10.  He argues that those counts should be dismissed because they are merely an "attempt to apply [U.S.] law to [ ] Hutchins['s] foreign conduct."  Doc. # 96 at 12.  Hutchins is wrong.  Hutchins arguments depends on a tortured interpretation of the relevant law and facts.

As described in detail below, Hutchins's motion alleging an improper extraterritorial application of section 2512(1)(c) should be denied for several reasons.  First, because the conduct charged in Counts Two and Three occurred in the U.S. there is no extraterritorial application of U.S. law to foreign conduct.  This is true even if Hutchins and Individual A were abroad when the conduct occurred in the U.S.  Second, even if some of the conduct relevant to Counts Two and Three occurred abroad while other essential conduct occurred in the U.S., applying U.S. law to that conduct (domestic and foreign) does not equate to an extraterritorial application of the law.  Third, even if all the conduct giving rise to Counts Two and Three occurred outside the U.S., section 2512(1)(c) is a criminal statute and the language and function of the statute is intended to protect U.S. interest so it applies extraterritorially.  Finally, even under the extraterritorial analysis proffered by Hutchins, his motion should be denied because Hutchins and co-conspirators

---

[1] Counts Two through Six of the superseding indictment charge violations of the Wire Tap Act (18 U.S.C. §§ sections 2511 and 2512).  Doc. #86.  Hutchins has abandoned his extraterritorial argument as to Counts Four through Six from his earlier motion to dismiss. Doc. #57.

directed their conduct at the U.S., and his case presents a domestic application of section 2512(1)(c). Therefore, Hutchins's extraterritorial argument must fail.

> **1. Counts Two and Three are territorial applications of section 2512(1)(c)**

The conduct alleged in Counts Two and Three occurred in the U.S. As alleged in the superseding indictment, Hutchins and his co-conspirator used YouTube (a U.S.-based platform) to advertise and promote Kronos, not to mention other internet-based forums. Those advertisements and promotions were viewed in the Easter District of Wisconsin, and in the case of the YouTube video, an individual in the Eastern District of Wisconsin was specifically directed to it and viewed in this district. Because those acts were domestic not foreign, section 2512(1)(c) is being applied territorially not extraterritorially. As a result, an extraterritorial analysis of section 2512(1)(c) is not necessary.

Even if some of the conduct relevant to Counts Two and Three occurred abroad while other essential conduct occurred in the U.S., applying U.S. law to that conduct (domestic and foreign) does not equate to an extraterritorial application of the law. *See United States v. Leija-Sanchez*, 602 F.3d 797, 800 (7th Cir. 2010) (*infra* p. 7) (holding RICO statute was not applied extraterritorially where "some acts (planning and payment) occurred in the United States, one (the killing) occurred abroad; and the objective . . . was realized in the United States.") Hutchins argument to the contrary assumes that a crime can only happen in only one place, which is wrong. See Id.; 18 U.S.C. § 3237 (crime "begun in one district and

completed in another, or committed in more than one district" may be prosecuted "in any district in which [it] was begun, continued, or completed.")

In an attempt to argue none of the conduct relevant to Counts Two and Three occurred in the U.S., Hutchins spends a significant part of his motion performing a hypertechical attack on the allegations in the first superseding indictment. Doc. #96 at 11. Hutchins even goes so far as to claim that "the first superseding indictment does not claim that [ ] Hutchins or any alleged co-conspirator disseminated [an] advisement in the United States," and "[a]nd it does not claim that Mr. Hutchins or Individual A disseminated the video to anyone located in the United States . . . ." Doc. #96 at 9-10. But Counts Two and Three literally charge that.

Any argument that the superseding indictment is insufficient on those grounds is meritless because when considering a motion to dismiss, a court must view all allegations in an indictment as true and in the light most favorable to the government. *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). A court must also review indictments "on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008). Much of Hutchins's motion seems to be an attack on what he presumes to be the government's evidence at trial. In sum, his hypertechnical reading of the superseding indictment is not only misleading, it is not proper basis to assess an indictment when considering a motion to dismiss.

