UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

            Case No. 17-CR-124

  v.

MARCUS HUTCHINS,

    Defendant.

---

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE JOSEPH'S REPORT AND RECOMMENDATION

---

   The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Michael Chmelar and Benjamin Proctor, files this response to defendant Marcus Hutchins' objection ("Obj.," Doc. #111) to U.S. Magistrate Judge Nancy Joseph's Order and Report and Recommendation ("Rec.," Doc. #109) concerning Hutchins' motion to suppress his post-arrest statement (Doc. #55) and several motions to dismiss the superseding indictment (Doc. #92, 95, and 96).[1]

---

[1] Hutchins also filed motions to compel discovery (Docs. #44 and 73), a renewed motion to compel the disclosure for the identity of a confidential informant (Doc. #94), and a motion for a bill of particulars and an updated motion for a bill of particulars (Docs. #54 and 93). Hutchins does not object to Magistrate Judge Joseph's rulings on these motions. Doc. #111 n.1. In other words, the only motions remaining at issue are Docs. #55, 92, 95, and 96.

Case 2:17-cr-00124-JPS  Filed 11/30/18  Page 1 of 50  Document 114

## I. Background and Procedural History

Marcus Hutchins is charged with developing and distributing malware capable accessing and damaging computers without the owners' knowledge and stealing personal information. *See* Doc. #86. As set forth in the superseding indictment, he worked with others to sell this malware in online forums. Doc. #86. Hutchins did this to earn money for himself. He essentially admitted his crimes in online "chats" that were later obtained by law enforcement. The malware developed and sold by Hutchins and his coconspirators, and variants of that malware, particularly Kronos, have been used to compromise computers around the world for years. *See, e.g.*, "Kronos Reborn," *Proofpoint*, July 24, 2018, *available at* https://www.proofpoint.com/us/threat-insight/post/kronos-reborn (last visited November 30, 2018) (discussing 2018 campaigns involving Kronos variants).

Following an investigation by the FBI in Milwaukee, a grand jury in the Eastern District of Wisconsin returned a six-count against Hutchins on July 11, 2017. Doc. #6. The indictment charged Hutchins with one count of conspiracy to violate federal law (18 U.S.C. § 371), four counts of violating the Wiretap Act (18 U.S.C. §§ 2511-2512), and one count of violating the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030). Doc. #6.

On August 27, 2017, Hutchins was arrested in Las Vegas, Nevada. Following his arrest, Hutchins was interviewed by agents. During that interview, Hutchins made incriminating statements. After the interview, Hutchins was detained at a local jail while awaiting his initial appearance and removal proceedings under Rule

5 of the Federal Rules of Criminal Procedure. During his detention at the jail, Hutchins made two phone calls during which he discussed his interview with the FBI.

The next day, Hutchins was released on pretrial bond. Doc. #11. When he appeared in Milwaukee, the case was designated complex for speedy trial purposes, and Hutchins' bond was continued. Docs. #8, 17 and 74.

On March 30, 2018, Hutchins filed several pretrial motions, including a motion to suppress his post-arrest statement to the FBI, and several motions to dismiss the indictment for under a variety of theories. Docs. #54, 55, 56, 57, and 58. At Hutchins' request, the magistrate judge held an evidentiary hearing on Hutchins' motion to suppress statement. Doc. #61.

Throughout the course of this case, the parties discussed potential resolution short of trial. When those discussions proved unsuccessful, the government sought, and the grand jury returned, a ten-count superseding indictment on June 5, 2018. Doc. #86. The superseding indictment expanded the conspiracy count (Count One), asserted additional violations of the Wiretap Act and CFAA, added a count of conspiracy to commit wire fraud, and added a count of lying to the FBI. Doc. #86.

On July 13, 2018, in response to the superseding indictment, Hutchins original motions to dismiss were withdrawn, and Hutchins filed new motions to dismiss the indictment, Doc. #92, 95, and 96. The parties agreed that the superseding indictment had no impact on the pending motion to suppress, Doc. #55.

On October 26, 2018, Magistrate Judge Nancy Joseph issued an Order and Report and Recommendation resolving all of Hutchins' pretrial motions. Doc. #109. Magistrate Judge Joseph recommended that this Court deny all Hutchins' motions to dismiss the superseding indictment and his motion to suppress. Doc. #109.

## II. Standard of Review for Recommendations under Rule 59(b).

This Court reviews de novo portions of a Recommendation to which a party files specific, written objections. Fed. R. Crim. P. 59(b)(2). The Court "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3). While the Court may hold a new evidentiary hearing, Hutchins does not seek such a hearing, and the government agrees that the record—including agent testimony and the magistrate judge's assessment of that testimony— is sufficient for this Court to deny Hutchins' motions to dismiss and motion to suppress his post-arrest statement.

## III. Hutchins' Motion to Suppress Post-Arrest Statements, Doc. #55.

Hutchins filed a motion to suppress the incriminating statements he made to FBI agents after he was arrested and taken into custody in Las Vegas, Nevada. Doc. #55. In that motion, Hutchins argues that the government coerced him to talk, and that he did not adequately understand his rights prior to making a statement. Doc. #55 at 1. To that end, Hutchins asserts that, at the time of the interview, he was sleep deprived, intoxicated, and a citizen of another country, and therefore he "did

not understand any [*Miranda*] warnings he may have been given or rights being waived." Doc. #55 at 1.

As part of the motion to suppress, Hutchins sought an evidentiary hearing "to explore what did and did not happen before" Hutchins was read his *Miranda* warnings, signed a written waiver of his rights, and made incriminating statements. Doc. #55 at 9-10. The magistrate judge granted that request for a hearing, over the government's objection, and set the hearing for April 19, 2018. Doc. #59 and 61. At the outset of the hearing on April 19, 2018, Hutchins asked for an adjournment. Doc. #68. The hearing was rescheduled to May 16, 2018. Doc. #82. Shortly before the hearing, on May 9, 2018, Hutchins filed a memorandum presenting a new theory to suppress his statement—that the FBI deceived him into waiving his rights. Doc. #75 at 6-11. Hutchins alleged that he did not "understand the nature and the posture of the investigation" and that the "agents hid the ball" from him when he "sought clarification." Doc. #75 at 10.

### A. The Evidentiary hearing of May 16, 2018.

The evidentiary hearing was ultimately held on May 16, 2018. Doc. #68, 79, 82. At the hearing, the government called two witnesses: FBI Special Agent Lee Chartier and FBI Special Agent Jamie Butcher. Hutchins called no witnesses.[2]

---

[2] During the hearing, Hutchins tried to call the prosecuting Assistant U.S. Attorneys as witnesses. Tr. at 155. The magistrate judge rightly rejected this request. Tr. at 165-66. Hutchins considered testifying for the limited purpose of establishing whether he understood the British version of Miranda rights, but he refused to be cross-examined on any issues relating to his waiver of rights. Tr. 166. The magistrate rightly rejected this proposal too, Tr. 168, 170, 173, 175, so Mr. Hutchins decided not to testify, Tr. 175.

The agents testified that Hutchins was arrested on August 2, 2017, prior to boarding a flight from Las Vegas, Nevada to the United Kingdom. Evidentiary Hearing Transcript ("Tr."), Doc. #82, at 16-17. He was first approached while at an airport lounge by Special Agent Chartier and two uniformed Customs and Border Patrol agents. Tr. 17. Special Agent Chartier asked Hutchins to come with him to answer questions, and Hutchins agreed. Tr. 17. Once they were all in a nearby stairwell, Special Agent Chartier told Hutchins that he was under arrest pursuant to a federal warrant, and he put handcuffs on Hutchins. Tr. 17-20. They then proceeded to a nearby interview room where they met with Special Agent Butcher. Tr. 19-20.

Before the interview started, Hutchins' handcuffs were removed. Tr. 21. Special Agents Chartier and Butcher identified themselves. Tr. 23. Special Agent Chartier advised Hutchins his rights under *Miranda* both orally and in writing using an Advice of Rights form. Tr. 23-25; Hearing Exhibit ("Ex.") 9. Special Agent Chartier read the form aloud and then handed the form to Hutchins. Tr. 25. After Hutchins reviewed the Advice of Rights form, Hutchins indicated that he understood his rights, and he waived his rights by signing the Advice of Rights form below the statement, "I have read this statement of my rights and understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Tr. 25; Ex. 9. Both FBI agents witnessed Hutchins sign the form, and then they each signed the form as witnesses. Tr. 25; Ex. 9. There is no dispute that

Hutchins first language is English and that he is an educated adult who can read and write English.

Additionally, before the interview started, Hutchins read and signed a form titled "Acknowledgement of Penalties for False Statements to the FBI." Tr. 27; Ex. 8. Hutchins signed the form below that statement, "I have read and understand the provision set forth above [18 U.S.C. § 1001] and agree that I am making an oral or written statement subject to those provision and attended parties." Ex. 8. Like the Advice of Rights form, both FBI agents signed that form as witnesses. Tr. 27-28.

After being advised of his rights and the consequences of lying to federal agents, Hutchins gave a statement to the FBI that lasted approximately one hour, forty-one minutes. The interview was audio recorded and a copy of the recording was admitted into evidence at the hearing. Ex. 1. During the interview, Hutchins signed a consent form allowing the FBI to search his backpack, phones, and laptops. Tr. 29; Ex. 4.

