UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                  Case No. 17-CR-124-JPS

MARCUS HUTCHINS,

        Defendant.

_____

**DEFENDANT MARCUS HUTCHINS' RENEWED MOTION TO SUPPRESS**
_____

    Recognizing the Court's denial of his motion to suppress statements, defendant Marcus Hutchins nonetheless respectfully asks the Court reconsider its ruling upon a specific circumstance identified by the Court: the FBI agents' violation of Federal Rule of Criminal Procedure 4(c)(3)(A). With the Court having already noted the violation of that rule, this renewed motion explains why suppression should follow.

    Rule 4(c)(3)(A) requires:

> Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant. If the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible.

As the Court has stated, the agents in this case "abject[ly]" failed to follow Rule 4(c)(3)(A), and "[i]t was wholly improper that [Mr. Hutchins] was not provided with a warrant immediately upon arrest." (Order at 16-17 (Dkt. No. 117).)

A violation of Rule 4(c)(3)(A) warrants exclusion of evidence if the violation compromised a substantial right, like one's privilege against self-incrimination, and law enforcement acted in bad faith. *Bryson v. United States*, 419 F.2d 695, 701-02 (D.C. Cir. 1969); *United States v. Hamilton*, 2017 WL 9476881, at *5 (N.D. Ga. Jan. 3, 2017). Although the Court did not address those issues (understandably so, given that the defense had not directly raised them), the record in this case provides a more than ample basis for finding that the agents' improper delay in showing Mr. Hutchins the warrant for his arrest compromised his exercise of his privilege against self-incrimination and that the "element of deception" already noted by the Court involved a degree of bad faith on law enforcement's part. This is particularly true when the Court "indulges[s] in every reasonable presumption against waiver," as it must. *Brewer v. Williams*, 430 U.S. 387, 404 (1977).

The issue at the forefront of this renewed motion is: Mr. Hutchins wanted to know why he was in custody and being interrogated, and he was not told until it was too late. Within 30 seconds of the FBI's audiotape recording of the interrogation starting, he asked, "Can you please tell me what this about?"; to

2

which, one of the agents responded, "We're going to get to that." (Ex. 1 at 00:30-00:32). And he kept asking essentially the same question throughout the interrogation. (*See, e.g.*, 1:03:45-1:03:45 ("So can I just ask, is this just some shit to get me to give you the [WannaCry sinkhole] domain, because I know you wanted that, right?")).

Despite Mr. Hutchins having been indicted and so clearly wanting to know the reason being in custody, the agents declined to provide him with his arrest warrant until almost eighty minutes into the interrogation, or to otherwise explain anything about the charges against him. As the Court noted in its order:

> There is no reason why the government could not have told [Mr. Hutchins] exactly why he was arrested, as he requested, and as was required by Federal Rule of Criminal Procedure 4(c), unless there was a concern he would not be cooperative with them. There is certainly an element of deception to this set of events that the Court does not endorse.

(Order at 16.)

The Court's findings, moreover, offer ample support to suppress on Rule 4(c)(3)(A) grounds, despite the countervailing considerations the Court also raised. These findings include, among others:

- Because Mr. Hutchins had already been indicted, the "stakes were dramatically higher, and [Mr.] Hutchins' privilege against self-incrimination all the more precious." (Order at 15.)

- The United Kingdom's equivalent of *Miranda* warnings are similar enough that a defendant like Mr. Hutchins might "find comfort in

3

which, one of the agents responded, "We're going to get to that." (Ex. 1 at 00:30-00:32). And he kept asking essentially the same question throughout the interrogation. (*See, e.g.*, 1:03:45-1:03:45 ("So can I just ask, is this just some shit to get me to give you the [WannaCry sinkhole] domain, because I know you wanted that, right?")).

Despite Mr. Hutchins having been indicted and so clearly wanting to know the reason being in custody, the agents declined to provide him with his arrest warrant until almost eighty minutes into the interrogation, or to otherwise explain anything about the charges against him. As the Court noted in its order:

> There is no reason why the government could not have told [Mr. Hutchins] exactly why he was arrested, as he requested, and as was required by Federal Rule of Criminal Procedure 4(c), unless there was a concern he would not be cooperative with them. There is certainly an element of deception to this set of events that the Court does not endorse.

(Order at 16.)

