UNITED STATES OF AMERICA,

    Plaintiff,

v.                      Case No. 17-CR-124

MARCUS HUTCHINS,

    Defendant.

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR RECONSIDERATION OF THE COURT'S ORDER
DENYING HIS MOTION TO SUPPRESS (Doc. #118)**

The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Assistant U.S. Attorneys Benjamin Proctor and Benjamin Taibleson, files this response to defendant Marcus Hutchins's motion for reconsideration of the Court's order denying his motion to suppress post-conviction statements (which Hutchins dubs a "renewed motion to suppress"). Doc. #118. The Court's decision was correct and there is nothing new for the Court to consider. The "renewed motion" should be denied. .

I.    Hutchins provides no grounds that would justify relief through a motion for reconsideration.

Since the Court has already issued a decision denying Hutchins' motion to suppress statements, his "renewed motion to suppress" is in reality a motion for reconsideration of the Court's order. The Court, of course, has the authority to reconsider any order previously issued in this case. But, as a general matter,

"[m]otions for reconsideration serve the limited functions of correcting manifest errors of law or fact and presenting newly discovered evidence." *United States v. Molinaro*, 683 F. Supp. 205, 209 n.7 (E.D. Wis. 1988) (citing *Publishers Resource v. Walker-Davis Publications*, 762 F.2d 557, 561 (7th Cir. 1985)). Such motions should not be used to introduce new arguments or evidence that could have been raised prior to issuance of the order under attack. *See generally Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (discussing the limited function of motions for reconsideration).

Here, Hutchins does not contend that the Court made a "manifest error of law or fact" in is decision. He does not contend there is newly discovered evidence material to his claim. Instead, he is simply wants the Court to entertain a new spin on his old argument that he was deceived into waiving his *Miranda* rights. Specifically, he contends that the arresting agent's delay in showing him a hard copy of the arrest warrant—alleged to be a violation of Rule 4(c)(3)(A) of the Federal Rules of Criminal Procedure[1]—*might* have affected his decision to make a voluntary post-arrest statement.

Because Hutchins fails to satisfy the criteria justifying a motion for reconsideration, the motion can be denied summarily. Further, the Court already considered the essence of Hutchins' revised argument—giving all benefit of the doubt

---

[1] Hutchins' citation to Rule 4(c)(3)(A) is a bit off the mark. Because the arrest warrant stemmed from an indictment, issuance and execution of the arrest warrant is governed by Rule 9. However, since the relevant provisions of Rule 9 cross reference Rule 4, the error is not important.

to Hutchins in the process—and rejected it. *See* Doc. #117 at 16. The Court recited the law controlling claims of deception-included confessions, *See* Doc. #117 at 13-16 (citing, *e.g.*, *United States v. Serlin*, 707 F.2d 953 (7th Cir. 1983)), and it found the agents here acted lawfully, Doc. #117 at 16-17. Specifically, the Court found that Hutchins understood he was under arrest for criminal acts, he was properly advised of his rights before questioning, he understood his rights, and he unequivocally waived his right to remain silent. Doc. #117 at 9, 13, 15. The Court further found that Hutchins' claim that the agents never told him that the investigation concerned Kronos was wrong. "[T]he scope of the agents questions should have put Hutchins on notice of the nature of the investigation. The agents did not try to 'hide the ball,' so to speak, about their interest in Kronos, and asked him about it early and often in the interrogation." Doc. #117 at 16. The Court factored into its analysis its finding that Hutchins was not shown a copy of the arrest warrant until 80 minutes into the interrogation. Doc. #17 at 16-17. [2] In any event, whether Hutchins knew the precise

---

[2] In its decision, the Court stated that the arresting agents acted improperly by failing to abide by Rule 4(c)(3)(A). Doc. #117 at 16-17. The United States understands the Court's position, but it respectfully disagrees. As the Court noted, Hutchins never expressly raised a claim based on an alleged violation of Rule 4(c)(3)(A), so the issue was not previously briefed by the parties. Since Hutchins raises the issue now, the United States is compelled to respond. United States' position is that there was no improper delay in showing Hutchins a copy of the warrant. The notice requirements of Rule 4(c)(3)(A) and Rule 9(c)(1) are intended to protect against confusion as to whether an arrest is lawful. This is illustrated by the fact that the Rules do not require an agent to possess a copy of the arrest warrant in order to make an arrest—they require only timely notification of the warrant's existence. *See* Fed. R. Crim. P. 9(c)(1)(A); Fed. R. Crim. P. 4(c)(3)(A). The Committee Notes further explain the reasoning behind the Rule:

> As revised, Rule 4(c)(3)(A) explicitly requires the arresting officer in all instances to inform the defendant of the offense charged and of the fact that an arrest warrant exists. The new rule continues the current provision that the arresting officer need not have a copy of the warrant, but if the defendant

facts underlying the investigation before agreeing to waive his rights is immaterial to the question of whether he knowingly and voluntarily waived his rights. *See Colorado v. Spring*, 479 U.S. 564, 576–77 (1987) ([T]he additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature. Accordingly, the failure of the law enforcement officials to inform Spring of the subject matter of the interrogation could not affect Spring's decision to waive his Fifth Amendment privilege in a constitutionally significant manner.").