Because Counts Two and Three are a territorial application of section 2512, there is no need to determine if section 2512 applies extraterritorial. Therefore, the court should deny Hutchins's motion to dismiss Counts Two and Three.

**2. Section 2512(1)(c) applies extraterritorially**

If the Court deems it necessary to assess whether section 2512 has extraterritorial application, Hutchins's motion must still be denied. Section 2512(1)(c) is a criminal statute and the language and function of the statute is intended to protect U.S. interest so it applies extraterritorially.

In *United States v. Bowman*, 260 U.S. 94 (1922), the Supreme Court recognized that criminal and civil laws differ with respect to extraterritorial analysis. *United States v. Leija-Sanchez*, 602 F.3d 797 (7th Cir. 2010) ("*Leija-Sanchez I*"); and *United States v. Leija-Sanchez*, 820 F.3d 899, 900-901 (7th Cir. 2016) ("*Leija-Sanchez II*").[2] To discern Congress's intent whether to apply a statute extraterritorially, the Court differentiated between two classes of criminal statutes. *Bowman*, 260 U.S. at 97-98. For "crimes against private individuals or their property, like assault, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community . . . [i]f punishment of them is to be extended to include those committed

---

[2] Hutchins suggests *Bowman* was overruled by the Supreme Court's 2010 decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). Doc. #96 at 7. As stated by the court in *Leija-Sanchez II,* the Court's decision in *Morrison* did not overrule *Bowman,* which it did not even mention. *Leija-Sanchez II*, 820 F.3d at 901. Consequently, "[a] decision such as *Bowman*, holding that criminal and civil laws differ with respect to extraterritorial application, is not affected by yet another decision showing how things work on the civil side." *Id.*

outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute." *Id.*

The Court, however, refused to require similar express congressional statements for the class of criminal statutes not "logically dependent on their locality for the government's jurisdiction, but enacted because of the right of the United States to defend itself against obstruction or fraud wherever perpetrated." *Id.* at 98. For this latter type of criminal statute, the Court held that Congress's intent to confer extraterritorial jurisdiction may be inferred from the nature of the offense, because to limit the locus of these statutes to the territorial jurisdiction of the United States would be "greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed . . . in foreign countries as at home." *Id.*

In *Leija-Sanchez I* and *II*, the Seventh Circuit considered the defendant's argument that 18 U.S.C. § 1959 does not apply extraterritorially.[3] *Leija-Sanchez I,* 602 F.3d at 798. First, the court considered the language and function of the RICO statute, and found, relying on *Bowman* that it applied extraterritorially. *Id.* at 799-800. Specifically, the court held that

> [c]riminal businesses may be international in scope; the indictment alleges that Leija-Sanchez's organization was. Section 1959 applies to enterprises that engage in or affect "foreign commerce"; this rule cannot be implemented if the existence of activities abroad prevents application of § 1959 to those acts and effects that occur in the United States.

---

[3] The district judge had granted the defendant's motion to dismiss and the government appealed that decision under 18 U.S.C. § 3731. *Leija-Sanchez I*, 602 F.3d at 798. On direct appeal, following the defendant's conviction, the court readdressed the defendant's extraterritoriality argument. *Leija-Sanchez II*, 820 F.3d at 900.

*Id. see also Pasquantino v. United States*, 544 U.S. 349, 371-72 (2005) (noting that "the wire fraud statute punishes frauds executed 'in interstate or foreign commerce,' . . . so this is surely not a statute in which Congress had only 'domestic concerns in mind.'" (citations omitted)).

After concluding that the language and function of section 1959 allowed for an extraterritorial application of that statute, the court went on to consider where the underlying conduct occurred and where the consequences were realized. *Id*. In doing so, the court rejected the defendant's argument that a crime "happens in in one place only." *Id*. Considering the allegations in the indictment and the language and function of the statute (section 1959), the court in *Leija-Sanchez I* concluded that "we have both significant conduct in the United States and significant consequences here. Applying § 1959 to this contract killing does not violate any rule of international law and is compatible with the norms that govern the application of criminal statutes to international criminal enterprises." *Id.* at 801.