After the interview was over, Hutchins was detained a local jail while awaiting his initial appearance under Rule 5 of the Federal Rules of Criminal Procedure. Tr. 101. At the jail, Hutchins made two recorded phone calls. Tr. 101-02; Exs. 2, 3, 7, 8. Before the start of these phone conversations, the automated phone system advised the parties that the phone call was subject to monitoring and recording. Exs. 2- 3. During one of the phone calls, the individual speaking to Hutchins advised Hutchins multiple times not to say anything over the phone and told Hutchins he would try to find a lawyer for Hutchins. Exs. 2-3. Nonetheless,

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 7 of 50   Document 114

Hutchins made multiple incriminating statements during that phone call. Exs. 2-3; Tr. 107. At one point during the call, Hutchins stated that he told the FBI that he wrote the code for a banking Trojan and that he sent a compiled malware binary to someone. Ex. 2.

### B. The Magistrate Judge's Recommendation that Hutchins' Motion to Suppress be Denied.

In her Recommendation, Magistrate Judge Joseph rejected Hutchins' arguments and concluded that his waiver of rights before the interview was knowing and voluntary. She addressed each of Hutchins' arguments in turn.

At the outset, the magistrate judge rejected Hutchins' argument that the court should exclude from evidence the Advice of Rights form that he read and signed before the interview. Hutchins based this argument the fact that Special Agent Butcher wrote in, and later corrected, the handwritten time that the Hutchins signed the document. Rec. 9. The magistrate judge found that any error in the exact time of the signature on the waiver was pointless as long as the waiver was done before the substantive questioning. Rec. 10. The agents' testimony conclusively established that Hutchins was advised of his rights and signed the waiver before making the incriminating statements he now seeks to suppress. Rec. 10.

With regard to Hutchins' contention that his statement was involuntary because he was exhausted and intoxicated after spending a week in Las Vegas, the magistrate judge found that "there is nothing in the record to support that Hutchins was actually in a state in which he could not exercise free will." Rec. 12. To the

contrary, the agents testified that Hutchins showed no signs of intoxication during the arrest and interview, and "Hutchins has offered no evidence that he in fact consumed alcohol or drugs, let alone was impaired by them or that he was so fatigued as to be incapable of exercising his will and intellect." Rec. 12. On top of this, the magistrate judge listened to the entire recording of the interview and found that the recording corroborated the agents' testimony that Hutchins was fully alert and articulate. Rec. 12.

With regard to Hutchins' contention that the agents deceived him into waiving his rights and confessing to crimes, the magistrate judge found that Hutchins failed to carry his burden. Rec. 12 (citing *United States v. Serlin*, 707 F.2d 953, 956 (7th Cir. 1983) (noting that it is the defendant's burden to prove deception by producing clear and convincing evidence that agents affirmatively misled him as to the true nature of their investigation)). The magistrate judge noted that Hutchins was arrested and handcuffed shortly after he was encountered by Special Agent Chartier, he was read his *Miranda* rights, he signed a form waiving his rights, and therefore he most certainly understood the criminal nature of the encounter. Rec. 15. On top of this, the magistrate judge found that the agents never lied or misled Hutchins regarding the criminal nature of the investigation or the fact that he was the focus of that investigation. Rec. 16.

With regard to Hutchins' argument that he may not have understood *Miranda* warnings because he is a citizen of the United Kingdom, the magistrate judge found this argument baseless. Nothing in the record indicated that Hutchins

nationality hindered his ability to understand the rights that were read to him in English, and that were on the waiver form that he acknowledged reading and signing before the interview. Rec. 16. There was no evidence the FBI agents tried to confuse Hutchins about the nature of his rights based on his citizenship. Rec. 16-17.

In the end, after listening the agents' testimony, listening to the recorded post-arrest interview, and examining the relevant case law, the magistrate judge concluded that under the totality of the circumstances, "Hutchins voluntarily waived his *Miranda* rights and voluntarily responded to the agents' interrogation." Rec. 17.

In his objection, Hutchins attacks all of the magistrate judge's findings. He asserts that the Recommendation oversimplified the facts and "failed to fully consider" the interrogation. Obj. 14. Those arguments are addressed in turn.

### C. Legal standard for admitting a post-arrest confession.

A confession is admissible at trial if the government shows by a "preponderance of the evidence the defendant's *Miranda* waiver and voluntariness of the confession." *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 169 (1986) and *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

In determining whether a defendant "voluntarily, knowingly, and intelligently" waived his *Miranda* rights, courts evaluate the totality of the circumstances related to the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A waiver must be "voluntary in the sense that it was the product of a free and

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 10 of 50   Document 114

deliberate choice rather than intimidation, coercion, or deception." *Id.* It must also be made with full awareness of both the rights being abandoned and the consequences of the decision to abandon it. *Id.*

Generally, a waiver is considered "knowing and intelligent" unless evidence shows the defendant "could not comprehend even the most basic concepts underlying the *Miranda* warnings." *See United States v. Ramos-Gurerro*, 145 F. Supp. 3d 753, 768 (N.D. Ill Oct. 28, 2015) (citing *Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010)). An example of this would be a defendant whose "command of English is so poor that the police might as well have been speaking gibberish." *Collins*, 612 F.3d at 588.

It is well established that in the absence of a showing by the defendant that he could not understand and comprehend English, courts have found that "reading the [Advice of Rights] form to a defendant and giving him a chance to read it himself, followed by his statement that he understands his rights and his signature on the form, is sufficient to satisfy the *Miranda* test." *United States v. Springer*, 460 F.2d 1344, 1348-49 (7th Cir. 1972); *see also Collins*, 613 F.3d at 587-88. As to the voluntariness of the statement, "coercive police activity is a necessary predicate to a finding of involuntariness, [and] a defendant's personal characteristics alone are insufficient to render a confession involuntary." *United States v. Thompson*, 2017 U.S. Dist. LEXIS 32185, *4 (E.D. Wis. March 7, 2017) (citing *Watson v. Detella*, 122 F.3d 450, 453 (7th Cir. 1997); *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)); *see also United States v. Chrismon*, 965 F.2d 1465, 1469

(7th Cir. 1992) (stating that a defendant's claim of intoxication—without some showing of coercion by the government—will not negate voluntariness).

### D. Prior to the post-arrest interview, Hutchins was informed of, and acknowledged understanding, his *Miranda* rights.

At the evidentiary hearing, two agents testified under oath that before they started questioning Hutchins, they advised Hutchins orally of his *Miranda* rights, and they handed him a waiver form that he reviewed and signed in their presence. That signed waiver was admitted as evidence at the hearing. This sequence of events was never called into doubt during cross-examination, and Hutchins presented no evidence rebutting the agents' testimony.

However, in a remarkable shift of argument, Hutchins now asserts for the first time in his objection that he "was not advised of before questioning of his rights." Obj. 17. Not only did Hutchins fail to articulate such an assertion to the magistrate judge, his assertion is contrary to all the evidence in the record.

Indeed, in his motion requesting an evidentiary hearing, Hutchins stated that the agents advised him of his *Miranda* rights when he first arrived in the interview room at the Las Vegas airport before any substantive questioning. *See* Doc. #55 at 10 ("[T]he colloquy involving the advisement and waiver of rights happened before any recording started.").[3] His theory for suppression was that he simply did not understand his rights due to intoxication, unfamiliarity, coercion, and deception. Doc. #55, 75 and 109.

---

[3] There is no argument that substantive questioning occurred before the audio recorder was turned on; the only statements that Hutchins seeks to suppress are those that occurred during substantive questioning, which are all part of the recording.

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 12 of 50   Document 114

For Hutchins to now claim that he was either never advised of his rights (despite signing the Advice of Rights form), or not advised of his rights until after substantive questioning, is simply frivolous. The evidence on this point is uncontroverted, see Rec. 10-11; thus, there is no basis for upsetting the Recommendation's findings, and Hutchins' prior acknowledgment, that Hutchins was properly advised of his rights before substantive questioning.

Relatedly, Hutchins' renewed argument that the Court should exclude the *Miranda* waiver form falls flat. Obj. 24. His argument is that the Recommendation "fails to really consider that the form, as it existed whenever Mr. Hutchins signed it, apparently no longer exists." Obj. 24. This is the same basic argument presented to the magistrate judge, and the magistrate judge rightly found it to be wanting. As noted in the Recommendation, Special Agent's Butcher's handwritten edits to the "time" portion of the form were fully explored during testimony, and that in any event, the exact time the waiver was signed is irrelevant so long as it was done before substantive questioning. Rec. 10. As noted, it is uncontroverted that Hutchins was advised of his rights and signed the form before substantive questioning. Rec. 10.

### E. There is no evidence that Hutchins was intoxicated, let alone impaired, during the post-arrest interview.

In his motion to suppress, Hutchins argued that his waiver of rights under *Miranda* was not voluntary and knowing because he was "exhausted from partying all week and staying up late the night before until the wee hours." Doc. #55 at 4. Further, Hutchins claimed that "he had also used drugs," though he has never said

what "drug" he supposedly used, or when, where, and how much of the "drug" he supposedly used. *See* Doc. #55 at 4. Magistrate Judge Joseph correctly rejected each of these claims because the record did not support them. Rec. 12. Magistrate Judge Joseph found that "there is significant evidence that Hutchins was not impaired" when he waived his rights. Rec. 12; see also *United States v. Tellefsen*, Case No. 11-CR-43, 2011 U.S. Dist. LEXIS 108495, *31-36 (E.D. Wis. 2011 (Joseph, M.J.) (discussing the legal difference between intoxication and impairment, and noting that intoxication itself is not sufficient to find involuntary waiver of rights).