The Court's findings, moreover, offer ample support to suppress on Rule 4(c)(3)(A) grounds, despite the countervailing considerations the Court also raised. These findings include, among others:

- Because Mr. Hutchins had already been indicted, the "stakes were dramatically higher, and [Mr.] Hutchins' privilege against self-incrimination all the more precious." (Order at 15.)

- The United Kingdom's equivalent of *Miranda* warnings are similar enough that a defendant like Mr. Hutchins might "find comfort in

the broad similarities between the two"—yet they are different in critically important ways. (*Id.* at 12.) Those differences "may have affected Mr. Hutchins' understanding of the basic concepts underlying *Miranda* (i.e., whether it would be helpful for him to speak)." (*Id.* at 13.)

- Although appearing cooperative, Mr. Hutchins was "clearly confused about the nature of the interrogation." (*Id.* at 5.)

- "Mr. Hutchins could have been reasonably confused about the FBI's interest in him. The agents did not tell [Mr.] Hutchins why he was under arrest, and did nothing to explain the nature of the charges against him until the end of his interrogation." (*Id.* at 15.)

  (The Court notes that Mr. Hutchins continued to cooperate after he was presented with the arrest warrant. (*Id.*) But any person in Mr. Hutchins' shoes would have concluded it was too late, the train had already left the station—especially a citizen of the United Kingdom who did not understand *Miranda*.)

- "[Mr.] Hutchins had recently dealt with matters of international concern, and reasonably believed that it was in his best interest to answer [the agents'] questions." (*Id.* at 15-16.)

- When agents finally showed him the arrest warrant over an hour into the interrogation, they let him know "it had 'nothing to do with WannaCry.'" (*Id.* at 6.)

In addition to the points the Court raised, it is important to keep in mind this point as well: if the agents had shown him the arrest warrant when he asked "what [is] this about?" within the first thirty seconds of his interrogation, Mr. Hutchins could have re-asserted his right to remain silent, even assuming he properly waived it before the agents started the audiotape. Indeed, he could have asserted that right at any point throughout the lengthy interrogation. But

4

by the time they actually showed the arrest warrant to him, after almost eighty minutes of interrogation, anyone would have understandably thought it was too late to invoke the right to remain silent because the cat was, by then, more than an hour out of the bag.

Further, a fair reading of the evidence—giving Mr. Hutchins the benefit of the doubt as required by *Brewer*—is that he agreed to talk with agents to find out what was happening and because he did not believe he was in harm's way. After all, he consistently asked them just that and expressed confusion throughout. And the agents consistently delayed telling him and through their questions misled him about the true purpose of the interrogation. The agents, in fact, by their own admission misled him into thinking his questioning was prompted by WannaCry, as revealed by one of the agents' statements when he was finally shown the arrest warrant:

> Okay. Well here's the arrest warrant. And just to be honest—if I'm being honest with you, Marcus. This has absolutely nothing to do with WannaCry.

(Ex. 1 at 1:17:45-1:18:02.)

The agents' affirmative delay from the very start of the interrogation (*i.e.*, "We'll get to that later") in producing the arrest warrant was improper. Indulging every presumption against waiver as *Brewe*r requires, the agents' failure to provide Mr. Hutchins with his arrest warrant requires suppression

5

under Rule 4(c)(3)(A). Because the agents had the warrant in hand from the outset of the interrogation, the only explanation for the agents' failure to comply with Rule 4 was that they intended to deceive Mr. Hutchins' to get him to talk with them when he otherwise would not have chosen to do so. Accordingly, the Court should grant Mr. Hutchins' motion to suppress.

DATED: February 15, 2019

Respectfully submitted,

 */s/ Brian E. Klein*
BRIAN E. KLEIN
Baker Marquart LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
Email: bklein@bakermarquart.com
Telephone: (424) 652-7800

 */s/ Marcia Hofmann*
MARCIA HOFMANN
Zeitgeist Law PC
25 Taylor Street
San Francisco, CA 94102
Email: marcia@zeitgeist.law
Telephone: (415) 830-6664

 */s/ Daniel W. Stiller*
DANIEL W. STILLER
DStillerLLC
Box 511130
Milwaukee, WI 53203
Email: dan@dstillerllc.com
Telephone: (414) 207-3190

*Attorneys for Marcus Hutchins*