Moreover, Hutchins still fails to meet the minimum criteria necessary to move forward on his deception claim. As the Court noted in its order, a defendant seeking to suppress his confession based on allegations of deceit must establish, among other things: (1) that the agents *affirmatively misled* him as to the true nature of the investigation, and (2) that the misinformation was *material to his decision* to speak with agents. *See* Doc. #117 at 13-14 (citing *Serlin*, 707 F.2d at 956). Hutchins falls short on both fronts. First, he cannot point to any affirmative misrepresentations

---

> requests to see it, the officer must show the warrant to the defendant as soon as possible. The rule does not attempt to define any particular time limits for showing the warrant to the defendant

Fed. R. Crim. P. 4 Committee Notes to the 2012 Amendment to 4(c)(3)(A). Here, it is undisputed that, immediately upon arrest in a stairwell at the Las Vegas airport, Hutchins was told that he was being placed under arrest by an FBI Special Agent from Milwaukee, Wisconsin, pursuant to an arrest warrant issued by a federal court. Further, while the record may be unclear as to when Hutchins was first shown a copy of the arrest warrant, see Doc. #117 at 5 n.2, it is undisputed that (1) Hutchins never demanded to see a copy of the warrant after being advised of its existence, and (2) the audio recording of the post-arrest interview shows that he was given a copy of the arrest warrant within about 80 minutes of his arrest. In the end, the Court denied Hutchins' motion, and this dispute was not critical to the Court's holding, so further comment on this point is not necessary.

made to him by the agents regarding the nature of the investigation.³ At most, he alleges that the agents did not promptly give him a copy of the arrest warrant (even though he never asked for it). But delaying the presentation of a copy of an arrest warrant to a defendant is not an affirmative lie—especially when the agents had accurately informed of him the warrant's existence. *See generally Serlin*, 707 F.2d at 689 (noting that "[a] true statement cannot be equated with affirmative deceit." (citing *United States v. Mapp*, 561 F.2d 685, 689 (7th Cir. 1977))). Second, Hutchins does not, and cannot, articulate how any allegedly misstatement by the agents was, in fact, material to his decision to speak to the agents. *See id.* at 957. He simply asserts that if the agents had shown him a copy of the arrest warrant "within the first thirty seconds of his interrogation," he "*could have* re-asserted his right to remain silent." Doc. #118 at 4 (emphasis added).⁴ This is pure speculation that cannot meaningfully contribute to the required showing of materiality.

In sum, Hutchins' motion for reconsideration presents no facts or law that call into question the Court's holding. The motion may therefore be denied.

---

³ In his renewed motion, Hutchins claims that the agents "misled him into thinking his questioning was about WannaCry." Doc. #118 at 5. This implies that the agents told him the investigation was about WannaCry, which is not true. What Hutchins may have personally thought at the time is unknown, since he declined to testify at the evidentiary hearing. In any event, the Court already rejected that argument, finding that "the agents did not try to 'hide the ball,'" and that they questioned Hutchins "early and often" about Kronos. Doc. #117 at 16.

⁴ Hutchins never asserted his right to remain silent in the first place; therefore, his assertion that he "could have *re-asserted* his right to remain silent" misstates the facts. *See* Doc. #118 at 4 (emphasis added).

II. There is no Constitutional connection between a failure to present a copy of an arrest warrant to a defendant at the time of arrest and suppression of a post-arrest statement.

Even if the Court were to entertain Hutchins' "renewed" arguments, his motion must still be rejected. Notably, Hutchins' renewed motion rests on an erroneous premise: that failure to present Hutchins with a copy of the arrest warrant at the moment of arrest "compromised his exercise of his privilege against self-incrimination." Doc. #118 at 2. This premise is flawed for several reasons.

First, Hutchins bases his entire argument on the idea that the arrest warrant recited some magical language that "could have" sparked him to "re-assert his right to remain silent, even if he properly waived it before the agents started the audiotape." Doc. #118 at 4. Hutchins, however, does not point to any language in the arrest warrant to support this position. This is not surprising given that the purpose of an arrest warrant, and of Rules 4(b)-(c) and 9(b)-(c) generally, is to establish the lawful nature of the arrest. The arrest warrant is not intended to explain the facts underlying the charges. Indeed, while an indictment must set forth certain "facts constituting the offense" sufficient to meet the criteria under Rule 7(c)(1), an arrest warrant must only (1) contain the defendant's name; (2) describe the offense charged in the indictment (*i.e.* list one or more charged statute), (3) command that the defendant be arrested and brought without reasonable delay before a magistrate judge, and (4) be signed by court clerk. *See* Fed. R. Crim. P. 9(b)(1) (cross referencing Fed. R. Crim. P. 4(b)(1)). For this reason, arrest warrants issued by federal courts are standardized, one-page, fill-in-the-blank forms. *See* U.S. Courts Form AO 442 (Rev.

Page **6** of **10**

Case 2:17-cr-00124-JPS    Filed 03/22/19    Page 6 of 10    Document 122

11/11) "Arrest Warrant." Hutchins' failure to articulate how exactly the language of the arrest warrant could have provided him meaningful information beyond what he had already been told by the arresting agents dooms his claim.