In *Leija-Sanchez II*, the court reaffirmed its reliance on *Bowman* and denied the defendant's request to overturn the decision in *Leija-Sanchez I*. *Leija-Sanchez II*, 820 F.3d at 900-01. Specifically, the court stated,

> *Bowman* distinguishes criminal from civil law, holding that different rules apply; second, the murder in Mexico was arranged and paid for from the United States, and was committed with the goal of protecting a criminal organization that conducted business in the United States . . . . The murder thus had ample links to the United States, and since §1959 covers racketeering in foreign commerce as well as in interstate commerce, we thought that its language applies.

*Id.*

Applying the extraterritoriality analysis from *Bowman* and *Leija-Sanchez I*, a court first considers the "language and function" of the statute to determine if the "conduct proscribed causes or is likely [to] cause significant injury to the U.S." *Leija-Sanchez I*, 602 F.3d at 799. "That injury or intended injury to the U.S. is what justifies extraterritorial application under international principles." *United States v. Hijazi*, 845 F.Supp.2d 874 (C.D. Ill., May 7, 2010).

Like the extraterritorial arguments addressed *Bowman* and *Leija-Sanchez I* and *II*, Hutchins's motion to dismiss the Counts Two and Three should be denied. Congress enacted section 2512 in 1968 to limit the availability of surveillance devices available to the public that were used to secretly intercept communications in violation of the U.S. Constitution. *United States v. Bast*, 495 F.2d 138, 142-45 (D.C. Cir. 1974) (relying on the Senate Report on the bill that originated the language in section 2512, S. Rep. No. 90-1097, 90th Cong., 2d Sess. 95 (1968)). Consistent with that function, the language of section 2512(1)(c) contemplates its application to advertisements disseminated through "foreign commerce." Similar to the result if section 1959 was limited to a territorial application, section 2512 cannot be implemented if the existence of activities abroad prevents its application to those acts and effects that occur in the United States. *See Leija-Sanchez I*, 602 F.3d at 800-01. Therefore, like section 1959, section 2512(c)(1) applies extraterritorially.

But there is more the Court can rely on other than the language and function section 2512. Like the acts in *Leija-Sanchez I*, as alleged in the indictment, and

above in Section (A)(1), significant acts relevant to Counts Two and Three took place in the U.S. Further, the existence of activities abroad, even the commission of essential elements would not preclude the application of section 2512(1)(c). *See Bowman*, 260 U.S. 95-96; *Leija-Sanchez I,* 602 F.3d at 798 (stating some of the acts (planning and payment) occurred in the United States, one (the killing) occurred abroad; and the objective (reduced competition for Leija-Sanchez's syndicate) was realized in the United States); see also *Ford v. United States*, 273 U.S. 593, 622-24 (1927) (if a criminal enterprise is carried out in part within the United States, all of the participants, including foreigners whose activities were entirely outside the United States, may be penalized). *Cf. Pinkerton v. United States*, 328 U.S. 640, 647 (1946). Therefore, because section 2512(1)(c) applies extraterritorially, Hutchins's motion to dismiss Counts Two and Three should be denied.

### 3. Section 2512(1)(c) applies extraterritorially using the analysis applied in civil cases

The result described above is the same under Hutchins's preferred method of analyzing extraterritoriality of a criminal statute, which involves following a line of Supreme Court decisions on extraterritoriality on civil actions. Doc. #96 at 6-8. This is because even if the presumption against extraterritoriality applies to § 2512(1)(c), the conduct relevant to the statute's focus occurred in the United States.

Ignoring the *Bowman* precedent and the holdings of *Leija-Sanchez I* and *II,* Hutchins argues that Counts Two and Three should be dismissed because they do not charge "a domestic application of the law." Doc. #96 at 10. Hutchins's is wrong and his motion should be denied. Adopting Hutchins's argument would require this

Court to adopt Hutchins's theory the case, which is not the standard during a motion to dismiss. *See Yashar*, 166 F.3d at 880; *Moore*, 563 F.3d at 586.