In his objection, Hutchins rehashes his arguments in the guise that the magistrate judge did not fully account of various discrepancies in the agents' testimony. Obj. 14-15. His arguments, however, are pure, unsupported speculation that run counter the record.

For instance, Hutchins contends that while the agents asked him if he had been drinking alcohol before the interview (which Hutchins denied), they did not ask him if he had used drugs. Obj. 15-16. This argument is pointless. Hutchins never offered any evidence that he used drugs, let alone was intoxicated or impaired from using drugs at the time of the interview. That the agents did not specifically ask Hutchins if he was currently high does not somehow establish that he was actually high on some yet to be identified drug.

Moreover, as noted by the magistrate judge, the agents testified that Hutchins exhibited no signs of intoxication. Rec. 12; Tr. 34. The agents testified that Hutchins was lucid and mentally aware of what was happening during the

interview. Rec. 12; Tr. 35, 94. Hutchins asked clarifying questions. Rec. 12; Tr. 33, 35. He asked follow-up questions. Rec. 12; Tr. 94. Hutchins was cautious and evasive at times. Rec. 12; Tr. 33. According to the agents, his appearance and demeanor during the interview was no different from his appearance and demeanor on any of the other occasions that the agents interacted with or observed him after the interview, including at the evidentiary hearing. Tr. 151-52.

The audio recording of the interview corroborated the agents' testimony of Hutchins' demeanor. Rec. 12; Ex. 1. Indeed, Magistrate Judge Joseph remarked that on the recording of the interview, "Hutchins presents as an intelligent and cautions speaker." Rec. 12. Further, Hutchins completed a number of tasks during the interview that showed he was not intoxicated, much less impaired. Rec. 12; Ex. 1. For instance, Hutchins unlocked both of his cell phones for the agents. Rec. 12; Tr. 31-32. One of the cell phones had a long, complex password that Hutchins stated was difficult for him to unlock when was drunk, but Hutchins successfully unlocked that phone during the interview with agents. Tr. 31-32; Ex. 1. Hutchins was also able to decipher a chat from February 2015 between himself and a confidential source of information working for the FBI. Rec. 12; Exs. 1, 11; Tr. 39-41.

Finally, the recorded jail calls also evidence Hutchins' mental awareness at the time he waived his rights and implicated himself in the charged conspiracy. In those jail calls, Hutchins recounted the details of his interview with the FBI. *See* Exs. 2, 7. His memory of the interview was sharp. As he recounted the interview, Hutchins did not complain about being intoxicated or impaired during the FBI

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 15 of 50   Document 114

interview. Exs. 2, 7. Hutchins did not complain about how he was treated by the agents. Exs. 2, 7. Hutchins did not complain about being confused about the nature of the interview. Exs. 2, 7. In fact, during one of the jail calls, (as he did during the interview), Hutchins said he had always expected to be questioned by law enforcement about creating Kronos: "Yeah, I knew it [developing Kronos] was always going to come back, I just [didn't] think it would be so soon." Exs. 2, 7.

### F. There is no evidence that Hutchins was deceived into waiving his rights.

In a memorandum filed shortly before the evidentiary hearing, Doc. #75, and during arguments following the hearing, Hutchins mostly abandoned the allegations that secured him an evidentiary hearing (i.e. intoxication, lack of understanding due to foreign citizenship), and he instead argued that agents deceived him.[4] Doc. #75, at 6-11. Specifically, Hutchins argued that he waived his rights under *Miranda* and confessed only because the interviewing agents refused to tell him that their investigation related to Kronos malware. Doc. #92 at 206.

To suppress a statement based on a theory of deceit or trickery, a *defendant* must produce *clear and convincing evidence* that the agents affirmatively misled him as to the true *nature* of their investigation. *Serlin*, 707 F.2d at 957 (citing *United States v. Nuth*, 605 F.2d 229, 234 (6th Cir. 1979); *United States v. Lehman*, 468 F.2d 93 (7th Cir. 1972), *Cohen v. United States*, 405 F.2d 34 (8th Cir. 1968)). A

---

[4] Before Magistrate Judge Joseph, Hutchins argued that *United States v. Serlin*, 707 F.2d 953, 957 (7th Cir. 1983) and *United States v. Giddins*, 858 F.3d 870, 885 (4th Cir. 2017) supported suppression of his post-arrest statement. Both cases are easily distinguishable, and Hutchins does not cite them in his objection as supporting his argument.

defendant must also prove that the misinformation was material in his decision to speak with the agents. *Serlin*, 707 F.2d at 957 (citing *United States v. Tonahill*, 430 F.2d 1042 (5th Cir. 1970)). Simple failure to inform a defendant that he was the subject of the investigation, or that the investigation was criminal in nature, does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead. *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977); *Lehman*, 468 F.2d 93; *United States v. Prudden*, 424 F.2d 1021 (5th Cir. 1970).

Here, the magistrate judge properly rejected Hutchins' deceit-based attack on the admissibility of his post-arrest statement because the FBI never misled Hutchins about the *nature* of its inquiry (i.e. Hutchins knew it was a *criminal*, not civil, inquiry). Rec. 13-15. Further, Hutchins did not present *any* evidence to establish deceit or trickery by the agents, much less establish it by clear and convincing evidence. *Serlin*, 707 F.2d at 957. Hutchins failed to even allege "that the [supposed] misinformation was material in his decision to speak with the agents." *Id.*

In his objection, Hutchins asserts that the fact he was not shown a copy of the indictment is somehow important. *See* Doc. #111 at 18. That is wrong. *See Colorado v. Spring*, 479 U.S. 564, 577 (1987) (holding the failure of law enforcement officials to inform [a defendant] of the subject matter of the interrogation could only affect the "wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature"); s*ee also United States v. Braxton*, 112 F.3d 777, 784 (4th Cir. 1997)

(stating that officers have no duty to advise a defendant of the specific identity of the offense under investigation). Even without an opportunity to review the indictment, the criminal *nature* of the investigation was obvious to Hutchins because, among other things, he was placed in handcuffs and told he was under arrest. Rec. 15; Tr. 20. It was also readily apparent that the questioning related to his work developing Kronos because the agents questioned him about Kronos. Ex. 1. Likewise, even if Hutchins had been shown a copy of the indictment and saw that it related to his development of Kronos, he did not (and cannot) establish that the absence of that information was "material to his decision to speak with agents." *Serlin*, 707 F.2d at 957.

Hutchins attempts to salvage this argument by speculating about how other facts could be interpreted in his favor. Obj. 16-18. But speculation does not come close to establishing clear and convincing evidence that the agents affirmatively misled him as to the true *nature* of their investigation. For example, Hutchins argues that the Recommendation "overlooks that the facts it recites can be viewed as the agents designing an arrest plan intended to confuse Mr. Hutchins regarding the nature of law enforcement's interest in him." Obj. 17. But the magistrate judge did not "overlook" Hutchins' argument; she expressly considered it and rejected it. *See* Rec. 15. Specifically, Recommendation states, "Hutchins argues only that the agents 'intentionally kept Mr. Hutchins in the dark about what was happening' (Docket # 85 at 4-5), and *that agents planned to arrest Hutchins at such a time to maximize confusion* . . . . Even if I accept both of these as true, they are not the kind

of affirmative deception about which *Serlin* and *Giddins* were concerned." Rec. 15 (emphasis added). Elsewhere in his objection, Hutchins makes the incredible claim that because his handcuffs were removed before the start of questioning Hutchins might have believed he was not under arrest. Obj. 16. This claim is untenable for multiple reasons, most notably that he was told he was under arrest, advised of his rights, and signed a waiver of his rights before being questioned by FBI agents. Again, there is nothing here establishing clear and convincing evidence of that the agents affirmatively misled Hutchins as to the true *nature* of their investigation. *See Serlin*, 707 F.2d at 957.

Finally, Hutchins cherry picks a few exchanges during the interview, and then attaches his own speculative commentary, to assert that he was "confused" by the agents. Obj. 19-24. But none of these examples show that the agents affirmatively misled Hutchins about the nature of their criminal investigation. Rec. 15. Nothing the agents said dissuaded Hutchins from believing it was a criminal investigation. Rec. 15. The Recommendation rightly rejected this argument, Rec. 15-16, and Hutchins cites to no authority calling into question the Recommendation's analysis.

Because Hutchins failed produce any evidence, let alone clear and convincing evidence, that the agents affirmatively mislead him as to the true *nature* of their investigation, his deceit-based attack on the admissibility of his post-arrest statement must be rejected.