The second fundamental flaw in Hutchins' argument is that he is seeking to apply the exclusionary rule to an alleged violation of Rule 4(c)(3)(A), but there is no legal nexus between an agent's delay in presenting a hard copy of an arrest warrant to a defendant, and suppressing that defendant's otherwise voluntary post-arrest statement. Importantly, there is no requirement that a law enforcement agent actually possess a copy of the arrest warrant in order to make a valid arrest. *See* Fed. R. Crim. P. 4, Committee Notes to the 2012 Amendment to 4(c)(3)(A) ("As revised, Rule 4(c)(3)(A) explicitly requires the arresting officer in all instances to inform the defendant of the offense charged and of the fact that an arrest warrant exists. The new rule continues the current provision that the arresting officer need not have a copy of the warrant, but if the defendant requests to see it, the officer must show the warrant to the defendant as soon as possible. The rule does not attempt to define any particular time limits for showing the warrant to the defendant."). In other words, if a lawful arrest has taken place, a post-arrest interview may be conducted, and a post-arrest statement may be admitted as evidence so long as it was made following a knowing and voluntary waiver of rights. The Court has already determined that Hutchins' post-arrest statement was made following a knowing and voluntary waiver of rights, and the physical presentation of a hard copy of the arrest warrant plays no

role in the constitutional analysis. Thus, the alleged violation of Rule 4(c)(3)(A) cannot be grounds for suppression.

The two cases cited by Hutchins, *United States v. Hamilton*, Case No. 16-CR-72, 2017 WL 9476881 (N.D. Ga. Jan. 3, 2017) (magistrate judge's report and recommendation), *adopted without analysis*, Case No. 16-CR-72, 2017 WL 3866809 (N.D. Ga. Sept. 1, 2017), and *Bryson v. United States*, 419 F.2d 695 (D.C. Cir. 1969), do not hold otherwise. In *Hamilton*, the defendant sought to invalidate his arrest by arguing he was not shown a copy of the arrest warrant in violation of Rule 4. The magistrate judge correctly stated there was no requirement that the arresting agent actually possess a warrant at the time of arrest, and that in any event, "[m]y own research suggests that no court has broadly applied the exclusionary rule in the case of a Rule 4(c)(3) violation." 2017 WL 9476881, *4-5. In *Bryson*, the court discussed the rationale behind a 1944 committee comment to an earlier version of Rule 4(c) that stated "laconically" that the Rule "safeguards the defendant's rights," even though the arresting officer need not possess a copy of the warrant. 419 F.2d at 701. But the context of the Court's discussion concerns a defendant's knowledge about the existence of a valid arrest warrant (which is satisfied by the arresting officer telling the defendant about the existence of the warrant); not that failure to present a copy of the warrant upon arrest justifies exclusion of evidence. *Id.* at 701. Indeed, the court explicitly stated that its discussion of Rule 4 did not concern application of the exclusionary rule. *Id.*

Further, violations of federal procedural rules are generally not grounds for suppression, and Hutchins points to no cases to the contrary. The exclusionary rule "has primarily rested on the judgment that the importance of deterring police conduct that may invade the *constitutional* rights of individuals throughout the community outweighs the importance of securing the conviction of the specific defendant on trial." *United States v. Caceres*, 440 U.S. 741, 754-55 (1979) (emphasis added). Thus, a violation of a procedural rule does not warrant exclusion of evidence that was obtained in conformity with the constitution. *See, e.g., United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008) (rejecting argument to suppress evidence obtained through a search warrant that did not comply with Rule 41, noting that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause, and with advance judicial approval"); *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) ("The remedy of allowing a defendant to go free based on a violation of Rule 41's requirements for obtaining a proper search warrant would be 'wildly out of proportion to the wrong.' (quoting *Cazares-Olivas*, 515 F.3d at 730)). As noted, Hutchins was told he was arrested pursuant to a federal arrest warrant, he knew the criminal nature of the investigation, he was properly advised that he had the right to remain silent, he was properly advised that he could end questioning "at any time," see Hearing Exhibit 9, and he knowingly and voluntarily waived his right to remain silent, see Doc. #117 at 15-17. More is not required under the constitution.

III. Conclusion

For the reasons discussed above, as well as in the United States' response to Hutchins' objection (Doc. #114), and the Court's decision denying Hutchins' motion to suppress statements (Doc. #117 at 6-17), the Court should deny Hutchins' motion for reconsideration, Doc. #118.

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2019.

    Respectfully submitted,

    MATTHEW D. KRUEGER
    United States Attorney

By:    *s/ Benjamin Proctor*
    BENJAMIN PROCTOR
    BENJAMIN TAIBLESON
    Assistant United States Attorneys
    Benjamin Proctor Bar No.: 1051904
    Office of the United States Attorney
    Eastern District of Wisconsin
    517 E. Wisconsin Ave. Suite 530
    Milwaukee, Wisconsin 53202
    Tel: (414) 297-1700
    Email: benjamin.proctor@usdoj.gov