In *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), *Morrison*, 561 U.S. 247 (2010), and *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016), the Supreme Court described a framework for determining whether or not a civil statute applied extraterritorially. The framework is premised on the presumption against extraterritoriality. *Morrison*, 561 U.S. at 255. In other words, "absent a clear expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.*

The framework described a two-step process to be employed by the court when making such a determination:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco,* 136 S. Ct. at 2101.

A court ascertains the focus of a particular statutory provision by identifying the acts that the provision "seeks to 'regulate'" and the parties or interests that it "seeks to 'protec[t].'" *Morrison*, 561 U.S. at 267 (quoting *Superintendent of Ins. of N.Y.*

*v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10, 12 (1971)); *see RJR Nabisco,* 136 S. Ct. at 2100-2101. Because a different section (or even a different subsection) of the same enactment may have a different focus, the analysis must proceed on a provision-by-provision basis.

Under the two step process, if the court determines that a statute manifests no "unmistakable congressional intent to apply extraterritorially" the court identifies the "focus" of congressional concern. *Morrison*, 561 U.S. at 267. In his motion, Hutchins describes the focus of concern in section 2512(c) as "the dissemination of advertisements for surreptitious interception devices." Doc. #96 at 10.

Using Hutchins's determination of the focus of section, 2512(1)(c) Hutchins's extraterritorial argument fails because the indictment, as drafted, does not contemplate an application of U.S. law to wholly foreign conduct. Rather, as alleged in the indictment, this is a "domestic application" of section 2512(1)(c) because the conduct alleged in Counts Two and Three and that is "relevant to the statute's focus" occurred in the U.S. Hutchins and his co-conspirators used YouTube (a U.S.-based platform) to advertise and promote Kronos, not to mention other internet-based forms. Those advertisements and promotions were viewed in the Easter District of Wisconsin, and in the case of the YouTube video, an individual in the Eastern District of Wisconsin was specifically directed to it. Those acts were domestic not foreign. This conduct is the focus of the statute. It was targeted toward

the United States and actions occurred in the United States. It does not matter that other conduct occurred abroad.

Once the Court determines that the conduct relevant to the statute's focus occurred in the U.S., then it is a permissible domestic application of the statute, and the extraterritorial analysis ends. *RJR Nabisco*, 136 S. Ct. at 2101. This is true even if other conduct occurred abroad. *Id.* Therefore, for all the reasons stated above, Hutchins extraterritorial argument fails.

### B. The indictment does not violate Hutchins's constitutional right to Due Process

Hutchins next argues that Counts One through Eight and Ten should be dismissed because his "prosecution in the United States is arbitrary and fundamentally unfair." Doc. #96 at 12. Hutchins argues that "the Fifth Amendment requires a 'sufficient nexus' between the United States and a foreign national to ensure that application of United States law would not be arbitrary or fundamentally unfair." Doc. # 96 at 12. Hutchins argues that this sufficient nexus requirement is "akin" to the "minimum contacts" test for personal jurisdiction in the civil context. *Id.* As alleged in the superseding indictment, Hutchins committed offenses against the United States that affected and intended to affect the U.S. and its residents. Hutchins's argument that the Fifth Amendment immunizes him from prosecution in the U.S. because he lived abroad is meritless.

There is no statutory requirement to show a "sufficient nexus" between Hutchins and the U.S. based on any of the charges in the first superseding indictment. *See* 18 U.S.C. §§ 371, 1030, 2511, 2512, and 1343; s*ee also* Fed. R. Cr.