## G. Foreign citizens like Hutchins are not immune from U.S. laws.

In his objection, Hutchins briefly argues that the Recommendation failed to discuss the fact that the agents knew Hutchins "had only been to the U.S. once." Obj. 18. He also asserts that the Recommendation improperly passed over the fact that Hutchins may not have known much about the U.S. legal system. Obj. 19. But these conclusory assertions provide no basis to upset the Recommendation. In fact, the Recommendation considered Hutchins baseless citizenship claim and rejected it in whole. Rec. 16-17. The Recommendation properly noted that, even assuming Hutchins was not familiar with the American criminal justice system (a fact we will never know since Hutchins refused to testify), the Recommendation rightly noted that this fact "does not negate his ability to understand *Miranda* rights read to him in English and that he read for himself." Rec. 16. And, there was no evidence that Hutchins nationality was exploited in any way. Rec. 16-17. In sum, Hutchins' argument lacks merit and was rightly rejected. S*ee Collins v. Gaetz*, 612 F.3d 574, 588 (7th Cir. 2010) (stating a person can sufficiently understand and waive their rights even if he is unfamiliar with the U.S. legal system, lacks a fluent understanding of English, or has a mental disability.) (collecting cases); *United States v. Frank*, 956 F.2d 872, 876-78 (9th Cir. 1991) (rejecting a defendant's claim that he, a Navajo Indian, lacked an understanding of the U.S. legal system and therefore did not understand *Miranda* rights).

In the end, the totality of the circumstances show that Hutchins knowingly and voluntarily waived his *Miranda* rights prior to answering questioned posed by

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 20 of 50   Document 114

agents. Therefore, the Court should overrule Hutchins' objection, adopt the Recommendation on this point, and deny his motion to suppress statements, Doc. #55.

## IV. Hutchins' Motion to Dismiss for Failure to State an Offense, Doc. #95.

In his motion to dismiss the superseding indictment for failure to state an offense, Doc. #95, Hutchins argues (a) that Counts One and Seven should be dismissed "because the indictment fails to allege any facts that [Hutchins] had any intent to cause 'damage' to a protected computer"; (b) Counts One through Six "fail to state an offense because Kronos and UPAS Kit are not an 'electronic, mechanical, or other device' as defined by the Wiretap Act;" (c) Counts Two and Three are multiplicitous; and (d) Counts One, Four through Eight, and Ten fail to allege the necessary "intent and causation." Doc. #95 at 1-2. Magistrate Judge Joseph considered all of these arguments and rejected them. Rec. 18-26. The Recommendation's analysis is accurate and Hutchins' objection should be overruled.

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to make a pretrial motion that challenges the sufficiency of the indictment. A defendant may challenge the indictment's sufficiency by arguing that it fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

An indictment is sufficient when it (1) states the elements of the crimes charged, (2) adequately informs the defendant of the nature of the charges brought

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 21 of 50   Document 114

against him, and (3) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. *See United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). An indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." *Id.* (quoting *United States v. White*, 610 F.3d 956, 958-59 (7th Cir. 2010)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007) (explaining that an indictment "parroting the language of a federal criminal statute" is sufficient so long as the crime is not one that must be charged with greater specificity). So, the "test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* at 925 (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

Civil and criminal pleading standards are obviously different. And the Seventh Circuit has consistently held that civil pleading standards do not apply in criminal cases. *Vaughn*, 722 F.3d at 926 (rejecting the defendant's request to adopt civil pleading standards to assess the sufficiency of a criminal indictment). Instead, if a defendant has "serious apprehension about his ability to prepare a defense in the light of the charges against him, he can file a bill of particulars." *Id.*; *see also United States v. Gerebizza*, 720 Fed. App'x. 302, 305-06, (7th Cir. 2017) (unpublished) (rejecting the defendant's complaint that the superseding indictment

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 22 of 50   Document 114

was defective because it contained "legal conclusions" and "naked assertions" that violate pleading standards in civil cases).

As the magistrate judge found, the superseding indictment in this case is sufficient because each count (1) lists the date of the alleged conduct, (2) states the elements of the crimes charged, (4) adequately informs the defendant of the nature of the charges brought against him, and (5) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. Rec. 20. Hutchins assertions to the contrary misconstrue pleading standards.

## A. "Damage" under the CFAA – Counts One and Seven.

Hutchins argues that Counts One and Seven, which allege violations of 18 U.S.C. §§ 371 and 1030, should be dismissed because those counts "fail to allege any facts that would show Mr. Hutchins had any intent to cause 'damage' to a protected computer . . . ." Doc. #95 at 1; Obj. 28. Hutchins' position is that Counts One and Seven of the superseding indictment are faulty because they do not expressly state that Kronos and UPAS Kit (identified in the indictment as "malware") actually "damage" computers under 18 U.S.C. § 1030. Hutchins argues that paragraphs 1(e) and 1(f) of the superseding indictment state only that "Kronos 'recorded and exfiltrated user credentials and personal identifying information from protected computers,'" and UPAS Kit "allowed for the unauthorized exfiltration of

information," which, according to Hutchins, simply means "making a copy of data and taking it away." Obj. 29; Doc. #96 at 4-5.[5]

Magistrate Judge Joseph rightly recommended that Hutchins' motion be denied because Counts One and Seven "meet the standard for sufficiency on their face." Rec. 22. In particular, the Counts "track" the language of §§ 371 and 1030. Rec. 22. Count One alleges a multi-object conspiracy under § 371 to violate §§ 1030 and 2511; and Count Seven alleges Hutchins knowingly attempted and aided and abetted an attempt to cause damage to a protected computer. Doc. #86. Each count (1) states the elements of the crimes charged, (2) adequately informs the defendant of the nature of the charges brought against him, and (3) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. *See Vaughn*, 722 F.3d at 925; Doc # 86. Each count therefore complies with Federal Rule of Criminal Procedure 7(c)(1). This Court should deny Hutchins' motion to dismiss Counts One and Seven for this reason alone, but there is more.

Despite the fact that Counts One and Seven comply with criminal pleading standards expressed in Rule 7(c) of the Federal Rules of Criminal Procedure and *Vaughn*, Hutchins complains that the superseding indictment "does not allege facts that would show that Kronos or UPAS Kit caused 'damage' within the meaning of [§ 1030]." Obj. 30-31. In support of his position, Hutchins relies on this Court's decision in *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d 990, 993-94 (E.D.

---

[5] Hutchins argument also ignores the fact that Count One charges a multi-object conspiracy to not only damage computers (§ 1030(a)(5)(A)), but also to obtain information (§ 1030(a)(2)(C)), and to intercept electronic communications (§ 2511(1)(a)).

Wis. 2010). In *Landmark*, this Court found that a plaintiff's *civil* complaint contained several basic errors in pleading a claim under the CFAA, including the failure to plead facts that alleged "damages" to a protected computer under § 1030. *Landmark*, 746 F. Supp. 2d at 993-94. But Hutchins' reliance on *Landmark* is misplaced because, among other things, *Landmark* was a civil case addressing civil pleading standards. And civil pleading standards do not apply in criminal cases. *Vaughn*, 722 F.3d at 926 (rejecting the defendant's request to adopt civil pleading standards to assess the sufficiency of a criminal indictment).

The other civil cases Hutchins cites do not help him either. *See* Obj. 30. For example, Hutchins claims that the decision in *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) supports his argument that the indictment must allege proof of the charged crime. Obj. 30. But *Fidlar Technologies* did not speak in any respect to federal *criminal* pleading standards, and neither does any other case cited by Hutchins. *See, e.g., Int'l Airport Ctrs. LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006); and *Untied States v. Mitra*, 405 F.3d 492, 493 (7th Cir. 2006).

Finally, as noted in the Recommendation, Hutchins completely ignores the fact that the indictment itself states Kronos and UPAS Kit are forms of "malware." *See* Rec. 23; Doc. #86. And the superseding indictment (¶1(d)) defines "malware" as "malicious computer code intended to damage a computer . . . [that] deletes, creates, and modifies files on a computer . . . ." Doc. #86 at 2.

Magistrate Judge Joseph correctly pointed out that the crux of Hutchins' argument is that "the government cannot prove" the malware he created and transmitted "damages" a computer. Rec. 23. "But that is a question of fact reserved for the jury, not a question of law as framed by Hutchins." Rec. 23. Hutchins denies that that is the case, Obj. 26,[6] but his position rests on a misunderstanding of *United States v. Risk*, 843 F.2d 1059, 1060 (7th Cir. 1988). *See* Obj. 27. The Recommendation called Hutchins out on this point, citing numerous cases from this district that "have been careful to cabin the reach of *Risk* to that narrow subset of cases in which there are undisputed facts outside the indictment such that there is no possibility that the government could produce evidence that would change the legal outcome." Rec. 21.

Because the Counts One and Seven of the superseding indictment comply with Rule 7(c)(1), this Court should overrule the objection, adopt the Recommendation, and deny Hutchins' motion to dismiss those counts.

### B. "Device" under the Wiretap Act – Counts One through Six.

Next, Hutchins argues Counts One through Six should be dismissed for failure to state an offense because neither Kronos nor UPAS Kit is an "electronic, mechanical, or other device" as defined by § 2010(5). Like his argument on "damages," this concerns proof at trial, not criminal pleading standards. The Recommendation rightly rejected Hutchins' motion on this ground, finding that

---

[6] "The defense does not challenge the sufficiency of the evidence. Rather, the defense argues that the government's allegations are insufficient to charge an offense as a matter of law." Obj. 26.

each of these counts: (1) states the elements of the crimes charged, (2) adequately informs the defendant of the nature of the charges brought against him, and (3) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. *See* Rec. 23; Fed. R. Crim. P 7(c); *Vaughn*, 722 F.3d at 925.