Pro. 18; 18 U.S.C. § 3237. It appears that the "sufficient nexus" requirement for which Hutchins argues only applies in the context of violations of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 1903(a). In fact, although Hutchins does not mention it in his motion, all the cases he cites in support of his position involve violations of MDLEA. *See United States v. Davis*, 905 F.2d 245 (9th Cir. 1990) (appealing conviction for violating 46 U.S.C. § 1903(a)); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1254 (9th Cir. 1998) (appealing conviction for violating 46 U.S.C. § 1903(a)); and *United States v. Perlaza*, 439 F.3d 1149, 1157 (9th Cir. 2006) (considering a motion to dismiss an indictment alleging a violation of 46 U.S.C. § 1903(a)). Moreover, the several circuits have even rejected the required showing of a "sufficient nexus" in MDLEA cases. *See United States v. Cardales*, 168 F.3d 548, 552-53 (1st Cir. 1999); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993).

Hutchins is not charged with a violation of MDLEA. And this Court should reject his invitation to create a new constitutional test for jurisdictional propriety in criminal cases where none exists. The Fifth Amendment protections Hutchins claims are actually provided by constitutional venue provisions (not found in the Fifth Amendment), and statutory directives on the matter of venue. *See United States v. Cabrales*, 524 U.S. 1, 6 (1998); *United States v. Muhammad*, 502 F.3d 646, 655 (7th Cir. 2007); s*ee also* Fed. R. Cr. Pro. 18; 18 U.S.C. § 3231 *et seq*.

But Hutchins has abandoned his constitutional venue challenge, (Doc. #89 at 6), and any argument along those line would have failed.[4] Venue in this district is proper because overt acts in furtherance of the conspiracy were committed in this district, and the substantive offenses were committed in this district. *See* 18 U.S.C. § 3237; Fed. R. Cr. Pro. 18; *United States v. Fredrick*, 835 F.2d 1211, 1215 (7th Cir. 1987); *see also Muhammad*, 502 F.3d at 651-57. Hutchins motion to dismiss Counts One through Eight and Ten should therefore be denied.

### C. Hutchins's challenge to Count Nine must be rejected because he lied to the FBI while the FBI was investigating a matter within its jurisdiction.

Hutchins's final argument is that Count Nine of the superseding indictment, which charges Hutchins with lying to the FBI, should be dismissed if the court dismisses Counts One through Eight and Ten. Doc. #96 at 17. Hutchins argues that if the Court "lacks domestic jurisdiction" over Hutchins for his conduct, the FBI could not investigate the distribution of Kronos and UPAS in this district or even the U.S. Hutchins motion to dismiss Count Nine should be denied.

First, as explained in the proceeding sections, Hutchins's prosecution in the U.S. and this district is proper because overt acts in furtherance of the conspiracy were committed in this district, and the substantive offenses were committed in this district. Second, assuming for the sake of argument that Counts One through Eight and Ten should be dismissed because of a "lack of domestic jurisdiction" over

---

[4] Hutchins makes only one fleeting reference to venue in current motion. Doc. #96 at 17. Hutchins writes, [s]hould the Court deny this motion to proceed on the basis of Mr. Hutchins'[s] contacts with Individual B in California, venue in this District would be improper." *Id.*

Page **14** of **15**

Case 2:17-cr-00124-JPS-NJ   Filed 07/27/18   Page 14 of 15   Document 101

Hutchins and his conduct, the FBI was certainly still investigating a matter within the jurisdiction of the FBI.

In this case, the FBI was conducting a criminal investigation which falls within the meaning of "any matter" as used in 18 U.S.C. § 1001. *United States v. Rogers*, 466 U.S. 475, 476-484 (1984); *see also* 28 U.S.C. § 533; 28 C.F.R. § 0.85. Additionally, the term "jurisdiction" as used in section 1001 "merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." *United States v. Rogers*, 466 U.S. 475, 476-484 (1984). Therefore, even if all the other counts of the superseding indictment were dismissed, Count Nine would survive. Hutchins's motion should therefore be denied.

Respectfully submitted,

MATTHEW D. KRUEGER
United States Attorney

By: *s/Michael J. Chmelar*
MICHAEL J. CHMELAR
BENJAMIN W. PROCTOR
Assistant United States Attorneys
Michael Chmelar Bar No.: 6277248
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Email: michael.chmelar@usdoj.gov
Email: benjamin.proctor@usdoj.gov