Even if the Court considered the merits of Hutchins' argument, his motion to dismiss should be rejected. Notably, courts have held that software known as "spyware" or that has keylogger or form grabber functionality falls under the Wiretap Act. *See Lius v. Zang*, Nos. 1:11–CV–884, 1:12–CV–629, 2013 U.S. Dist. LEXIS 29288, *6 (S.D. Ohio, March 5, 2013) (collecting cases), *recommendation adopted, overruled on other grounds*, *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016).

In *Lius*, the magistrate judge considered a civil action against the makers of "WebWatcher" software under 18 U.S.C. § 2520. 2013 U.S. Dist. LEXIS at *27. Section 2520 creates a private right of action for anyone whose communication were intercepted, disclosed, or used in violation of the Wiretap Act against the person or entity that engaged in that violation. *See* 18 U.S.C. § 2520(a). The plaintiff in *Lius* alleged the maker of WebWatcher software violated the Wiretap Act because the software had a keylogger function that captured and transmitted data from a computer. *Lius*, 2013 U.S. Dist. LEXIS at *6-9. First, the court in *Lius* held that the WebWatcher software does "intercept" communications under the Wiretap Act. *Id.* at *24-25. The court then went on to assess a software maker's liability under § 2520. The court in *Lius* determined that software manufacturers are excluded from liability under § 2520 because that statute applied only to those that

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 27 of 50   Document 114

"intercepted, disclosed or intentionally used" the intercepted communications. *Id.* at 27-28; *see* 18 U.S.C. § 2520(a).[7]

But unlike the civil case in *Lius* brought under § 2520, the government's case against Hutchins is not limited by three activities described in § 2520 (interception, disclosure and use). As alleged in the superseding indictment, Hutchins is charged with selling, sending, and advertising a device to intercept communications, and intercepting and endeavoring to intercept communications. Doc. #86. The scope of those activities is broader than liability under § 2520, which often exclude software manufacturers from civil liability under that section. The court in *Lius* is not the only court to find spyware or keylogging software is a "device" under the Wiretap Act. *See United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2012) (finding keylogger software could constitute a "scanning receiver" which is a "device or apparatus that can be used to intercept wire or electronic communications"); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1084-87 (N.D. Cal. Jan. 21, 2015) (finding software adequately alleged as a "device" for purposes of Wiretap Act); *Shefts v. Petrakis*, 2012 U.S. Dist. LEXIS 130542, *8-9 (C.D. Ill. Sept. 13, 2012) (holding spyware that contemporaneously transmitted screenshots from a computer violates the Wiretap Act); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661 (E.D. Tenn., July 19, 2012) (stating that spyware that automatically routes a copy of an email to through the internet to another party is an interception).

---

[7] On appeal, the Sixth Circuit found Luis had alleged facts sufficient to show the manufacturer of WebWatcher had intercepted communications. *Luis v. Zang*, 833 F.3d 619, 626-27 (6th Cir. 2016).

To support his positon, Hutchins argues that the Court should adopt one of the definitions of "device" from the Merriam-Webster Dictionary, and based on that one definition, dismiss Counts One through Six of the indictment. *See* Obj. 33-34; Doc. #95 at 7-9. As Hutchins notes, the Wiretap Act does not define the terms "any device" or "apparatus." *See* 18 U.S.C. § 2510. Using a definition from Merriam-Webster's dictionary, Hutchins argues "device" means "a piece of equipment or mechanism designed to serve a special purpose or perform a special function." Obj. 34; Doc. #95 at 7. And based on that definition, Hutchins concludes that malware is not a device. Obj. 34; Doc. #95 at 7.

But that same dictionary defines "mechanism" (from Hutchins' definition above) as "a process, technique, or system for achieving a result." Merriam-Webster Dictionary 2018, *available at* https://www.merriam-webster.com/dictionary/mechanism (last visited on November 29, 2018). And the definition for "device" proffered by Hutchins is the fifth alternative definition. Merriam-Webster Dictionary 2018, *available at* https://www.merriam-webster.com/dictionary/device (last visited November 29, 2018). The first is a "something devised or contrived: such as a . . . procedure, [or] technique." *Id.* Additionally, Merriam-Webster defines "apparatus" as "a set of materials or equipment designed for a particular use" or "the functional process by means of which a systemized activity is carried out." Merriam-Webster Dictionary 2018, *available at* https://www.merriam-webster.com/dictionary/apparatus (last visited November 29, 2018). Other dictionaries, like the New Webster's Dictionary and Thesaurus define "device" as

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 29 of 50   Document 114

"something designed or adapted for a special purpose." *New Webster's Dictionary* 261 (Bernard S. Cayne, Lexicon Publications, Inc. 1992). It defines "apparatus" as the "equipment (materials, tools, etc.) needed for a certain task." *Id.* at 43. The Random House Dictionary of the English Language defines "device" as "a thing that is made, usually for a particular working purpose . . . ." Random House Dictionary (Jess Stein, Random House, Inc. 1979). Looking at the preceding collection of definitions of a "device" and "apparatus" and "mechanism," including the definition preferred by Hutchins, the malware at issue in this case would satisfy the statutory definition of "any device or apparatus" as used in the Wiretap Act. Under those definitions, Kronos and UPAS Kit would constitute a "device" or "apparatus" under § 2510.

The definition of "electronic, mechanical, or other device" was also drafted broadly in order to accommodate changing technologies. *See United States v. Mitra*, 405 F.3d 492, 495-96 (7th Cir. 2005) (explaining that Congress writes statutes generally to accommodate new developments in technology); *see also Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 986 (6th Cir. 2009) (finding that use of the term "any" indicates there are no restrictions as to type or part). This is especially true given the technologies at issue in the Wiretap Act. As the court in *Luis* noted, when the Wiretap Act was first enacted in 1968, "it was designed to protect telephone communications, not email, instant messaging . . . or other forms of electronic, internet-based communication that are commonplace today." *Luis*, 2013 U.S. Dist. LEXIS at *13-15. The transmission of electronic data by a computer was

not addressed until 1986 when Congress enacted the Electronic Communications Privacy Act (ECPA). *Id.* As the court in *Luis* noted, "despite its nod to the computer age, when the ECPA was enacted in 1986, email communication was still relatively uncommon" and malware was almost unknown outside academic circles.[8] *Id.* And [a]s often happens when existing laws are used in new ways, courts have struggled to determine whether, under what circumstances, the Wiretap Act applies to modern and ever-evolving norms of electronic communications." *Id.*

Therefore, the Court should resist Hutchins' attempt to limit the scope of §§ 2511 and 2512 based on one or several dictionary definitions, or because "malware" or "spyware" or "software" is not specifically listed in the definition of "electronic, mechanical, or other device." The reference to "any device or apparatus" is written broadly in order to capture changes in technology. *See Mitra*, 405 F.3d at 495-96. As the Court in *Mitra* noted, [l]egislation is an objective text approved in constitutionally prescribed ways; its scope is not limited by the cerebrations of those [who] voted for or signed it into law. Electronics and communications change rapidly, while each legislature's imagination is limited." 405 F.3d at 495.

Hutchins' request that the Court adopt the Merriam-Webster dictionary definition of device, or at least its application to "software," appears to come from dicta in *Potter v. Havlicek*, 2008 U.S. Dis. LEXIS 122211 (S.D. Ohio 2008). Obj. 32. In *Potter*, the plaintiff had been sued for using "Activity Monitor" software on his

---

[8] *See* PC Mag.com, Malware: A Brief Timeline found at the following URL on April 17, 2018: https://www.pcmag.com/feature/261678/undefined/feature/261678/malware-a-brief-timeline/undefined/feature/261678/malware-a-brief-timeline/undefined/feature/261678/malware-a-brief-timeline/3

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 31 of 50   Document 114

home computer to "record and store on the computer all activity of the persons using that computer." *Id.* at *6. Havlicek then sued Deep Software, the maker of Activity Monitor, for violating §§ 2512 and 2520 of the Wiretap Act. *Id.* at *6-7. Deep Software moved to dismiss the Halvicek's claims arguing Activity Monitor was not a "device" under the Wiretap Act, and that there was no private right of action under § 2520 for violating § 2512. *Id.* at *9-10. The district court dismissed Halvicek's claims finding there was no private cause of action under § 2520 for violating § 2512. *Id.* at *20. The court then stated in dicta that "the definition of the word 'device' does not encompass software such as activity monitor." *Id.* at *23. The court based that statement based entirely on a definition of the word "device" from Merriam Webster Dictionary. *Id.*

The Recommendation rejected Hutchins' reliance on *Potter*, Rec. 24-25, and this Court should as well. First, *Potter* dealt with a manufacturer's liability under § 2520. *Id. at* *14-20. As explained above, § 2520 presents limitations on finding manufacturers liable for civil damages under the Wiretap Act because § 2520 liability only extends to those who intercept, disclose or use the intercepted communications. *Id.* Second, more recent cases appear to have adopted a broader view of software or malware that intercepts communications. *See Barrington*, 648 F.3d at 1203; *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d at 1084-87; *Lius*, 2013 U.S. Dist. LEXIS 29288, *6; *Shefts*, 2012 U.S. Dist. LEXIS 130542 at *8-9; *Klumb*, 884 F. Supp. 2d. at 661. And adopting Hutchins' strict-interpretation of the Wiretap Act would require a court to "overlook the notably

broad language of the Wiretap Act, which was to generally prohibit unauthorized artificial interpretation of communications in an era of changing technologies, in favor of a hyper-technical reading of a the statute." Rec. 25; *see also Mitra*, 405 F.3d at 495-96 (explaining that Congress writes statutes generally to accommodate new developments in technology). Finally, as alleged in the superseding indictment, Kronos, the malware at issue in Hutchins' case, functions very differently than Activity Monitor. Unlike Activity Monitor, which recorded and stored data on the same system on which it was installed, Kronos records and exfiltrates information *from* the computer on which it installed. *See* Doc. #86 at ¶1(e).

The other case on which Hutchins relies for the proposition that "software is not a device" is *United States v. Szymuszkiewicz*, 622 F.3d 701, 707 (7th Cir. 2010). *See* Rec. 32; Obj. 32. But the court in *Szymuszkiewicz* did not address the question of whether software qualifies as a "device." Rec. 24. In *Szymuszkiewicz*, the court addressed the defendant's argument that "the device" used to intercept a communication must differ from the device the intended audience uses to receive the message." 622 F.3d at 707. As noted in the Recommendation, "the case does not mention the word 'software' at all." Rec. 24.

Because malware like Kronos is a device under the Wiretap Act, and liability is not limited to activities described in § 2520, this Court should overrule the objection, adopt the Recommendation on this point, and deny Hutchins' motion to dismiss Counts One through Six.[9]

---

[9] Additionally, Counts One, Two, Three, and Six allege violations of the Wiretap Act that are not dependent on Hutchins' limited definition of a device. This was addressed in the

## C. Intent and Causation – Counts One, Four through Eight, and Ten.

Hutchins argues that Counts One, Four through Eight, and Ten should be dismissed because they "do not allege the necessary intent and causation to state an offense." Doc. #95 at 11; Obj. 35. The Recommendation rejected Hutchins' argument because he once again "tries to impose a standard for civil pleadings on a criminal indictment." Rec. 25-26. In his objection, Hutchins fails to identify any error in the reasoning of the Recommendation, and instead reiterates his original argument. Obj. 35-37.

In his motion to dismiss, Hutchins complains that the superseding indictment lacks a "claim that [Hutchins and Individual A] intended for the buyers to do anything in particular with the [malware]." Doc. #95 at 12; Obj. 36. Hutchins claims "[m]erely writing [a banking Trojan] and selling it—when any illegal activity is up to the buyer to perform—is not enough to allege specific intent by Mr. Hutchins." Doc. #95 at 12. Hutchins also argues for a buyer-seller defense to the

United States Response to Hutchins motion, Doc. #100 at 9-10. In sum, Counts Two and Three allege violation of §§ 2512(1)(c)(i) and (c)(ii), in that Hutchins and his co-conspirator disseminated an advertisement of an "electronic, mechanical, or other device" designed to intercept communications and promoted the use of any other such device. Doc. #86 at 7-8. Hutchins used a YouTube video and advertisements on internet forums to market the malware. Therefore, even if this Court were to accept Hutchins's position that malware alone does not constitute a device, Counts Two and Three would survive a motion to dismiss because the YouTube video showed the malware operating on a computer. Count Six alleges Hutchins and his co-conspirator "endeavored to intercept, and procured any other person to intercept" communications in violation of §§ 2511(1)(a) and (2). Again, even if the malware alone did not qualify as a "device" under § 2510(5), the fact that the malware was transmitted to another individual, knowing and intending that that individual use the malware to incept communications would constitute a violation of the Wiretap Act under § 2511(1)(a). It is the same result for Count One given that one of the objects of the charged conspiracy was to violate § 2511. Doc. #86. And an illegal agreement to violate section 2511 is not dependent on a "device" as contemplated Hutchins. Hutchins did not address this issue in his objection. Doc. #111 at 31-35.

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 34 of 50   Document 114

conspiracy charge. Doc. #95 at 12; Obj. 36. Hutchins goes on to argue that "allegations in the indictment" fail to show he is "guilty of the conspiracy charge." Doc. #95 at 13. He makes a similar argument in his objection, asserting that "there can be no criminal liability where Mr. Hutchins and Individual A are merely alleged to have sold [malware]." Obj. 36.

Of course, the government does not have to prove guilt beyond a reasonable doubt through the allegations in an indictment. And it is well established that an indictment is not evidence. *See* Seventh Circuit Patten Criminal Jury Instruction 1.02 (2012). Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient where it (1) states the elements of the crimes charged, (2) adequately informs the defendant of the nature of the charges brought against him, and (3) enables the defendant to assert the judgment as a bar to future prosecutions for the same offense. *See Vaughn*, 722 F.3d at 925. The superseding indictment in this case satisfies those standards.

Because the argument Hutchins makes in support of dismissing Counts One, Four through Eight, and Ten relates to the sufficiency of the evidence rather than a motion to dismiss under Rule 12, this Court should overrule the objection, adopt the Recommendation, and deny Hutchins' motion to dismiss.

### D. Multiplicity – Counts Two and Three.

Hutchins argues that Count Two and Three are multiplicitous and therefore, Count Three must be dismissed. Doc. #95 at 9-10. This argument is wrong. As noted

in the Recommendation, Counts Two and Three are not multiplicitous because Count Three contains an additional element. Rec. 28.

In assessing whether an indictment is multiplicative, courts typically ask "whether each count requires proof of a fact which the other does not. *If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity.*" *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002) (emphasis added) (citing *United States v. Briscoe*, 896 F.2d 1476, 1522 (7th Cir. 1990) (quoting *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986)) (internal citations and quotations omitted))

In his motion to dismiss, Hutchins correctly notes that Counts Two and Three "are identical *except* for a signal element." Doc. #95 at 10 (emphasis added). In other words, the government has an additional and different factual burden and element to prove under each count. And that is enough to defeat a claim that the counts are multiplicative. Doc. #95 at 10. The Recommendation, after comparing the elements of each subsection, came to the same conclusion and correctly rejected Hutchins' argument. Rec. 28. That reasoning is sound and should be adopted by the Court.

Even if the Court finds that Counts Two and Three were somehow multiplicative, such a finding does not mandate the dismissal of Count Three. Instead, the proper remedy for multiplicative counts is merger of those counts. *See United States v. Bradbury*, 2015 U.S. Dist. LEXIS 76849, *18-9 (Ind. N.D. June 15, 2015) (relying on *United States v. Platter*, 514 F.3d 782, 786-7 (8th Cir. 2008)). As

the court in *Bradbury* explained, dismissal of one of the counts would cure the multiplicity problem, but deny the government its ability to prosecute the case using an alternative theory of liability, which is allowed under Federal Rule of Criminal Procedure 7(c)(1).

### V. Motion to Dismiss Count Seven for "Grand Jury Defects," Doc. #92.

Hutchins argues that Count Seven should be dismissed for a "grand jury defect" because it misstates the *mens rea* for the alleged offense.[10] Doc. #92. The Recommendation rightly rejected this argument because Count Seven, "read practically and not in a hyper-technical manner, sets forth all the elements of an attempt to violate § 1030(a)(5)(A)." Doc. #109 30-31.

Hutchins initially complained that the count "fails to allege an essential element of the offense" because it "is pleaded without reference to the intentional causing of damages." Doc. #92 at 5. Hutchins' argument, however, wholly ignores the fact that he is charged with an *attempt* and aiding and abetting an *attempt* to violate § 1030(a)(5)(A). Doc. # 86. According to Seventh Circuit criminal pattern jury instructions, an attempt means to take a substantial step towards committing the offense, with the "*intent* to commit the offense." (emphasis added). Because Count Seven is charged as an attempt to violate § 1030, including the word "intentionally" before "attempted," which is what Hutchins proposed, would be unnecessary and redundant. *See United States v. Rutherford*, 54 F.3d 370, 373 (7th Cir. 1995)

---

[10] In his motion, Hutchins demands that the count be dismissed "with prejudice." Doc. #92 at 1. Hutchins offers no support for such a sanction, even if his motion had some measure of merit (which it does not).

(stating attempts are intentional acts; and under common law, "an attempt includes the specific intent to commit an unlawful act"). Magistrate Judge Joseph recommended that this Court deny Hutchins motion for that reason. Rec. 29-30.

In his objection, Hutchins switches gears and argues that Count Seven would be proper only if it alleged that "Mr. Hutchins attempted to transmit a program and as a result, intentionally caused damage to a protected computer." Obj. 40. But this is a different crime than the one actually charged. Under Hutchins' proposed version, nobody could be convicted of an attempt to violate § 1030(a)(5)(A) unless they in fact *completed* the crime—i.e. "as a result . . . caused damage." This reading would eviscerate liability for criminal attempts to violate § 1030. It is therefore not surprising that Hutchins cites no cases that support his reading. His motion to dismiss Count Seven should be denied.

## VI. Hutchins' Motion to Dismiss for Improper Extraterritorial Application of Law and Violation of Due Process, Doc. #96.

Hutchins next argues that (1) Counts Two and Three should be dismissed because they are in improper extraterritorial application of U.S. law, Doc. #96 at 12; (2) Counts One through Eight and Count Ten should be dismissed because prosecuting Hutchins in the U.S. is "arbitrary and fundamentally unfair," Doc. #96 at 12; and (3) Count Nine should be dismissed because the FBI lacked jurisdiction to conduct its investigation, Doc. #96 at 18. As discussed below, the Recommendation rightly rejected each of these arguments. Rec. 30-32.

## A. Counts Two and Three are territorial applications of § 2512(1)(c).

Hutchins first asserts that Counts Two and Three (Wiretap Act violations) should be dismissed because they are in improper extraterritorial application of the Wiretap Act. Doc. #96 at 12. Magistrate Judge Joseph rightly rejected this argument finding that Counts Two and Three of the superseding indictment allege a territorial, not extraterritorial, application of the Wiretap Act. Rec. 31.

First, Counts Two and Three expressly allege that the criminal conduct occurred in the Eastern District of Wisconsin and elsewhere. Doc. #86. Further, the superseding indictment alleges that Hutchins and his co-conspirator used YouTube (a U.S.-based platform) to advertise and promote Kronos, not to mention other internet-based forums. *See* Doc. #86. Those advertisements and promotions were viewed in the Easter District of Wisconsin, and in the case of the YouTube video, an individual in the Eastern District of Wisconsin was specifically directed to it and viewed it in this district. Doc. #86; Rec. 31. Because those acts were domestic not foreign, the Wiretap Act is being applied territorially not extraterritorially in Counts Two and Three. *See* Rec. 31. As a result, an extraterritorial analysis of the Wiretap Act (§ 2512(1)(c)) is not necessary.

In his objection, Hutchins asserts that the Recommendation erred because "while the superseding indictment states broadly that these acts occurred 'in the state and Eastern District of Wisconsin and elsewhere,' *it does not allege facts that support that claim*." Obj. 42. Once again, Hutchins is erroneously trying to apply civil pleading standards to a criminal case. And, as discussed at length in this

Response and in the Recommendation, alleging "facts that support that claim" is not a pleading requirement under Federal Rule of Criminal Procedure 7(c). *See* Rec. 31 (finding that the indictment satisfies pleading requirements and that Hutchins' argument improperly focuses on what may be proven at trial).

Hutchins spends a significant part of his motion performing a hyper-technical attack on the allegations in the first superseding indictment. Doc. #96 at 11. Most of his objection to the Recommendation focuses on allegations *absent* from the superseding indictment. Obj. 42-43. Specifically, he contends that references to internet forums do not include corresponding language noting their location in the United States and that there is not a sufficient allegation expressly tying Hutchins to activities in the United States. Obj. 42-43. According to Hutchins, the absence of such allegations means that Counts Two and Three improperly allege extraterritorial application of the law and must be dismissed. Obj. 43. Hutchins is wrong.

While the superseding indictment does not need to allege such facts to be valid, it does allege the facts Hutchins' complains are lacking. *See* Doc. #86. Moreover, a court must view all allegations in an indictment as true and in the light most favorable to the government. *See United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999); *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). A court must also review indictments "on a practical basis and in their entirety, rather than in a hyper-technical manner." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008). Given that Hutchins' motion seems to be an attack on what he presumes to

be the government's evidence at trial, he fails to account for the proper standard courts must apply when considering a motion to dismiss.

While Hutchins' objection attacks the Recommendation's finding of territorial application—as opposed to extraterritorial application—for Counts Two and Three based on allegations that conduct giving rise to the charges occurred in the United States and district, the Recommendation's analysis went further. Rec. 31. Relying on *United States v. Leija-Sanchez*, 602 F.3d 797, 800 (7th Cir. 2010), the Recommendation rightly concluded that even if some of the conduct relevant to Counts Two and Three occurred abroad while other essential conduct occurred in the United States, applying U.S. law to that conduct (domestic and foreign) does not equate to an improper extraterritorial application of the law. Rec. 31-32; *see Leija-Sanchez*, 602 F.3d at (holding RICO statute was not applied extraterritorially where "some acts (planning and payment) occurred in the United States, one (the killing) occurred abroad; and the objective . . . was realized in the United States.").

Moreover, even if all the conduct giving rise to Counts Two and Three occurred *outside* the U.S., as Hutchins suggests (see Obj. 43), § 2512(1)(c) of the Wiretap Act is a criminal statute and the language and function of the statute is intended to protect U.S. interests, so it applies extraterritorially. As the government argued below, in *United States v. Bowman*, 260 U.S. 94 (1922), the Supreme Court recognized that criminal and civil laws differ with respect to extraterritorial analysis. *See United States v. Leija-Sanchez*, 602 F.3d 797 (7th Cir. 2010) ("*Leija-Sanchez I*"); and *United States v. Leija-Sanchez*, 820 F.3d 899, 900-901 (7th Cir.

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 41 of 50   Document 114

2016) ("*Leija-Sanchez II*").[11] To discern Congress's intent whether to apply a statute extraterritorially, the Court differentiated between two classes of criminal statutes. *Bowman*, 260 U.S. at 97-98. For "crimes against private individuals or their property, like assault, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds, which affect the peace and good order of the community . . . [i]f punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute." *Id.*

The Supreme Court, however, refused to require similar express congressional statements for the class of criminal statutes not "logically dependent on their locality for the government's jurisdiction, but enacted because of the right of the United States to defend itself against obstruction or fraud wherever perpetrated." *Id.* at 98. For this latter type of criminal statute, the Court held that Congress's intent to confer extraterritorial jurisdiction may be inferred from the nature of the offense, because to limit the locus of these statutes to the territorial jurisdiction of the United States would be "greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed . . . in foreign countries as at home." *Id.*

---

[11] Hutchins suggested *Bowman* was overruled by the Supreme Court's 2010 decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). Doc. #96 at 7. As stated by the court in *Leija-Sanchez II,* the Court's decision in *Morrison* did not overrule *Bowman,* which it did not even mention. *Leija-Sanchez II*, 820 F.3d at 901. Consequently, "[a] decision such as *Bowman*, holding that criminal and civil laws differ with respect to extraterritorial application, is not affected by yet another decision showing how things work on the civil side." *Id.*

In *Leija-Sanchez I* and *II*, the Seventh Circuit considered the defendant's argument that 18 U.S.C. § 1959 does not apply extraterritorially.[12] First, the court considered the language and function of the RICO statute, and found, relying on *Bowman*, that it applied extraterritorially. *Leija-Sanchez I,* 602 F.3d at 799-800. Specifically, the court held that

> [c]riminal businesses may be international in scope; the indictment alleges that Leija-Sanchez's organization was. Section 1959 applies to enterprises that engage in or affect "foreign commerce"; this rule cannot be implemented if the existence of activities abroad prevents application of § 1959 to those acts and effects that occur in the United States.

*Id. see also Pasquantino v. United States*, 544 U.S. 349, 371-72 (2005) (noting that "the wire fraud statute punishes frauds executed 'in interstate or foreign commerce,' . . . so this is surely not a statute in which Congress had only 'domestic concerns in mind.'" (citations omitted)).

After concluding that the language and function of § 1959 allowed for an extraterritorial application of that statute, the court went on to consider where the underlying conduct occurred and where the consequences were realized. *Id.* In doing so, the Seventh Circuit rejected the defendant's argument that a crime "happens in in one place only." *Id.* Considering the allegations in the indictment and the language and function of the statute (§ 1959), the court in *Leija-Sanchez I* concluded that "we have both significant conduct in the United States and significant consequences here. Applying § 1959 to this contract killing does not violate any rule

---

[12] The district judge had granted the defendant's motion to dismiss and the government appealed that decision under 18 U.S.C. § 3731. *Leija-Sanchez I*, 602 F.3d at 798. On direct appeal, following the defendant's conviction, the court readdressed the defendant's extraterritoriality argument. *Leija-Sanchez II*, 820 F.3d at 900.

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 43 of 50   Document 114

of international law and is compatible with the norms that govern the application of criminal statutes to international criminal enterprises." *Id.* at 801.

In *Leija-Sanchez II*, the court reaffirmed its reliance on *Bowman* and denied the defendant's request to overturn the decision in *Leija-Sanchez I. Leija-Sanchez II*, 820 F.3d at 900-01. Specifically, the court stated,

> *Bowman* distinguishes criminal from civil law, holding that different rules apply; second, the murder in Mexico was arranged and paid for from the United States, and was committed with the goal of protecting a criminal organization that conducted business in the United States . . . . The murder thus had ample links to the United States, and since §1959 covers racketeering in foreign commerce as well as in interstate commerce, we thought that its language applies.

*Id.*

Applying the extraterritoriality analysis from *Bowman* and *Leija-Sanchez I*, a court first considers the "language and function" of the statute to determine if the "conduct proscribed causes or is likely [to] cause significant injury to the U.S." *Leija-Sanchez I*, 602 F.3d at 799. "That injury or intended injury to the U.S. is what justifies extraterritorial application under international principles." *United States v. Hijazi*, 845 F. Supp. 2d 874 (C.D. Ill., May 7, 2010).

Like the extraterritorial arguments addressed *Bowman* and *Leija-Sanchez I* and *II*, Hutchins' motion to dismiss Counts Two and Three can be denied on these grounds as well. Congress enacted § 2512 in 1968 to limit the availability of surveillance devices available to the public that were used to secretly intercept communications in violation of the U.S. Constitution. *See United States v. Bast*, 495

F.2d 138, 142-45 (D.C. Cir. 1974) (relying on the Senate Report on the bill that originated the language in § 2512, S. Rep. No. 90-1097, 90th Cong., 2d Sess. 95 (1968)). Consistent with that function, the language of § 2512(1)(c) contemplates its application to advertisements disseminated through "foreign commerce." Similar to the result if § 1959 was limited to a territorial application, § 2512 cannot be implemented if the existence of activities abroad prevents its application to those acts and effects that occur in the United States. *See Leija-Sanchez I,* 602 F.3d at 800-01. Therefore, like § 1959, § 2512(c)(1) applies extraterritorially.

But there is more the Court can rely on other than the language and function § 2512. Like the acts in *Leija-Sanchez I,* the superseding indictment alleges that significant acts relevant to Counts Two and Three took place in the United States. Further, the existence of activities abroad, even the commission of essential elements would not preclude the application of § 2512(1)(c). *See Bowman*, 260 U.S. 95-96; *Leija-Sanchez I,* 602 F.3d at 798 (stating some of the acts (planning and payment) occurred in the United States, one (the killing) occurred abroad; and the objective (reduced competition for Leija-Sanchez's syndicate) was realized in the United States); see also *Ford v. United States*, 273 U.S. 593, 622-24 (1927) (if a criminal enterprise is carried out in part within the United States, all of the participants, including foreigners whose activities were entirely outside the United States, may be penalized). *Cf. Pinkerton v. United States*, 328 U.S. 640, 647 (1946).

With all of this in mind, the Court has multiple options for denying Hutchins' motion. First, the Court should adopt the Recommendation's correct analysis that

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 45 of 50   Document 114

the conduct charged in Counts Two and Three allege conduct that occurred in the United States and therefore there is no extraterritorial application of U.S. law to foreign conduct. This conclusion applies regardless of whether Hutchins and Individual A were abroad when the conduct in the United States occurred. Second, even if some of the conduct relevant to Counts Two and Three occurred abroad while other essential conduct occurred in the United States, applying U.S. law to that conduct (domestic and foreign) does not equate to an extraterritorial application of the law. Finally, even if all the conduct giving rise to Counts Two and Three occurred outside the United States, § 2512(1)(c) is a criminal statute and the language and function of the statute is intended to protect U.S. interest so it applies extraterritorially.

### B. Counts One through Eight and Ten of the indictment do not violate Hutchins' constitutional right to Due Process.

Relatedly, Hutchins asserts that Counts One through Eight and Ten should be dismissed because "his prosecution in the United States is arbitrary and fundamentally unfair." Doc. #96 at 12. He reiterates that argument in his objection. Obj. 43-45. The Recommendation summarily rejected this argument because it rests on the same, erroneous premise that those Counts allege an improper extraterritorial application of U.S. law. Rec. 32.

Hutchins' argument is that "the Fifth Amendment requires a 'sufficient nexus' between the United States and a foreign national to ensure that application of United States law would not be arbitrary or fundamentally unfair." Doc. # 96 at 12; Obj. 44. Hutchins argues that this sufficient nexus requirement is "akin" to the

"minimum contacts" test for personal jurisdiction in the civil context. Doc. #96 at 12; Obj. 44. To support his argument, Hutchins relies mostly on cases involving violations of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 1903(a). *See* Obj. 44 (citing *United States v. Davis*, 905 F.2d 245 (9th Cir. 1990) (appealing conviction for violating 46 U.S.C. § 1903(a)); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1254 (9th Cir. 1998) (appealing conviction for violating 46 U.S.C. § 1903(a)); and *United States v. Perlaza*, 439 F.3d 1149, 1157 (9th Cir. 2006) (considering a motion to dismiss an indictment alleging a violation of 46 U.S.C. § 1903(a). But see *United States v. Cardales*, 168 F.3d 548, 552-53 (1st Cir. 1999) (no Fifth Amendment due process requirement to prove a nexus between a defendant's criminal conduct and the United States in a prosecution under MDLEA); and *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993) (declining to follow the holding of *United States v. Davis*, , 905 F.2d 245 (9th Cir. 1990) and holding that there is no requirement to establish a domestic nexus to prosecute offense under the MDLEA).

In Hutchins case, unlike prosecutions under the MDLEA, there is no statutory requirement to show a "sufficient nexus" between Hutchins and the United States based on any of the charges in the first superseding indictment. *See* 18 U.S.C. §§ 371, 1030, 2511, 2512, and 1343; s*ee also* Fed. R. Crim. P. 18; 18 U.S.C. § 3237. Hutchins agreed with the government on this point. Doc. #105 at 14. Further, prosecuting Hutchins in the United States is not "arbitrary and fundamentally unfair." As alleged in the superseding indictment, Hutchins

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 47 of 50   Document 114

committed several offenses against the United States that affected and intended to affect the United States and its residents. Additionally, overt acts in furtherance of the charged conspiracies (Counts One and Ten) occurred in this district. So, Hutchins' argument that the Fifth Amendment immunizes him from prosecution in the U.S. because he lived abroad is meritless.

In sum, Hutchins is requesting that the Court create a new constitutional test for jurisdictional propriety in criminal cases where none exists. The Fifth Amendment protections Hutchins claims are actually provided by constitutional venue provisions (not found in the Fifth Amendment), and statutory directives on the matter of venue. *See United States v. Cabrales*, 524 U.S. 1, 6 (1998); *United States v. Muhammad*, 502 F.3d 646, 655 (7th Cir. 2007); *see also* Fed. R. Cr. Pro. 18; 18 U.S.C. § 3231 *et seq.* Hutchins has abandoned any constitutional venue challenge, Doc. #89 at 6, and in any event, such a challenge would fail.[13] Venue in this district is proper because overt acts in furtherance of the conspiracy were committed in this district, and the substantive offenses were committed in this district. *See* 18 U.S.C. § 3237; Fed. R. Crim. P. 18; *United States v. Fredrick*, 835 F.2d 1211, 1215 (7th Cir. 1987); *see also Muhammad*, 502 F.3d at 651-57. Hutchins' motion to dismiss Counts One through Eight and Ten should therefore be denied.

---

[13] Hutchins makes only one fleeting reference to venue in motion to dismiss, Doc. #96 at 17. Hutchins writes, [s]hould the Court deny this motion to proceed on the basis of Mr. Hutchins'[s] contacts with Individual B in California, venue in this District would be improper." *Id.* Hutchins does not address this matter in his objection.

Case 2:17-cr-00124-JPS   Filed 11/30/18   Page 48 of 50   Document 114

### C. Hutchins' challenge to Count Nine must be rejected because he lied to the FBI while the FBI was investigating a matter within its jurisdiction.

Hutchins' final argument is that Count Nine of the superseding indictment, which charges Hutchins with lying to the FBI, should be dismissed because Counts One through Eight and Ten should be dismissed. Doc. #96 at 17. In other words, Hutchins argues that if the Court "lacks domestic jurisdiction" over Hutchins for his conduct, the FBI could not investigate the distribution of malware in this district or even the United States. The Recommendation dismissed this argument since it was premised on the erroneous claim that the superseding indictment charged Hutchins only with criminal conduct abroad. Rec. 32. This conclusion was correct because, among other things, overt acts in furtherance of the charged conspiracies were committed in this district, and the substantive offenses were committed in this district. And in any event, even assuming for the sake of argument that Counts One through Eight and Ten should be dismissed because of a "lack of domestic jurisdiction" over Hutchins and his conduct (though they should not), the FBI was certainly still investigating a matter within its jurisdiction when agents interviewed Hutchins. Indeed, the FBI was conducting a criminal investigation which falls within the meaning of "any matter" as used in 18 U.S.C. § 1001. *United States v. Rogers*, 466 U.S. 475, 476-484 (1984); *see also* 28 U.S.C. § 533; 28 C.F.R. § 0.85. Additionally, the term "jurisdiction" as used in § 1001 "merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body." *Rogers*, 466 U.S. at 476-84. Therefore, even if all the

other counts of the superseding indictment were dismissed, Count Nine would survive. Hutchins' motion should therefore be denied.

## VII. Conclusion

For the reasons discussed above, as well as in the United States' responses to Hutchins' motions, Docs. #77, 84, 97, 100, 101, and in the Recommendation, Doc. #109, the United States respectfully requests that the Court deny Hutchins' motions to suppress statements and dismiss counts of the indictment, Docs. #55, 92, 95, 96.

Respectfully submitted, this 30th day of November, 2018.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW D. KRUEGER
United States Attorney

By:    *s/Michael J. Chmelar*
MICHAEL J. CHMELAR
BENJAMIN W. PROCTOR
Assistant United States Attorneys
Michael Chmelar Bar No.: 6277248
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave. Suite 530
Milwaukee, Wisconsin 53202
Tel: (414) 297-1700
Email: michael.chmelar@usdoj.gov
Email: benjamin.proctor@usdoj.gov

</div>